UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | |
|---|---|
| *In re* | : |
| | :     07 Civ. 3271 (RMB) |
| WORLDCOM, INC., *et al.*, | : |
| | :      <u>ECF Case</u> |
| Reorganized Debtors. | : |

-------------------------------------------------------x

| | |
|---|---|
| | : |
| HSG/ATN, INC., | :     Chapter 11 Case No. |
| | :     02-13533 (AJG) |
| Appellant, | :     (Jointly Administered) |
| | : |
| v. | : |
| | :     Adv. Proc. No. 05-3143 (AJG) |
| MCI WORLDCOM | : |
| COMMUNICATIONS, INC., and | : |
| WORLDCOM, INC., | : |
| | : |
| Appellees. | : |

-------------------------------------------------------x

 

 

## <u>APPELLANT HSG/ATN, INC.'S BRIEF IN SUPPORT OF APPEAL</u>

 

MORGENSTERN JACOBS & BLUE, LLC
885 Third Avenue
New York, New York 10022

*Attorneys for Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

BASIS FOR APPELLATE JURISDICTION AND STANDARD OF REVIEW ......................... 1

ISSUES PRESENTED.................................................................................................... 1

PRELIMINARY STATEMENT ....................................................................................... 2

STATEMENT OF THE CASE.......................................................................................... 5

STATUTORY AND BANKRUPTCY LAW BACKGROUND.................................................. 10

ARGUMENT .............................................................................................................. 12

   I.   There Are Disputed Issues Of Material Fact Concerning Whether WorldCom Terminated The Residual Commission Obligation In November 2002................................................ 12

   II.   The November Letter Is Not Notice Of Termination – At A Minimum, There Is A Triable Issue Of Fact As To Whether It Constitutes Valid Notice Of Termination..................... 13

   III.   WorldCom Is Judicially Estopped From Arguing That The November Letter Terminated Its Residual Commission Obligation ................................................................. 16

   IV.   The Bankruptcy Court Erred By Denying HSG's Request To Allow Discovery To Proceed Pursuant To Fed. R. Civ. P. 56(f)....................................................................... 17

CONCLUSION............................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Cases**

*American Home Assurance Co. v. Zim Jamaica et al.*, 2006 U.S. Dist. LEXIS 8375 (S.D.N.Y. March 2, 2006) ................................................................................................................ 18

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................................................ 12

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................................... 12

*CFJ Assoc. of New York, Inc. v. Hanson Industries et al.*, 260 A.D.2d 917 (App. Div. 3d Dep't. 1999) ....................................................................................................................................... 16

*Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,* 271 F.3d 374 (2d Cir. 2001) ....... 17

*First Mississippi Bank of Commerce v. Latch,* 433 So. 2d 946 (Miss. 1983)............................. 16

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944 (2d Cir. 1993)............ 10

*Harris v. Provident Life and Accident Insurance Co.,* 310 F.3d 73 (2d Cir. 2002) .................... 12

*Hellstrom v. U.S. Dep't of Veteran Affairs,* 201 F.3d 94 (2d Cir. 2001) ...................................... 18

*In re Adelphia Communications Corp.,* 06 Civ. 1445 (SAS), 2006 U.S. Dist. LEXIS 14946 (March 30, 2006) ........................................................................................................................ 1

*In re Enron Corp.*, 419 F.3d 115 (2d Cir. 2005)........................................................................... 1

*In re Trace Int'l Holdings, Inc.*, 301 B.R. 801 (Bankr. S.D.N.Y. 2003) ...................................... 17

*In re WorldCom, Inc.*, 308 B.R. 157 (Bankr. S.D.N.Y. Apr. 27, 2004) ........................................ 9

*MCI WorldCom Comms., Inc. v. HSG/ATN, Inc. (In re WorldCom, Inc.)*, 2007 Bankr. LEXIS 400 (Bankr. S.D.N.Y. Feb. 14, 2007) ......................................................................................... 1

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003).......................................... 18

*Mitchell v. Washingtonville Central High School Dist.*, 190 F.3d 1 (2d Cir. 1999)............... 16, 17

*N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984)......... 11

*Paddington Partners v. Bouchard et al.*, 34 F.3d 1132 (2d Cir. 1994) ....................................... 18

*Ray Repp & K & R Music, Inc. v. Andrew Lloyd Webber*, 132 F.3d 882 (2d Cir. 1997) ............. 12

*Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80 (2d Cir. 2002) ................................ 11

*Vermont Teddy Bear Company, Inc., v. 1-800 Beargram Co.,* 373 F.3d 241 (2d Cir. 2004) ....... 12

*Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000) ......................................................... 17

## Statutes

11 U.S.C § 365(g)(1) ............................................................................................................ 11

11 U.S.C. § 365 .................................................................................................................... 10

11 U.S.C. § 365(g) ......................................................................................................... 11, 17

11 U.S.C. § 502(g) ............................................................................................................... 11

11 U.S.C. § 503 ...................................................................................................................... 9

28 U.S.C. § 158(a)(1) ............................................................................................................. 1

## Rules

Fed. R. Civ. P. 56(c) ........................................................................................................... 12

Fed. R. Civ. P. 56(f) ...................................................................................................... *passim*

Fed. R. Civ. Proc. 26(a)(1)(A) ........................................................................................... 19

## Other Authorities

3 Collier on Bankruptcy § 365.09 (15th Ed. Rev. 2006) ............................................................ 11

HSG/ATN, Inc. ("Appellant" or "HSG") submits this brief in support of its appeal from the Order Granting Reorganized Debtors' Motion for Summary Judgment With Respect to Claim Nos. 38580 and 38583 Filed by HSG/ATN, Inc., and Granting, In Part, HSG/ATN, Inc's Motion for Summary Judgment, which was entered on March 22, 2007 (the "Order").[1]

## BASIS FOR APPELLATE JURISDICTION AND STANDARD OF REVIEW

The Order finally resolves WorldCom's[2] objections to Claim Nos. 38580 and 38583, which were filed by HSG in the main bankruptcy proceedings under Docket No. 02-13533 (AJG).  Accordingly, the Order is a final appealable order of the Bankruptcy Court, and this Court has jurisdiction under 28 U.S.C. § 158(a)(1).[3]

On appeal, this Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and its conclusions of law *de novo*.[4]

## ISSUES PRESENTED

1.      Whether the Bankruptcy Court erred when it determined on summary judgment that HSG was not entitled to a claim for millions of dollars in "residual commissions."

2.      Whether the Bankruptcy Court erred when it determined as a matter of law that WorldCom had lawfully terminated its residual commission obligation to HSG despite

---

[1]      A copy of the Order is attached as Exhibit B to the Declaration of Eric B. Fisher dated May 14, 2007 ("Fisher Declaration").  The Order implements the Bankruptcy Court's decision in *MCI WorldCom Comms., Inc. v. HSG/ATN, Inc. (In re WorldCom, Inc.)*, 2007 Bankr. LEXIS 400, (Bankr. S.D.N.Y. Feb. 14, 2007) (the "Decision"). A copy of the Decision is attached as Exhibit A to the Fisher Declaration.

[2]      For the sake of simplicity, the Appellees and the entities now known as the Reorganized Debtors are referred to in this brief as "WorldCom."

[3]      Because the above-captioned adversary proceeding remains pending (Adv. Proc. No. 05-3143 (AJG)), Appellant does not appeal from those portions of the Order that concern the adversary proceeding.  However, Appellant reserves its right to appeal from those portions of the Order upon final resolution of the adversary proceeding.

[4]      *See In re Adelphia Communications Corp.*, 06 Civ. 1445 (SAS), 2006 U.S. Dist. LEXIS 14946 at *8 (March 30, 2006); *In re Enron Corp*., 419 F.3d 115, 124 (2d Cir. 2005).

1

compelling record evidence to the contrary, which the Bankruptcy Court failed even to acknowledge.

      3.     Whether WorldCom should have been judicially estopped from contending below that its residual commission obligation had been terminated in November 2002 considering that WorldCom itself moved to have the residual commission obligation formally "rejected," as defined under the Bankruptcy Code (the "Code"), in January 2003.

      4.     Whether the Bankruptcy Court erred when it refused to afford HSG an opportunity for discovery under Fed. R. Civ. P. 56(f), thereby preventing HSG from taking any depositions concerning the disputed material facts.

## PRELIMINARY STATEMENT

      HSG is a small family-owned business and a former agent for WorldCom.  HSG has a contractual claim against WorldCom for millions of dollars in "residual commissions" for calling card customers that HSG caused to sign up with WorldCom before WorldCom filed for bankruptcy in July 2002.  To this day – approximately five years after the bankruptcy case was filed – these calling card customers continue to generate significant revenue for WorldCom. However, according to the Bankruptcy Court's Decision, WorldCom is not obligated to pay commissions to HSG with respect to that revenue for any period beyond November 2002.

      Before any depositions were taken in connection with HSG's substantial claim for residual commissions, WorldCom moved for summary judgment on its objection to the claim.  In its motion, WorldCom asked the Bankruptcy Court to rule as a matter of law that WorldCom had "terminated" its contractual obligation to pay further residual commissions in a November 14, 2002 letter (the "November Letter") that WorldCom sent to HSG in response to a single alleged act of customer solicitation.[5]  The Bankruptcy Court improperly granted WorldCom's summary

---

[5]      Although WorldCom argued below that there were additional acts of customer solicitation in November and December 2002, WorldCom never contended that it sent a letter providing notice that it was terminating residual commissions in response to those alleged later solicitations.  Accordingly, the Bankruptcy Court's Decision turns

judgment motion, ruling that the residual commission obligation had been terminated by the November Letter.

The Bankruptcy Court committed a fundamental error when it granted summary judgment in favor of WorldCom.  At the very heart of this dispute is the question of (i) whether WorldCom properly terminated its residual commission obligation to HSG in November 2002 *or* (ii) whether WorldCom "rejected" that obligation in January 2003.  The choice between these two scenarios has tremendous financial consequences for HSG.  On the one hand, if the residual commission obligation was lawfully *terminated* in November 2002, then WorldCom would not owe any residual commissions to HSG for the period after November 2002.  This is what the Bankruptcy Court erroneously decided.  If, on the other hand, the residual commission obligation was *rejected* in January 2003, then, as an undisputed matter of bankruptcy law, HSG would have a valid prepetition claim for the full amount of its residual commissions.  That is so because a debtor's rejection of a contract provides the counterparty to the contract with a claim for contract damages that is calculated as though the contract had been breached the day before the bankruptcy petition was filed.  The Bankruptcy Court completely overlooked this central issue.

The Bankruptcy Court concluded that WorldCom had terminated the residual commission obligation based on the November Letter alone, without even considering the many facts in the record which demonstrate compellingly (i) that the November Letter was not a "termination letter," and (ii) that WorldCom had, instead, elected to reject the residual commission obligation pursuant to Section 365 of the Bankruptcy Code.

exclusively on the question of whether or not the November Letter served to terminate the residual commission obligation.  Thus, for purposes of this appeal, only the single solicitation alleged to have occurred in September 2002 and WorldCom's November Letter in response to that alleged solicitation, are at issue.

3

For example, among many other facts in the record at odds with the Bankruptcy Court's decision:

- At an earlier hearing in this case, a WorldCom witness testified about the November Letter as follows: "[R]ather than separate this agent," WorldCom decided to send a "*strong reminder* letting them know that we're aware of the activities," in order to afford WorldCom "more time to evaluate and make a determination as to what [WorldCom] wanted to do." (Fisher Declaration, Exh. D at 49).

- At that same hearing, WorldCom's then counsel acknowledged that the residual commission obligation had not been terminated: "There was one motion, Your Honor, very quickly, last point. In Mr. Ahern's cross examination of why the letters didn't reference the solicitations, and why did they continue to pay after those solicitations were made or occurred and, *Your Honor, it was a business judgment whether they acted correctly in <u>not</u> terminating the contract or taking some other avenue*, which is not an issue. But what is at issue is whether HSG has provided any benefit to the estate and we wish to submit that HSG has not done so." (*Id.* at 121).

- Consistent with HSG's view that the residual commission obligation had been rejected and not terminated, WorldCom emailed HSG on December 17, 2002, expressly informing HSG that WorldCom had decided to reject the contract: "WorldCom has made a determination to *reject your residual commission obligations* as part of its management of the bankruptcy process. We regret the impact on your company, but can assure you that *you have the right to file a claim against the company as part of the bankruptcy claims process.*" (*Id.*, Exh. E at DH0000102).

- On January 3, 2003, WorldCom filed a formal motion with the Bankruptcy Court, seeking to reject the residual commission obligation. (*Id.*, Exh. F at 1, 2 and 40). Clearly, no such motion would have been necessary if WorldCom had earlier terminated the residual commission obligation.[6]

Thus, at the very least, there are disputed material facts concerning whether the residual commission obligation had been rejected or terminated. Accordingly, for the reasons set forth herein, the Order should be reversed and this case should be remanded to the Bankruptcy Court to allow the parties to complete discovery.

---

[6]    Each of the above bullet points was squarely argued to the Bankruptcy Court during oral argument on April 25, 2006. (Fisher Declaration, Exh. M at 32-37). Yet, the Bankruptcy Court's Decision fails to address any of the above points.

## STATEMENT OF THE CASE

A.      **The Representation Agreement**

HSG is a family-owned business that served as a representative agent on behalf of telecommunications giant WorldCom until WorldCom's collapse into bankruptcy as a result of massive fraud.  Among other services, HSG procured orders for calling card and other telephone services on behalf of WorldCom and was paid a commission based on a percentage of the revenue that WorldCom generated from customers procured by HSG.  These commissions accrued monthly and were calculated based upon the monthly revenue generated for WorldCom by customers procured by HSG.

HSG and WorldCom first entered into a representation agreement relating to HSG's procurement of orders for WorldCom in August 1998.  Decision at *4.  Over the years, HSG successfully procured customers for WorldCom, generating many millions of dollars for WorldCom.  During that same time period, the representation agreement between the two companies was amended on numerous occasions, with the last approved amendment referred to as the "Sixth Amendment to Representation Agreement" dated November 1, 2001.  *Id.* at 5. (The original representation agreement together with its subsequent amendments is referred to collectively herein as the "Representation Agreement.")[7]

B.      **Termination of the Representation Agreement**

On June 28, 2002 and as permitted under the Representation Agreement, HSG sent a letter to WorldCom, seeking to terminate the Representation Agreement.  *Id.* at 6.  Thereafter, on July 21, 2002, WorldCom filed for Chapter 11 bankruptcy protection.  *Id.*  Soon after filing for bankruptcy, on August 6, 2002, WorldCom accepted HSG's termination of the Representation Agreement effective July 28, 2002.  *Id.*

---

[7]      The Representation Agreement is attached as <u>Exhibit G</u> to the Fisher Declaration.

Certain obligations under the Representation Agreement survived termination. Specifically, pursuant to Section 8.1 and subparagraph 3 in Exhibit B of the Representation Agreement (*see* Fisher Declaration, Exh. G at D000151, D000159), WorldCom "will continue to pay commissions to Representative after this Agreement terminates for as long as Customers' Adjusted Billed Usage exceeds the sum of twenty five thousand dollars ($25,000)." This continuing commission obligation is further clarified in Section 2.3.1 of the Representation Agreement. (*See id.* at D000183.) The commissions paid to HSG were calculated based upon monthly revenue generated by customers procured by HSG.

Further, under Section 8.1 of the Representation Agreement: "For as long as WorldCom pays Representative commissions in accordance with Exhibit B, Representative agrees that Representative will not contact any Customers or WorldCom Group customers procured pursuant to this Agreement…for the purpose of inducing them to switch to another provider of any service which competes with the Services." Decision at *9. Thus, even after termination of the Representation Agreement, WorldCom was obligated to continue to pay commissions to HSG, which the parties referred to as "Residual Commissions," and HSG was obligated to refrain from soliciting customers that it procured under the Representation Agreement.

## C.   <u>The November Letter</u>

According to the Bankruptcy Court's findings, in a September 25, 2002 letter (the "September Letter"), HSG solicited a single customer offering to provide lower cost telephone service than was available with WorldCom. *Id.* at 11.[8] According to uncontradicted testimony offered by HSG, this letter was in response to a call that was initiated by the customer to HSG. *Id.*

---

[8]   A copy of the September Letter is attached as <u>Exhibit H</u> to the Fisher Declaration.

In reaction to HSG's September 25, 2002 letter to that customer, WorldCom sent the November Letter,[9] notifying HSG that, in WorldCom's view, the September Letter violated the non-solicitation provision in Section 8.1 of the Representation Agreement.  WorldCom stated:

> ATN should immediately cease sending letters to, or contacting in any way, any MCI WorldCom or TTI National customers procured under the Agreement for the purpose of inducing such customers to switch to another provider of services. ***MCI WorldCom is considering what steps to take to protect MCI WorldCom's rights, including, but not limited to, ceasing payment to ATN of any commissions not yet earned under the Agreement, pursuant to Section 8.3 of the Agreement.***

Thus, by its express terms, the November Letter was a "cease and desist" letter, warning HSG that it should continue to abide by the surviving non-solicitation provision contained in Section 8.1 of the Representation Agreement.

Testimony from an earlier hearing in the case provides the context for understanding the import of the November Letter.  In or around October 2002, WorldCom learned of the September Letter, which it considered to be a violation of the non-solicitation provision.  (Fisher Declaration, Exh. D at 46).  After considering its options, including possibly terminating its residual commission obligation under the Representation Agreement, WorldCom opted to send a warning letter to HSG.  (*Id.* at 47–50).  Ray Ahern, WorldCom's director of business operations in the Channel Department, described the November Letter as simply a "strong reminder" of HSG's obligations under the Agreement.  *See id.* at 49.  As Mr. Ahern explained, WorldCom sent a cease-and-desist letter – and not a termination letter – because WorldCom wanted "more time to evaluate and make a determination as to what [WorldCom] wanted to do."  *Id.*

Thereafter, according to the Bankruptcy Court's findings, HSG engaged in a second "solicitation attempt."  Decision at *12.  The bankruptcy court found that, between November 15, 2002 and December 15, 2002, HSG targeted customers that it had procured for WorldCom in

---

[9]        A copy of the November Letter is attached as <u>Exhibit I</u> to the Fisher Declaration.

an effort to persuade them to switch to another provider.  *Id.*  In response to this episode, WorldCom's counsel sent two letters, one dated December 23, 2002 and the other dated February 3, 2003, stating that these solicitation efforts violated the automatic stay pursuant to section 362(a)(3) of the Bankruptcy Code.  *Id.*  As noted by the Bankruptcy Court, HSG discontinued its solicitation efforts after receiving the December 23, 2002 letter.

By email dated December 17, 2002, Brent Lacho at WorldCom advised HSG that WorldCom had decided to reject the residual commission obligation (the "December 17th Email").  (*See* Fisher Declaration, Exh. E).  Then, consistent with the December 17th Email, by motion dated January 3, 2003, WorldCom moved to reject its executory contract with HSG.  (*See* Fisher Declaration, Exhibit F).

D.    **The Administrative Claim Decision**

On February 19, 2003, HSG filed its administrative claim motion (the "Administrative Claim Motion"), as to which the Bankruptcy Court held hearings on June 17, 2003 and July 1, 2003.  Decision at *1.[10]  In its Administrative Claim Motion, HSG sought to have its claim for residual commissions afforded administrative priority on the theory that HSG continued to render valuable services to WorldCom ***after*** the bankruptcy petition had been filed.  On April 27, 2004, the Bankruptcy Court denied HSG's motion, ruling that the residual commission obligation was not an administrative claim because (1) WorldCom's obligation to pay the residual commissions arose ***pre-petition*** when HSG procured the orders for services provided by WorldCom; (2) HSG had procured the customers and performed any related services pre-petition, and (3) HSG's alleged compliance with the Agreement's non-solicitation provision was

---

[10]    Copies of the transcripts from those hearings are attached to the Fisher Declaration as <u>Exhibit C</u> and <u>Exhibit D</u> respectively.

not a service for purposes of 11 U.S.C. § 503.  *See In re WorldCom, Inc.*, 308 B.R. 157 (Bankr. S.D.N.Y. Apr. 27, 2004).[11]

### E.    The Decision and Order Challenged On Appeal

In light of the Bankruptcy Court's decision on the Administrative Claim Motion, absent further order of the Bankruptcy Court, HSG's claim should have been treated as a prepetition claim.[12]  However, in the Decision and Order challenged on this appeal, the Bankruptcy Court ruled that WorldCom had no further residual commission obligation to HSG after November 2002.

According to the Bankruptcy Court's reading of Section 8.3 of the Representation Agreement, WorldCom was not required to provide notice to HSG that it would terminate payment of residual commissions; instead, "only notice of HSG's breach" was required. Decision at *28.[13]  Further, the Bankruptcy Court rejected HSG's judicial estoppel argument, finding that WorldCom had not asserted "contrary factual positions in separate proceedings." *Id.*

---

[11]    A copy of the Bankruptcy Court's decision on the Administrative Claim Motion is attached to the Fisher Declaration as <u>Exhibit J</u>.

[12]    If HSG had prevailed on its Administrative Claim Motion, its claim would have been paid at one hundred cents on the dollar.  Under the reorganization plan, unsecured prepetition creditors recover roughly 35% of the face amount of their claim.  Thus, even if HSG prevails on this appeal and then prevails below in demonstrating that it has a valid prepetition claim for residual commissions, HSG stands to recover a mere fraction of the full value of its claim.

[13]    In relevant part, Section 8.3 of the Representation Agreement provides:

> If Representative contacts a customer or WorldCom Group customer as described in 8.1, WorldCom will suffer harm that WorldCom cannot now measure.  Therefore, WorldCom and Representative agree that if Representative does so contact a Customer or WorldCom Group customer, WorldCom will give Representative five (5) days prior written notice, at the end of which period WorldCom's obligation to pay Representative any commissions not yet earned under this Agreement will cease.

*See* Fisher Declaration, Exh. G at D0000151.  At best, this provision is ambiguous as to whether notice refers to notice of breach or notice of intent to terminate residual commissions.  As discussed throughout this brief, the November Letter and WorldCom's conduct demonstrate that WorldCom interpreted Section 8.3 to require notice of an intent to terminate residual commissions.  WorldCom never provided such notice to HSG.  Instead, it opted to continue to insist on HSG's compliance with the non-solicitation requirement, in exchange for payment of residual commissions.

at *32.  It is notable that, in reaching this conclusion, the Bankruptcy Court did not make reference to the fact that WorldCom had brought a motion seeking to reject the residual commission obligation in January 2003 – approximately two months *after* that obligation had supposedly been terminated.  If the Bankruptcy Court had considered that fact, it is hard to understand how it could have found that WorldCom had not asserted inconsistent positions before the Bankruptcy Court.

Finally, the Bankruptcy Court rejected HSG's argument that summary judgment was premature because more discovery was needed pursuant to Fed. R. Civ. P. 56(f).  The Bankruptcy Court premised this ruling on the faulty finding that HSG had failed to specify "what facts it wished to discover and how such facts were reasonably expected to create a genuine issue of material fact for trial."  *Id.* at *37.  As explained below, in support of its Rule 56(f) argument, HSG submitted a declaration carefully setting forth the discovery that was needed, including for example the need to take depositions of the WorldCom employees with primary responsibility for the decision to send the critical November Letter.  This discovery would serve to confirm that the November Letter was never intended to serve, and did not serve, as notice of termination of the residual commission obligation.  (*See* Fisher Declaration, Exh. L).

## STATUTORY AND BANKRUPTCY LAW BACKGROUND

Central to this appeal is the question of whether WorldCom rejected its obligation to pay residual commissions to HSG within the meaning of the Code.  Section 365 of the Bankruptcy Code authorizes a debtor to assume or reject executory contracts and unexpired leases.  *See* 11 U.S.C. § 365.  If a debtor elects to assume an executory contract or unexpired lease, the other contracting party can assert its claims on a priority basis.  *See Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944, 955 (2d Cir. 1993).  On the other hand, if a debtor elects to reject the unexpired contract or lease, the rejection is treated as a breach, permitting the other

contracting party to seek damages as a pre-petition claim. *See* 11 U.S.C § 365(g)(1); *Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80, 86 (2d Cir. 2002).

Section 365(g) of the Code controls once a debtor has elected to reject an executory contract or unexpired lease. Under this section, after the debtor rejects the contract, the other contracting party will be treated as a general unsecured creditor. *See* 3 Collier on Bankruptcy § 365.09 (15th Ed. Rev. 2006). Regardless as to when the debtor elects to reject, an election to reject is treated as a breach of contract deemed to have occurred immediately before the date of the filing of the bankruptcy petition. *See* 11 U.S.C. § 365 (g).

In this case, HSG may seek allowance of its claim under 11 U.S.C. § 502(g),[14] with the same priority as a general unsecured creditor. *See* 11 U.S.C. §§ 365(g), 502(g); s*ee also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984). WorldCom moved to reject its surviving residual commission obligation in January 2003. Upon rejection, as an uncontroversial matter of bankruptcy law, HSG is entitled to a claim calculated as though the contract had been breached by WorldCom on the day before WorldCom's bankruptcy petition was filed in July 2002. According to WorldCom's own expert report dated October 31, 2005, in the event HSG were to succeed in proving that WorldCom had rejected the residual commission obligation in January 2003, the total amount of HSG's claim for residual commissions would be approximately $5.4 million.[15] Despite the centrality of the contract rejection issue to HSG's appeal, the Bankruptcy Court did not address it at all – clear error with devastating financial consequences to HSG.

---

[14]     Section 502(g) causes the claim of a non-debtor party upon rejection of an executory contract or unexpired lease to relate back to the date of the filing of the petition. *See* 11 U.S.C. § 502(g).

[15]     A copy of the Expert Report of Robert Sherwin is attached to the Fisher Declaration as <u>Exhibit K</u>.

## ARGUMENT

**I.    There Are Disputed Issues Of Material Fact Concerning Whether WorldCom Terminated The Residual Commission Obligation In November 2002.**

Summary judgment is proper only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  The court should not try issues of fact on a motion for summary judgment, but rather determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in a light most favorable to the party opposing the motion and must draw all permissible inferences from the submitted affidavits, exhibits and discovery in favor of that party.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.  *See Harris v. Provident Life and Accident Insurance Co.,* 310 F.3d 73, 78 (2d Cir. 2002) (vacating the district court's grant of summary judgment due to the existence of genuine issues of material fact); *see also Vermont Teddy Bear Company, Inc., v. 1-800 Beargram Co.,* 373 F.3d 241 (2d Cir. 2004) (vacating order granting summary judgment); *Ray Repp & K & R Music, Inc. v. Andrew Lloyd Webber*, 132 F.3d 882 (2d Cir. 1997) (reversing decision granting summary judgment and noting that the district court erred by undertaking the resolution of a disputed issue of material fact).

Here, the Bankruptcy Court erred by effectively overlooking the substantial record evidence that calls WorldCom's current version of events into question.  Specifically, as explained in more detail below, in finding that the November Letter served to terminate the residual commission obligation to HSG, the Bankruptcy Court failed to consider:

12

- The November Letter itself provides that WorldCom was considering what steps to take in response to the alleged act of customer solicitation. The November Letter did not state that WorldCom had elected to terminate the residual commission obligation. If WorldCom had, in fact, terminated the residual commission obligation, there would have been no contractual basis upon which to continue to insist that HSG comply with the non-solicitation requirement. Rather, relying on the surviving provisions of the Representation Agreement, WorldCom demanded that HSG cease any acts of customer solicitation. Thus, the November Letter was a cease-and-desist letter premised upon the continuing vitality of the mutual obligations contained in the surviving portions of the Representation Agreement.

- In an earlier proceeding, WorldCom's witness testified that the November Letter was a "strong reminder" to comply with the original terms of the Representation Agreement, evidence that WorldCom did not intend the November Letter to terminate HSG's commissions.

- In that same proceeding, WorldCom's counsel made explicit reference to the fact that WorldCom had exercised business judgment in deciding ***not*** to terminate the residual commission obligation.

- After issuing its "strong reminder," in December 2002, WorldCom notified HSG via email that it had decided to reject its residual commission obligation pursuant to operation of bankruptcy law, and that HSG had the right to file a claim in the bankruptcy proceedings as a consequence of that rejection.

- Consistent with the email sent by WorldCom, in January 2003, WorldCom filed a motion with the Bankruptcy Court seeking to reject its residual commission obligation to HSG.

*See generally* Fisher Declaration, Exh. M at 32-37. This is not a case where Appellant contends that the above facts in the record were merely misinterpreted by the Bankruptcy Court. Rather, all of the above evidence was completely overlooked by the Bankruptcy Court in its Decision and Order. Accordingly, the Bankruptcy Court's Order should be vacated.

**II.    The November Letter Is Not Notice Of Termination – At A Minimum, There Is A Triable Issue Of Fact As To Whether It Constitutes Valid Notice Of Termination.**

The Bankruptcy Court erred when it determined as a matter of law that the November Letter served to terminate WorldCom's residual commission obligation. It is true that the Representation Agreement provides WorldCom with the right to cease paying residual

commissions in the event that HSG solicits certain customers in violation of the agreement. However, that right is not self-executing. *See* Fisher Declaration, Exh. G at Section 8.3. It is a remedy that WorldCom must elect – and one that it never elected here. *See id.* Under the agreement, if it elects to terminate residual commissions, WorldCom must provide five-days' prior written notice to HSG that it intends to do so. *Id.* That notice must be provided by registered or overnight mail. *See id.* at Section 16.1. HSG then has five days to cure the alleged breach. *See id.* at Section 2.2.3.[16]

According to the Bankruptcy Court's Decision, the November Letter provided the requisite notice. This finding is erroneous. By its own terms, the November Letter merely informed HSG that WorldCom was "considering what steps to take to protect MCI WorldCom's rights, including, but not limited to, ceasing payment to ATN of any commissions not yet earned under the Agreement pursuant to Section 8.3 of the Agreement." (Fisher Declaration, Exh. I.) The November Letter was plainly a warning letter, written in response to HSG's September Letter. The text of the letter itself -- "considering what steps to take" -- demonstrates that WorldCom had not concluded what course to take. It cannot be interpreted as a notice of termination.

Key facts omitted from the Bankruptcy Court's analysis further confirm that the November Letter was not a notice of termination. For example, WorldCom's Director of Business Operations, Ray Ahern, testified at a previous hearing that the November Letter was simply a "strong reminder" of HSG's obligations under the Agreement. *See* Fisher Declaration, Exh. D at 49. Mr. Ahern testified that, upon learning of the alleged act of solicitation in the September Letter, he, his colleagues, and WorldCom's senior counsel discussed several

---

[16] The customer who was allegedly solicited by HSG never switched service providers, remaining with WorldCom – a fact that is not contested by WorldCom. Accordingly, any harmful effects of the solicitation in September 2002 were effectively cured as a practical matter.

alternatives, including an invocation of WorldCom's rights under section 8.3 to terminate residual commissions, but ultimately decided that "the best course of action" was to send the November Letter. *See id.* at 49-50.[17]

Moreover, WorldCom's behavior after November 14, 2002 is flatly inconsistent with its current position that WorldCom's residual commission obligation to HSG terminated automatically after the November Letter.   For example, it was not until December 17, 2002, over a month after the November Letter, that WorldCom alerted HSG's principal that it had finally elected to reject its residual commission obligation.  WorldCom then took action consistent with is decision and moved to reject the executory contract on January 3, 2003.

In addition, in successfully opposing HSG's motion for administrative claim priority, WorldCom argued that HSG provided WorldCom with pre-petition services pursuant to a pre-petition contract – a position that the Bankruptcy Court accepted in connection with deciding the administrative claim motion. *See* 308 B.R. at 166-67.  WorldCom, however, never argued that the obligation had terminated, either because the September Letter acted as an automatic termination or because the November Letter constituted notice under section 8.3 of the Agreement, even though the parties introduced evidence and took testimony surrounding both letters.

The Bankruptcy Court failed to analyze the above facts in the light most favorable to HSG, as it was required to do.  Instead, the Bankruptcy Court sidestepped all of the disputed factual issues, asserting that notice of breach was required to terminate commissions, but notice that WorldCom intended to terminate commissions was not required.  This reading is not at all compelled by the text of Section 8.3 (*see* footnote 13 above).  Moreover, such a reading is at

---

[17]     In his closing argument, counsel for WorldCom characterized WorldCom's decision not to terminate, and instead to continue paying commissions, as a "business judgment." *Id.*  at 121.  The decision was a reasonable one, because had WorldCom decided to terminate its residual commission obligation to HSG, then HSG would have been free to compete with WorldCom.

odds with WorldCom's own statements to the effect that it had elected not to terminate the residual commission obligation. Clearly, if the Bankruptcy Court had taken all material facts into consideration and drawn all reasonable inferences in favor of HSG, then it would have been clear that summary judgment was not appropriate. *See, e.g., CFJ Assoc. of New York, Inc. v. Hanson Industries et al.*, 260 A.D.2d 917, 918-9 (App. Div. 3d Dep't. 1999) (summary judgment inappropriate where validity of contract termination still in issue); s*ee also First Mississippi Bank of Commerce v. Latch*, 433 So. 2d 946, 950 (Miss. 1983) (reasonableness of notice to terminate contract presented issue for jury).

### III.    WorldCom Is Judicially Estopped From Arguing That The November Letter Terminated Its Residual Commission Obligation.

The Bankruptcy Court permitted WorldCom to argue that its residual commission obligation had been terminated in November 2002, rejecting HSG's argument that WorldCom was estopped from making that argument. This determination was in error. In reaching its conclusion, the Bankruptcy Court failed to consider the single most important fact in support of judicial estoppel: in January 2003, WorldCom brought a motion to reject the residual commission obligation. WorldCom's motion to reject is an act that is plainly at odds with the notion that the residual commission obligation had already been terminated months before.

"Judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position taken by that party in a prior legal proceeding." *Mitchell v. Washingtonville Central High School Dist.*, 190 F.3d 1, 6 (2d Cir. 1999). "The purposes of the doctrine are to preserve the sanctity of the oath and to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." *Id.*

During the course of the Bankruptcy Court proceedings concerning HSG's administrative claim motion, WorldCom never argued that the November Letter provided notice of termination of the residual commission obligation. In successful opposition to HSG's administrative claim

motion, WorldCom argued that HSG's claim against the estate arose pre-petition under a pre-petition contract. However, WorldCom <u>never</u> suggested that it had no liability to HSG on the ground that the November Letter terminated the residual commission obligation. Moreover, on January 3, 2003, WorldCom moved to reject its residual commission obligation to HSG. Clearly, if the November Letter had actually been a notice of termination, rejection would have been unnecessary. Having decided more than three years ago to reject the remaining portion of its agreement with HSG, WorldCom remains liable to HSG as though it breached the agreement on the day before it filed for bankruptcy. *See* 11 U.S.C. § 365(g).

WorldCom's inconsistent positions present an issue of disputed material fact that should have been sufficient to defeat its own motion for summary judgment. Additionally, based upon WorldCom's motion to reject the residual commission obligation, WorldCom should have been judicially estopped from arguing that the November Letter constituted notice of termination of the residual commission obligation. *See, e.g., Wight v. BankAmerica Corp.*, 219 F.3d 79, 89–90 (2d Cir. 2000)(judicial estoppel prevents assertion of factual position contrary to that taken in prior proceeding); *Mitchell v. Washingtonville Central School District*, 190 F.3d at 6 (same); *In re Trace Int'l Holdings, Inc.*, 301 B.R. 801, 806 (Bankr. S.D.N.Y. 2003).

**IV.     The Bankruptcy Court Erred By Denying HSG's Request To Allow Discovery To Proceed Pursuant To Fed. R. Civ. P. 56(f).**

The Bankruptcy Court erred when it refused to permit HSG to take discovery on material issues of fact pursuant to Fed. R. Civ. P. 56(f). As interpreted by the courts, Federal Rule of Civil Procedure 56(f) provides that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery in order to defend the motion, the court should defer decision of that motion until the party has had the opportunity to take discovery and oppose the motion. *See Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,* 271 F.3d 374, 386 (2d Cir. 2001). "The nonmoving party must have had the opportunity to

discover information that is essential to [its] opposition to motion for summary judgment. Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veteran Affairs,* 201 F.3d 94, 97 (2d Cir. 2001) (vacating summary judgment as plaintiffs was denied the opportunity to conduct discovery of any sort, and was even precluded from taking depositions); *see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003) (concluding that the grant of summary judgment without allowing plaintiff an opportunity to conduct discovery was premature).

In opposition to WorldCom's motion for summary judgment below, HSG submitted to the Bankruptcy Court a declaration pursuant to Fed. R. Civ. P. 56(f) (the "56(f) Declaration").[18] The 56(f) Declaration outlined (1) the discovery sought and how it was requested; (2) how the requested discovery is reasonably expected to create a genuine issue of material fact; (3) the efforts made by counsel for HSG to obtain discovery; and (4) the reasons why HSG was unable to obtain its requested discovery. *See Paddington Partners v. Bouchard et al.*, 34 F.3d 1132, 1138 (2d Cir. 1994) (applying four part test regarding adequacy of showing under Fed. R. Civ. P. 56(f)); *American Home Assurance Co. v. Zim Jamaica et al.*, 2006 U.S. Dist. LEXIS 8375 (S.D.N.Y. March 2, 2006) (same).

HSG was deprived of the opportunity to take discovery essential to its opposition to WorldCom's summary judgment motion. For example, on August 30, 2005, HSG served document requests (the "Document Requests") on WorldCom, requesting, *inter alia*, all documents "concerning Debtors' purported rejection of its obligation to pay residual commissions to ATN under the Agreement." *See* 56(f) Declaration, Exh. A. While the Debtors provided a limited response to the Document Requests in late December 2005, the Debtors did

---

[18]    A copy of the 56(f) Declaration (including the exhibits thereto) is attached as Exhibit L to the Fisher Declaration.

not produce the files of Kirk Reynolds (the author of the November Letter that was so central to WorldCom's motion), Brent Lacho, Ray Ahern or George Hampton – all of whom were involved in the decision of how to handle the issue of the residual commissions owed to HSG. *See also* Letter from Michael Tucci, Esq. to Eric B. Fisher, Esq., dated February 27, 2006, a copy of which is attached as Exhibit K to the 56(f) Declaration.

Further, on October 26, 2005, HSG filed a notice to take the depositions of Ray Ahern, George Hampton, Brent Lacho, and others identified by WorldCom as persons with knowledge under Fed. R. Civ. Proc. 26(a)(1)(A). *See Reorganized Debtors' Rule 26(a)(1) Disclosures For Claim Nos. 36482 and 38458 (Filed by HSG/ATN, Inc.) Pursuant to Scheduling Order,* dated May 16, 2005 (the "Rule 26 Statement"). *See* 56(f) Declaration, Exh. C. Furthermore, on November 8, 2005, HSG served a notice to take the deposition of Kirk Reynolds. (Copies of the Deposition Notices are attached as Exhibits B and D to the 56(f) Declaration.) The Bankruptcy Court did not afford HSG an opportunity to proceed with these depositions, all of which would have concerned the November Letter, WorldCom's intent in sending that letter, and WorldCom's decision to move to reject the residual commission obligation in January 2003. In doing so, the Bankruptcy Court denied HSG the opportunity to seek testimony from the key WorldCom employees with knowledge about the key issues in dispute – namely, the November Letter and the decision to reject the residual commission obligation in January 2003.

Moreover, in connection with those documents that WorldCom had produced to HSG in the course of discovery, WorldCom had redacted information concerning other agents besides HSG. This information would have been relevant to show that WorldCom made a conscious decision not to terminate its residual commission obligations, in order to mislead agents into believing that WorldCom intended to pay those commissions.

The Bankruptcy Court denied HSG's request for discovery under Fed. R. Civ. P. 56(f) on the ground that HSG had failed to specify how the discovery sought was relevant to the summary judgment motion. As set forth above, HSG was actually quite specific about the discovery that it needed to support its opposition to WorldCom's summary judgment motion. Review of the 56(f) Declaration that HSG submitted in opposition to WorldCom's summary judgment motion makes plain that HSG was not afforded an opportunity to take discovery that related directly to its arguments in opposition to the summary judgment motion. Perhaps most egregiously, HSG was not permitted to take deposition testimony from the author of the November Letter or any of the three WorldCom employees who received copies of that letter and participated in the decision to send it. Thus, at the very least, the Bankruptcy Court should have allowed HSG a reasonable opportunity to conclude critical discovery.

## **CONCLUSION**

For the reasons set forth herein, Appellant respectfully requests that this Court: (i) vacate the Order and remand this matter to the Bankruptcy Court for the completion of discovery; and (ii) grant such other and further relief as is just and proper.

Dated: New York, New York
           May 14, 2007

                                   MORGENSTERN JACOBS & BLUE, LLC

                                   By: /s/ Eric B. Fisher
                                           Eric B. Fisher (EF-1209)
                                   885 Third Avenue
                                   New York, New York 10022
                                   Telephone: 212.750.6776
                                   Facsimile: 646.349.2816
                                   Email: efisher@mjbllc.com

                                   *Attorneys for Appellant HSG/ATN, Inc.*