08/13/98    10:50  FAX 801 974 8442          FRANK GRILLO                                    004

AUG 10  '98  07:06PM NOLALSKY&BRONSTON                                              P.2
                                                                          Revised 8/98 (wbdm)



# REPRESENTATION AGREEMENT

### Representative:

Name: HSG/ATN INC.

Address: MSC 275, 1357 Ashford Ave Suite #2

City: San Juan    State: PR    Zip: 00907 - 1420

Telephone: 1- 800-705-4000    FAX: 1- 800 - 700 - 4387

Contact Name: Jeffrey P. Bein    Fed Tax I.D.: 66-055 6045

SS #: N/A    E-mail address: jeff@callatn.com

This Agreement is made this __ day of ___, 1998 by and between WorldCom Technologies, Inc. ("WorldCom"), located at 515 East Amite, Suite 200, Jackson, Mississippi 39201-2702, and HSG/ATN, Inc., a Puerto Rico corporation ("Representative"), located at MSC 275, 1357 Ashford Ave., Suite 2, San Juan, Puerto Rico, 00907-1420. In consideration of the mutual promises and covenants set forth in this Agreement, the parties agree as follows:

1. **Appointment:**

1.1 Representative is appointed by WorldCom as WorldCom's authorized representative to obtain orders for the services described in Exhibit A ("Services") in the areas described in Exhibit A. Representative will obtain these orders only from customers located in these areas and only in accordance with the rates, terms and conditions stated by WorldCom. Representative may only use the materials authorized in writing by WorldCom or supplied by WorldCom in obtaining these orders. WorldCom's authorization of Representative-generated forms and order procedures shall not be unreasonably withheld, provided such Representative-generated forms and order procedures comply with WorldCom's forms and procedures.

1.2 "Customers" shall refer to those individuals or companies that Representative has submitted orders for Service and that have satisfied applicable credit requirements established by WorldCom.

1.3 Representative's appointment as WorldCom's authorized representative is non-exclusive and WorldCom retains the right to offer the same or different services through WorldCom employees or other persons or entities which WorldCom may appoint at any time.

1.4 Representative understands that Representative's appointment as WorldCom's authorized representative may be subject to exclusive relationships that WorldCom may have entered into with other persons or entities.

1

This document contains confidential information and may not be disclosed.

8/3/98

D000146

08/13/98    10:50    FAX 601 974 8442          FRANK GRILLO                                    ☒005

AUG 03 '98  07:07PM HOWELSKY&BRONSTON                                                       P.3
                                                                                    Revised 8/98 (wcsm)

1.5 Representative understands that Representative has only those rights specifically described in this Agreement. Representative does not have the authority to bind WorldCom by contract or otherwise or make representations as to WorldCom's policies and procedures, except as set forth herein.

1.6 During the Term of this Agreement, Representative shall not act as an independent contractor or agent of, or sell services or solicit customers for, any other entity with respect to service provided by such entity which would be in competition with the Services listed in Exhibit A ("Exclusivity Provision"). In the event Representative terminates this Agreement pursuant to Section 4.2, Representative shall be relieved from the obligations of this Section 1.6. Notwithstanding the foregoing, the Exclusivity Provision shall not apply to Representative's selling interstate switched inbound and outbound long distance telecommunications service of a provider other than WorldCom provided that the per minute rate for said interstate switched inbound and outbound long distance telecommunications service is $0.089.

1.7 In further consideration of the obligations to be performed by WorldCom under this Agreement, including without limitation, the commission to be paid to Representative hereunder, Representative agrees during the Term of this Agreement (including any extensions thereof) that Representative will not, directly or indirectly, separately or in conjunction with others, solicit, persuade or entice any employee of WorldCom, or any or its affiliates or subsidiaries, including without limitation, WorldCom Network Services, Inc., IDB WorldCom Services, Inc., TTI National, Inc. and MFS Intelenet, Inc. (collectively the "WorldCom Group") to work for or with Representative as an employee, agent, subcontractor, representative or in any other similar type capacity.

1.8 Representative understands Representative's appointment herein is subject to the rules and regulations of the Federal Communications Commission (FCC) and the various regulatory authorities of each state, and Representative hereby agrees to be fully responsible for the actions of Representative's employees, agents, subagents, and contractors ("Representative's Agents") and to abide by all laws, rules, regulations, administrative decisions and pronouncements of the FCC and all such regulatory authorities, including but not limited to, all applicable FCC and state rules regarding Customer slamming and cramming, the violation of which will result in severe penalties and adverse consequences for WorldCom. Representative further acknowledges that Representative will be responsible for any errors Representative or Representative's Agents make that result in the imposition of liability against WorldCom and Representative agrees to reimburse WorldCom for any penalty that may be imposed upon WorldCom as a result of Representative's or Representative's Agents' actions.

1.9 In the event WorldCom does not execute an agreement relative to WorldCom's acquisition of Representative's Customers within sixty (60) days of the Effective Date of this Agreement, then Representative may terminate this Agreement. In the event Representative terminates this Agreement pursuant to this Section 1.9, then this Agreement shall become null and void (with no obligations remaining on the part of either party hereunder) and the Previous Representation Agreements (as such term is defined in Section 18.8 below) shall be reinstated and shall be in full force and effect in accordance with their terms, with the exception that WorldCom shall not restrict Representative from contacting those Customers brought to WorldCom pursuant to, and subsequent to the Effective Date of, this Agreement for the purpose of switching said Customers to another telecommunications service provider.

2

This document contains confidential information and may not be disclosed.                        8/3/98

D000147

AUG 03 '98  07:08PM NOWALSKY&BRONSTON                                    P.4
                                                                        Revised 6/98 (wcom)

## 2.  Term and Termination:

2.1  The term of this Agreement will be for a period of two (2) years from the date that WorldCom executes this Agreement ("Term"). At the expiration of the Term or extension thereof, this Agreement will continue on a month-to-month basis until it is terminated by either party upon at least thirty (30) days prior written notice to the other party.

2.2  WorldCom may terminate this Agreement and cease payment of commissions as set forth in Section 6 of this Agreement, effective immediately, in the event of:

2.2.1  Representative's insolvency, bankruptcy, receivership or dissolution; or

2.2.2  Representative's assignment of this Agreement or any of Representative's duties under this Agreement to another party unless specifically allowed under this Agreement; or

2.2.3  Representative's breach of any provision of this Agreement and Representative fails to cure such breach within five (5) days after written notification by WorldCom; or

2.2.4  Representative's making a misrepresentation to an actual or prospective Customer more than three (3) times within any six-month period and Representative's failure, after written notification by WorldCom, to take immediate steps to remedy such misrepresentation and/or prevent such misrepresentation from occurring again; or

2.2.5  Representative or Representative's parent corporation, Representative's subsidiaries or any entities having common ownership with Representative offering services other than the Services to a prospective Customer in violation of Section 1.6 above and such breach is deemed material by WorldCom in its sole discretion.

## 3.  Obligations of Representative:

3.1  Representative will answer calls of potential Customers, using inbound telemarketing, with an objective of obtaining orders for Services ("Telemarketing"). At all times in conducting such Telemarketing activities, Representative warrants that Representative will maintain the highest professional standards and practices and will comply with all federal, state and local laws governing telemarketing in general and telemarketing to end-users of telecommunications services specifically. In addition, Representative will follow the ethical guidelines for Telemarketing published by the Direct Marketing Association, the requirements of which are incorporated herein by reference.

3.2  Representative will provide all personnel and training necessary to effectively execute Telemarketing on behalf of WorldCom. The Telemarketing personnel will include supervisory and quality-control personnel necessary to successfully conduct Telemarketing and insure that all Telemarketing conforms with the specifications of this Agreement and all federal, state and local laws governing telemarketing in general and telemarketing to end-users of telecommunications services specifically.

This document contains confidential information and may not be disclosed.
                                                                                    8/3/98

D000148

08/13/98   10:50  FAX 601 974 8442          FRANK GRILLO                                    ☒007

AUG 03 '00  07:06PM HOLTLSKY&BRONSTON                                    P.5
                                                                        Revised 8/98 (wcom)

### 4.  Obligations of WorldCom:

4.1 WorldCom shall provide Representative the Service levels set forth in Exhibit D, attached hereto and incorporated herein. Notwithstanding the foregoing, the Service levels set forth in Exhibit D shall not apply to customer service provided by TJT National's Wayne, New Jersey customer service location.

4.2 In the event WorldCom fails to achieve the Service levels as set forth in Exhibit D, Representative shall provide WorldCom with written notice of such deficiency and WorldCom shall have thirty (30) days from its receipt of such notice to cure the deficiency. In the event such deficiency is not cured within thirty (30) days, Representative may terminate this Agreement and WorldCom shall continue payment of commissions to Representative pursuant to Exhibit B.

4.3 As soon as technically feasible, WorldCom shall provide Representative with access to WorldCom's billing systems, solely for the purpose of allowing Representative to view Customer account information and process Customer orders.

4.4 WorldCom's obligations under this Section 4 shall be excused in the event of a force majeure event. Such force majeure event shall include any Act of God or other uncontrollable force. Uncontrollable force is any cause beyond the control of WorldCom, including but not limited to: flood, earthquake, storm, lightning, fire, epidemic, war, riot, civil disturbance, sabotage; or restraint, injunction, or restriction by any federal or state court, agency, administrative body, or public authority; or a lawful order entered in any lawsuit or regulatory proceeding which effects a restraint of WorldCom's performance under this Agreement.

### 5.  Submission of Orders:

5.1 Customer orders that Representative has obtained on WorldCom's behalf will be submitted to WorldCom according to the procedures that WorldCom gives to Representative and on the order forms that WorldCom provides to Representative. WorldCom may from time to time change order submission procedures and order forms, but WorldCom will give Representative written notice of any change before the effective date of the change and shall provide Representative with a reasonable opportunity to modify Representative-generated forms and order procedures to comply with such change instituted by WorldCom.

5.2 Representative is entirely responsible for the validity of the orders that the Representative submits, as well as for the correctness of the information that is contained in the orders that the Representative submits. Representative understands that any inaccuracies in such information may result in lengthy delays in the processing of such orders.

5.3 All Customer orders that the Representative obtains are subject to WorldCom's final approval. WorldCom reserves the right, in its sole discretion and for any reason, to reject any Customer order that Representative obtains, and WorldCom may at any time discontinue offering or selling any Service to any Customer without incurring any liability to Representative.

5.4 WorldCom makes no warranties as to WorldCom's abilities to fulfill orders for Services.

4

This document contains confidential information and may not be disclosed.                    8/3/98

AUG 03 '98  07:09PM NOWALSKY&BRONSTON                                          P.6
Revised 8/03 (NCOM)

5.5 In the event WorldCom determines that the accuracy of Service orders submitted by Representative have not been sufficiently accurate, WorldCom may require Representative to attend a training session on service orders at Representative's expense.

5.6 In the instance where a telemarketed prospect accepts a proposed offer for switched outbound service, Representative will collect and confirm the information outlined within a WorldCom approved script and transfer the prospect to an independent third party verification agent approved by WorldCom.

5.7 Representative shall obtain WorldCom's approval of Representative's Telemarketing and third party verification scripts before use. WorldCom's approval of such scripts shall not be unreasonably withheld.

5.8 All telemarketed orders requiring third party verification accepted by WorldCom on behalf of Representative shall be accepted via the third party verification company approved by WorldCom.

6.  Commissions:

6.1 During the Term, WorldCom will pay Representative commissions on Customer accounts in accordance with Exhibit B. Representative will not be entitled to, and WorldCom will not be under any duty to pay Representative, a commission with respect to any Customer account which is an existing customer of any member of the WorldCom Group as determined in the sole discretion of WorldCom ("Excluded Account").

6.2 WorldCom shall not pay Representative commissions on any of Representative's Customer accounts:

6.2.1  after termination of this Agreement if termination is by WorldCom according to paragraph 2.2; or

6.2.2  if Representative contacts a WorldCom Group customer in violation of Section 8 of this Agreement; or

6.2.3  if Representative solicits, persuades or entices an employee of the WorldCom Group in violation of paragraph 1.7 of this Agreement.

6.3 WorldCom may offset against any commissions that WorldCom may owe to Representative any amounts that Representative may owe to WorldCom under this Agreement or any other agreement.

7.  Pricing and Terms of Product Offerings

7.1 WorldCom retains the sole and exclusive right to prescribe the prices and terms under which it will offer Services. This includes, but is not limited to, the right to change rates and prices, including those set forth in Exhibit A, restrict offerings, amend regulations, or entirely discontinue the offering of specific services, with or without notice to Representative and without incurring any liability to Representative. Any such change, restriction, amendment or discontinuance shall be at WorldCom's sole discretion, and will become effective on the date specified by WorldCom. Notwithstanding the above, should WorldCom increase the ULTRAcard Interstate rate set forth in Exhibit A,

5

This document contains confidential information and may not be disclosed.                    8/3/98

08/13/98   10:50   FAX 601 974 8442          FRANK GRILLO                        ☒009

08/04/98  13:49     TX/RX NO.8088   P.007

AUG 03  98  07:18PM  NOWALSKY&BRONSTON                                    P.7
                                                                 Revised 8/98 (team)

Representative shall have the right to terminate this Agreement and WorldCom shall continue payment of commissions to Representative pursuant to Exhibit B.

7.2 Representative shall not, in any communication with Customers or prospects, offer prices for services that are other than the published prices for the Services specified on Exhibit A , nor will Representative offer volume discounts, rebates, or waivers, or any other price adjustment, except with the express written authorization by WorldCom, except as provided in Section 1.6

7.3 In the event TTI National files a tariff or tariffs containing a new generally-available product ("New Service Offering"), then, at the option of Representative, WorldCom and Representative shall amend Exhibit A of this Agreement to include the New Service Offering and, in WorldCom's sole discretion, amend Exhibit B of this Agreement to reflect the corresponding New Service Offering commissions for Representative.

8.   **Representative's Contact with WorldCom Group Customers:**

8.1 For so long as WorldCom pays Representative commissions in accordance with Exhibit B, Representative agrees that Representative will not contact any Customer of WorldCom Group customers procured pursuant to this Agreement or any other Agreement with the WorldCom Group for the purpose of inducing them to switch to another provider of any service which competes with the Services. Representative warrants that Representative's agreements with Representative's agents and distributors presently include, and shall continue to include, the non-solicitation and non-competition covenants contained in this Section 8.1 and shall be enforceable against such agents and distributors to the same extent that this Section 8.1 is enforceable against Representative.

8.2 WorldCom shall not restrict Representative from selling telecommunications services other than those Services set forth in Exhibit A of this Agreement and not provided by WorldCom, only in the event that Representative shall give WorldCom ninety (90) days prior written notice allowing WorldCom to give Representative an offer of a similar telecommunications services consisting of equivalent pricing and features ("Matching Offer"). Should WorldCom provide Representative with a Matching Offer, Representative shall not sell the telecommunications services of another telecommunications service provider. Notwithstanding the foregoing, the Matching Offer shall not apply to Representative's selling interstate switched inbound and outbound long distance telecommunications Service of a provider other than WorldCom provided that the per minute rate for the interstate switched inbound and outbound long distance telecommunications service is $0.089.

8.3 If Representative contacts a Customer or WorldCom Group customer as described in Section 8.1, WorldCom will suffer harm that WorldCom cannot now measure. Therefore, WorldCom and Representative agrees that if Representative does so contact a Customer or WorldCom Group customer, WorldCom will give Representative five (5) days prior written notice, at the end of which period WorldCom's obligation to pay Representative any commissions not yet earned under this Agreement will cease.

8.4   WorldCom shall allow Representative to sell a dial-up Internet product not provided by Worldcom ("Non-WorldCom Internet Offering"). Within ninety (90) days of the execution of this Agreement, WorldCom may elect to provide Representative with the ability to market similar Internet services consisting of equivalent pricing and features and equivalent commissions to Representative



5
This document contains confidential information and may not be disclosed.

8/3/98

06.04.98  12:40PM  *ATN 18007001587  FAX                          P.07

D000151

08/13/98    10:50  FAX 601 974 8442          FRANK GRILLO

08/04/98 13:49   TX/RX NO.8088    P.008

AUG 03 '98  07:11PM NOHR SKY&BRONSTON                    P.8
                                                     Revised 8/98 (scan)

("Matching Internet Offer"). Should WorldCom provide Representative with a Matching Internet Offer, Representative shall not sell, market or otherwise distribute the Non-WorldCom Internet Offering.

8.5 If WorldCom lowers the rate of commissions that Representative earns or may earn on the accounts of any Customers brought to WorldCom pursuant to, and subsequent to the Effective Date of, this Agreement, WorldCom shall not restrict Representative from contacting those Customers for the purpose of switching said Customers to another telecommunications service provider.

9.  **Representative's Use of WorldCom's Name and WorldCom's Property:**

9.1 WorldCom grants to Representative a limited license to use TTI National's name and federally registered and protected service marks, and any other service marks that WorldCom may authorize, ONLY in connection with Representative's obtaining Customer orders for WorldCom pursuant to this Agreement. Representative may not use WorldCom's or TTI National's trade name or service marks without WorldCom's prior written approval, which WorldCom is free to withhold for any reason in its sole discretion.

9.2 This limited license will terminate when this Agreement terminates or if WorldCom, in its sole discretion, gives Representative written notice to stop using TTI National's trade name or service marks. After this limited license terminates, Representative will not be permitted to refer to itself as a TTI National representative or otherwise use TTI National's trade name and service marks, and Representative must return all of TTI National's materials to WorldCom.

9.3 All materials used by Representative to solicit Customers and obtain orders are subject to WorldCom's prior written approval. Prior to any use by Representative of TTI National's name or trademarks in any advertising or descriptive materials, Representative must submit samples of the materials to WorldCom for written approval. If approved, the materials will be returned with a letter of authorization signed by WorldCom within a reasonable time. If approved, Representative's use of TTI National's name or trademark is limited to the use set forth in WorldCom's letter of authorization and will terminate upon expiration of this Agreement.

10.  **WorldCom's Use of Representative's Name and Representative's Property:**

10.1 Representative grants to WorldCom a limited license to use Representative's service marks, and any other service marks that Representative may authorize, ONLY in connection with WorldCom's provisioning of Service. WorldCom agrees not to license any third party use of Representative's service marks.

11.  **Representative's Status as Independent Contractor:**

11.1 Representative understands that Representative is an independent contractor and not an employee of WorldCom under this Agreement. WorldCom is interested only in the orders for Services that Representative obtains. Representative will have total control of the management of Representative's business, subject to the limitations contained in this Agreement. WorldCom will not require Representative to do anything that would jeopardize Representative's status as independent contractor under this Agreement. Representative may not, however, enter into any agreement on behalf of WorldCom or otherwise obligate WorldCom without WorldCom's prior written approval.

This document contains confidential information and may not be disclosed.                    8/1/98

80'd          XVA L98P00T008T NTA× KOP:ZT 86 PO 80

D000152

600 ·d      8808 ON XU/XT   67:81 86/70/80

AUG 09 '98  07:11PM MOWALSKY&BRONSTON                                    P.9
                                                                Revised 6/98 (recpie)

## 12.  Expenses; Taxes:

12.1 All of the expenses that Representative incur in connection with Representative's efforts to obtain orders for Services will be entirely Representative's responsibility. WorldCom will not in any way be responsible or liable for such expenses.

12.2 Representative will be responsible for payment of all taxes and other fees due as a result of WorldCom's payment of commissions to Representative.

## 13.  Confidential Information:

13.1 Each party understands that in performing this Agreement it may have access to private or confidential information relating to the other party and its customers. With respect to all such information and any other information that either party may treat as confidential, each party agrees that the information will:

13.1.1 remain the exclusive property of the disclosing party;

13.1.2 not be copied, published or disclosed to others;

13.1.3 be used solely in the receiving party's performance of this Agreement; and

13.1.4 be returned to the disclosing party upon termination of this Agreement.

## 14.  Limitation of WorldCom Liability:

14.1     WORLDCOM WILL NOT BE LIABLE TO REPRESENTATIVE WITH RESPECT TO THIS AGREEMENT EXCEPT FOR WORLDCOM'S OWN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. WORLDCOM WILL NOT BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL OR INDIRECT LOSS OR DAMAGE OF ANY KIND. WORLDCOM WILL HAVE NO LIABILITY TO REPRESENTATIVE FOR COMMISSIONS THAT MIGHT HAVE BEEN EARNED UNDER THIS AGREEMENT BUT FOR THE INABILITY OR FAILURE OF WORLDCOM TO PROVIDE SERVICES TO ANY PERSON SOLICITED BY REPRESENTATIVE OR IN THE EVENT OF DISCONTINUATION OR MODIFICATION OF THE SERVICES.

## 15.  Indemnification:

15.1 Representative agrees to indemnify and hold harmless WorldCom and WorldCom's affiliates, and the officers, directors, partners, shareholders, employees, agents, successors, assigns and independent contractors of WorldCom and its affiliates from and against all loss, claims, damages, liabilities or expense of any description (including, but not limited to reasonable attorneys fees and costs) arising out of Representative's acts or omissions (or those of Representative's officers, directors, partners, shareholders or employees, if any), including but not limited to misrepresentation of WorldCom's services or prices.  Representative agrees to promptly defend against any of those losses, claims, damages, liabilities or expenses but will not settle without consulting with WorldCom and obtaining

8
This document contains confidential information and may not be disclosed.                    6/3/98

D000153

08/13/98   10:50   FAX 601 974 8442          FRANK GRILLO                                      ☒012

08/04/98   13:49          TX/RX NO.8088                                            P.010

AUG  03  '98   07:12PM  HOUR_SKYL_BRONSTON                                       P.10
                                                                              Revised 8/08 (second)

WorldCom's   prior written consent.   Representative must also allow WorldCom to participate in
WorldCom's defense at WorldCom's expense.

15.2    Representative shall indemnify and hold WorldCom harmless from and against any and all
claims, demands, suits, judgments or sums of money awarded to any party and accruing against
WorldCom resulting from any act and/or omission of Representative, its agents, servants or
representatives while engaged in, or in connection with, the discharge or performance of the services to
be done or performed by Representative hereunder and shall also hold WorldCom harmless from any
and all claims and/or liens for labor, services or materials furnished to WorldCom in connection with the
performance of Representative's obligations under this Agreement.

15.3    Representative understands that Representative's appointment herein is subject to the rules and
regulations of the Federal Communications Commission (FCC) and the various regulatory authorities of
each state, and Representative hereby agrees to be fully responsible for all of Representative's agents,
servants and representatives and to abide by all laws, rules, regulations, administrative decisions and
pronouncements of the FCC and all such regulatory authorities, including but not limited to all
applicable FCC and state rules regarding customer slamming and cramming, the violation of which may
result in severe penalties and adverse consequences for WorldCom.

15.4    Representative understands that it is responsible for any orders submitted to WorldCom, as well
as for the correctness of the information that is contained in the orders. Any disputes regarding the
validity of an order that results in the imposition of a PIC dispute charge upon WorldCom shall be
reimbursed to WorldCom by Representative fully, immediately and in cash.  WorldCom may obtain
such reimbursement through a deduction in any commissions owed by WorldCom to Representative.  In
the event the amount of the commissions owed is insufficient to fully reimburse WorldCom pursuant to
this paragraph, Representative agrees to fully and immediately pay WorldCom the remainder.

15.5    In connection with the services to be rendered under this Agreement, Representative shall not
engage in any pyramid scheme or multilevel marketing plan which violates any state or federal laws.
Specifically, in connection with the marketing activities to be carried out under this Agreement,
Representative shall not engage in any plan or operation wherein a person acquires the opportunity to
receive a pecuniary benefit which is based upon the inducement of additional persons by that person,
and/or others, regardless of number, to participate in such plan or operation, and is not contingent on the
volume of WorldCom's services sold to the public.

15.6    Representative shall be solely and singularly responsible for payment of any commissions
owed to Representative's employees, servants or representatives. Nothing contained herein shall be
construed to create any obligation by WorldCom whatsoever to pay commissions to any of
Representative's employees, servants or representatives. Representative warrants and represents that
it shall fully and faithfully pay commissions owed to its employees, agents and representatives in
accordance with its own internal policies and procedures. Representative shall indemnify and hold
harmless WorldCom from and against any and all claims by any of Representative's employees,
agents or representatives for payment of commissions. Additionally, WorldCom shall have no
responsibility for the payment or withholding of taxes in connection with any commissions due
hereunder.

9

This document contains confidential information and may not be disclosed.                8/3/98

08:04:98  2:40PM  MAIN  BRONSTON  FAX                                P.10

D000154

08/13/98  10:50  FAX 601 974 8442          FRANK GRILLO

P.011    8008 .ON XR/XT  13:49  86/40/80

AUG 03 '98  07:13PM NOKIA_SKY&BRONSTON                                    P.11
                                                                    Revised 3/98 (NOKIA)

## 16.  Notices

16.1 Any notice required by this Agreement will be effective and deemed delivered three (3) business days after posting with the United States Postal Service when mailed by certified mail, return receipt requested, properly addressed and with the correct postage, one (1) business day after pick-up by the courier service when sent by overnight courier, properly addressed and prepaid.

16.2 Notices will be sent to the addresses set forth in this Agreement, unless either party notifies the other in writing of an address change.

## 17.  Change of Terms

17.1 Except for those provisions of this Agreement which WorldCom may change at any time in its sole discretion as provided herein, this Agreement cannot be changed or modified except if agreed upon in writing, signed by both parties.

## 18.  Miscellaneous

18.1 Representative may not assign this Agreement. For purposes of this Agreement, WorldCom consents to Representative's use of agents and representatives (unless such agents or representatives have previously executed a Representation Agreement directly with the WorldCom Group) to perform any or all of Representative's duties hereunder; provided, however, Representative shall remain solely responsible for all actions taken by such agents and representatives.

18.2 Representative may not subcontract with other persons or entities to perform the services Representative is obligated to perform under this Agreement.

18.3 This Agreement is a Mississippi agreement and is governed by and interpreted according to the laws of the State of Mississippi applicable to Mississippi agreements. The parties hereby stipulate that any dispute or controversy arising from this Agreement or the performance hereof shall be heard in a court of competent jurisdiction for the County of Hinds, State of Mississippi, and the parties hereby submit to the exclusive jurisdiction and venue of such court.

18.4 Neither party will be liable for failure to perform its obligations hereunder due to causes beyond its control, including acts of God, laws or requirements of any government, national emergencies or labor difficulties.

18.5 If any of the provisions of this Agreement are determined to be invalid, the remaining provisions will still be valid.

18.6 Headings are used in this Agreement for convenience only and are not to be used to interpret this Agreement or any of its provisions.

18.7 This Agreement is subject to all applicable existing and future laws, rules and regulations of any governmental authority and the applicable tariffs.

This document contains confidential information and may not be disclosed.               8/3/98

P.11      FRANK GRILLO  18007002471  MAIN  12:40P.M.  98  04  08

D000155

08/13/98   10:50  FAX 601 974 8442        FRANK GRILLO                    ☒014

08/04/98  13:49   TX/RX NO.8008   P.012

AUG 03 '98  07:14PM NOURLSKY&BRONSTON                                    P.12

18.8 This Agreement contains the full understanding of the parties and supersedes the March 4, 1997 Representation Agreement between Hospitality Services Group, Inc. d/b/a American Travel Network and TTI National, Inc. and the January 17, 1996 Representation Agreement between WorldCom, Inc. d/b/a LDDS WorldCom and Hospitality Services Group, Inc. d/b/a American Travel Network (collectively "Previous Representation Agreements").

18.9 During the term of this Agreement, Representative agree to maintain insurance coverage in amounts and according to the terms set forth in Exhibit C attached hereto.

18.10 Provided both parties execute this Agreement as provided herein, the effective date of this Agreement is July 1, 1998 (the "Effective Date").

IN WITNESS WHEREOF, the parties have signed this Agreement and the individuals signing below represent that they have the authority to sign for and on behalf of the respective parties.

WORLDCOM TECHNOLOGIES, INC.          AMERICAN TELECOM NETWORK

By: _____                By: _____

Name: Frank Grillo                   Name: Jeffrey P. Bein

Title: Vice President, Marketing     Title: President

Date: 8/14/98                        Date: 8/4/98

J1
This document contains confidential information and may not be disclosed.        8/3/98

D000156

08/13/98    10:50  FAX 601 974 8442          FRANK GRILLO                          Ⓐ016

08/04/98 13:49    TX/RX NO.8088    P.013

AUG 00  '00  07:14PM  NOLL SOVERNTNGTON                                P.13
                                                               Revised 8/90 (noon)

## EXHIBIT A

1. Representative is authorized to obtain orders for the following TTI National, Inc. ("TTI National") Services (collectively "Services") as provided subject to the rules and regulations of the applicable TTI National Tariff ("Tariff"):

   ULTRAcall 1+®
   ULTRAcall Toll Free®
   ULTRAcard®

2. Representative's non-exclusive sales area will be:

   The Continental United States (and elsewhere upon prior written approval from WorldCom)

3. During the Term of this Agreement, Customers shall receive the following rates for the designated ULTRAcall 1+®, ULTRAcall Toll Free® and ULTRAcard® Services:

| ULTRAcall 1+® Interstate Rate (Per Minute) | |
| --- | --- |
| | Switched Outbound |
| Peak | $0.099 |
| Off-Peak | $0.099 |

| ULTRAcall Toll Free® Interstate Rate (Per Minute) | |
| --- | --- |
| | Switched Inbound |
| Peak | $0.099 |
| Off-Peak | $0.099 |

| ULTRAcard® Domestic Rate (Per Minute) |
| --- |
| $0.149 domestic calling card per call Surcharge waived |

12

This document contains confidential information and may not be disclosed.                  8/3/98

08 04 98 12:40PM *ATN 1800700767 FAX          P.13

D000157

08/13/98   10:50  FAX 601 974 8442          FRANK GRILLO

TX/RX NO.8068   P.014

AUG 03 '98  07:14PM NO-ALSKTBRONSION                    P-14
                                                        Revised BAS (vcom)

ULTRAcall 1+®, ULTRAcall Toll Free®, ULTRAcard® Services shall be billed in six (6) second initial and six (6) second subsequent billing increments.

Customers shall receive the TTI National Combined Business Calling Plan Option A intrastate rates for switched outbound and switched inbound intrastate service.

Customers shall receive the TTI National Combined Business Calling Plan Option C international rates for international service.

A per call surcharge for toll-free calls from payphones shall apply to the Services.

Service usage minimums and Toll-Free Monthly Recurring Number charges shall not apply.

Customers shall receive the TTI National standard Combined Business Calling Plan Option A rates for dedicated outbound and dedicated inbound Service.

13
This document contains confidential information and may not be disclosed.
                                                        8/3/98

D000158

08/13/98   10:50  FAX 601 974 8442          FRANK GRILLO

08/04/98 13:49   TX/RX NO.8086   P.015

AUG 03 '98  07:15PM NOWELSKY&BRONSTON                          P.15
                                                          Revised 6/98 (wcom)

## EXHIBIT B
## Commissions

Each month during the Term of this Agreement, WorldCom will pay Representative a commission on each of Representative's Customer accounts. WorldCom will pay Representative commissions on these Customer accounts based on the "Customers' Adjusted Billed Usage", which is the amount WorldCom bills these Customers' accounts for Services as provided in Exhibit A and under Previous Representation Agreements, less credits, monthly recurring fees, any applicable taxes, and less five percent (5%) as a reserve for bad debt and billing adjustments. For purposes of this Agreement, in addition, Customers' Adjusted Billed Usage, WorldCom agrees to include Customer accounts previously reporting on the Effective Date of this Agreement. WorldCom reserves the right in WorldCom's sole discretion, to revise or adjust further any Customers' Adjusted Billed Usage in the event of toll fraud, PIC dispute(s) or any extraordinary event, including but not limited to accounts over ninety (90) days past due ("bad debt"). WorldCom will pay Representative commissions as follows:

1. During the Term of this Agreement, Representative's commissions shall be twenty-two percent (22%) of Customers' Adjusted Billed Usage.

2. WorldCom will pay Representative the commissions that WorldCom owes Representative within forty-five (45) days after the end of the month in which the Customers receive their bills. If the amount that WorldCom owes Representative is one hundred dollars ($100.00) or more.  If this amount that WorldCom owes Representative is less than one hundred dollars ($100.00), WorldCom may withhold payment until the amount due becomes one hundred dollars ($100.00) or more in any subsequent period.

3. Except as set forth in Sections 2.2, 6.2, and 8.3 of this Agreement, WorldCom will continue to pay commissions to Representative after this Agreement terminates for as long as Customers' Adjusted Billed Usage exceeds the sum of twenty five thousand dollars ($25,000) (the "Amount"). WorldCom's obligation to pay Representative will cease beginning the first month, after the termination of this Agreement, that Representative's Customers' Adjusted Billed Usage is less than or equal to the Amount

This document contains confidential information and may not be disclosed.          8/3/98

80 '04  98 12:40PM MATN 16007002387 FAX          P.15

D000159

08/13/98   10:50   FAX 601 974 8442        FRANK GRILLO                              018

08/04/98  13:49     TX/RX NO.8088       P.016

AUG  03 '98  07:15PM NOWALSKY&BRONSTON                                      P.16
                                                                    Revised 8/94 (recert)

# EXHIBIT C

## Insurance Requirements

1.      Representative shall obtain, pay for and maintain insurance for the coverages and amounts
of coverage not less than those set forth below and shall provide WorldCom certificates issued by
insurance companies satisfactory to WorldCom, in its sole discretion, to evidence such coverages
naming WorldCom as additional insured. Such certificates shall provide that there shall be no
termination, non-renewal, or modification of such coverage without (30) days' prior written notice
to WorldCom. In the event Representative fails to comply with the provisions of this paragraph,
WorldCom may, at WorldCom's option and in WorldCom's sole discretion, provide written
notice to Representative of the suspension this Agreement until there is full compliance with this
paragraph, or terminate the Agreement.

     a.      Workers' compensation complying with the law of the State or States of
operation, whether or not such coverage is required by law, and Employer's Liability
insurance with limits of $500,000 each accident, including occupational disease
coverage with a limit of $500,000 each employee and $500,000 disease policy limit.
If work is to be performed in Nevada, North Dakota, Ohio, Wyoming, Washington
or West Virginia, Representative will purchase Workers' Compensation in the State
Fund established in the respective States.  Stop Gap Coverage or Employers
Overhead coverage shall also be purchased.

     b.      Commercial General Liability insurance with a combined    single limit for
bodily injury and property damage of $1,000,000 each occurrence and aggregate
general and products liability limits of $2,000,000 each, covering all of
Representative's insurable obligations or operations.  The policy shall include no
modifications that reduce the standard coverages provided under a Commercial
General Liability insurance policy form.

     c.      Business Automobile Liability insurance with a combined single limit for
bodily injury and property damage of $1,000,000 each occurrence to include
coverage for all owned, non-owned and hired vehicles.

2.  ·       Notwithstanding the requirements contained in Section 1 above, Representative will not
be required to pay for and maintain insurance for the coverages and amounts of coverage set forth
in Section 1 above if Representative is exempt by applicable state law or statute from compulsory
coverage of such insurance. If Representative is not exempt by applicable state law or statute from
compulsory coverage of such insurance, WorldCom agrees to waive such requirements, provided,
however, in such case, Representative agrees to indemnify and hold WorldCom harmless from
any and all claims, actions, damages, expenses and other liabilities including reasonable attorney's
fees and costs of litigation, resulting from any workers' compensation claim or claim for bodily
injury and/or property damage asserted by Representative or any third party in conjunction with or
arising from the subject matter of this Agreement.

This document contains confidential information and may not be disclosed.                8/1/98

08. 04. 99  12:40PM  WATN 18007024367  FAX                                   P.16

D000160

AUG 03 98  07:11PM NONFLSKYBRONSTN                                          P.17
Revised and (second)

3.      In the event coverage is denied or reimbursement of a property presented claim is disputed by the carrier for insurance provided in paragraphs 1 and 2 above, Representative shall, upon written request, provide WorldCom with a certified copy of the involved insurance policy or policies with in ten (10) business days of receipt of such request.

4.      Representative agrees to waive Representative's right and Representative's underwriter's right of subrogation against WorldCom, WorldCom's officers, directors, agents, and employees, provided that such waiver is waiting, prior to loss does not void or alter coverage.

5.      Neither the insurance required herein or the amount or type of insurance maintained by Representative shall limit or affect the extent of Representative's liability hereunder for injury, death, loss or damage.

6.      WorldCom shall not insure or be responsible for any loss or damage to property of any kind owned or leased by Representative or Representative's employees, servants and agents. Any policy of insurance covering property owned or leased by Representative against loss by physical damage shall provide that the underwriters have given their permission to waive their rights of subrogation against WorldCom, WorldCom's affiliates and WorldCom's directors officers and employees.

This document contains confidential information and may not be disclosed.              8/3/98

D000161

09/03/02  16:34 FAX

04/18/00  15:19  FAX 801 460 8459          SPECIAL MKTS                    ☑017
                                                                          ☑017

                              RX NO.8088  13:49  08/04/98  P.018

AUG 03 '98  MON 11:51PM WORLDCOM WASHINGTON                          P.18
                                                                    Revised 8/98 (word)

## EXHIBIT D.
### *Service Levels*

Hold times for on Customer calls to TTI Customer Service are not to exceed six (6) minutes more than three (3) consecutive days in a five day work week. Representative may test TTI National Customer Service hold times daily by placing one test call per day.

WorldCom agrees to maintain an inventory of at least 2 months of Representative's calling card stock.

WorldCom agrees to send out the following to new Customers: (i) a welcome letter, (ii) a calling card, and (iii) a Toll Free Number application letter within 10 business days from the time WorldCom receives a complete order from Representative containing all information necessary to process such order.

WorldCom agrees to credit check and process complete switched outbound and calling card orders within 3 business days and complete toll free orders within 5 business days of WorldCom's receipt from Representative of a complete order containing all information necessary to process such order.

For additional orders for existing Customers, WorldCom agrees to process Representative's orders for switched outbound, inbound and toll-free service within 3 business days of WorldCom's receipt from Representative of a complete order containing all information necessary to process such order.

This document contains confidential information and may not be disclosed.          3/3/98

AUG 04 '98 12:40PM *ATN 18007004387 FAX                    P.18

SEP 03 2002 17:00

                                                    PAGE.17

D000162

## FIRST AMENDMENT TO REPRESENTATION AGREEMENT

This First Amendment to Representation Agreement (the "First Amendment") is made by and between WORLDCOM TECHNOLOGIES, INC., ("WorldCom") and HSG/ATN, INC., a Puerto Rico corporation ("Representative"), as of WorldCom signature date below.

WHEREAS, WorldCom and Representative entered into a certain Representation Agreement that was executed by HSG/ATN and subsequently accepted by WorldCom on August 4, 1998 ("Agreement"); and

WHEREAS, MCI and Representative desire to enter into this First Amendment for the purpose of amending the Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency being hereby acknowledged, WorldCom and Representative agree as follows:

1. The terms of this First Amendment will become effective as of June 1, 1999, upon execution by Representative and acceptance by WorldCom (the "First Amendment Effective Date").

2. Definitions. All capitalized terms not defined in this First Amendment have the respective meanings given to those terms in the Agreement.

3. Commencing on the First Amendment Effective Date, Section 2.1, Term and Termination, will be deleted in its entirety and replaced as follows:

2.1   The term of this Agreement will be for a period of twenty seven (27) months commencing on the First Amendment Effective Date and ending on August 31, 2001 ("Term"). At the expiration of the Term or extension thereof, this Agreement will continue on a month-to-month basis until, it is terminated by either party upon at least thirty (30) days prior written notice to the other party.

4. Entire Agreement. Except as expressly modified by this First Amendment, the Agreement is and will remain in full force and effect in accordance with its terms and constitutes the legal and binding obligations of Representative and WorldCom. This First Amendment, together with the Agreement, is the complete agreement of the parties and supersedes any prior agreements or representations, whether oral or written, with respect to its subject matter.

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment as of the dates set forth below.

HSG/ATN, INC.                          WORLDCOM TECHNOLOGIES, INC.

_Jeffrey R. Bein_                       _George Haypter_
Authorized Signature                    Authorized Signature

_Jeffrey R. Bein_                       _George Haypter_
Printed Name                            Printed Name

_President_                             _Vice President_
Title                                   Title

_7/5/99_                                _7-21-99_
Date                                    Date
Knel.HSGAgent.1a

D000163

## Second Amendment To Representation Agreement

This Second Amendment to Representation Agreement is made as of the __28th__ day of __October__, 1999 by and between HSG/ATN, Inc. ("Representative") and MCI WORLDCOM Communications, Inc. on behalf of itself and its U.S. based affiliates (together, "MCI WorldCom") and shall be effective upon MCI WorldCom's signature date below (the "Second Amendment Effective Date").

WHEREAS, Representative and WorldCom Technologies, Inc. ("WorldCom") entered into a Representation Agreement signed by Representative and WorldCom on August 4, 1998, as amended by that certain First Amendment, signed by Representative on July 5, 1998 and subsequently accepted by WorldCom on July 21, 1999 (the "Original Agreement"); and

WHEREAS, Representative and MCI WorldCom desire to enter into this Second Amendment for the purpose of amending the terms and conditions governing the Original Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency being hereby acknowledged, Representative and MCI WorldCom agree as follows:

1. Exhibit A to the Original Agreement will be deleted in its entirety and replaced as attached hereto and incorporated herein.

2. Exhibit B to the Original Agreement will be deleted in its entirety and replaced as attached hereto and incorporated herein.

3. Name Change. WorldCom Technologies, Inc. has changed its name to "MCI WORLDCOM Communications, Inc." The first paragraph of the Original Agreement is hereby amended to read as follows:

"This Agreement is made this __28th__ day of __October__ 1998 by and between MCI WORLDCOM Communications, Inc. on behalf of itself and its U.S. based affiliates (together "MCI WorldCom"), located at 500 Clinton Center Drive, Clinton, Mississippi 39055, and HSG/ATN, Inc. a Puerto corporation ("Representative"), located at PMB 275, 1357 Ashford Avenue, Suite 2, San Juan, Puerto Rico, 00907-1420. In consideration of the mutual promises and covenants set forth in this Agreement, the parties agree as follows:"

All references in the Original Agreement to "WorldCom Technologies, Inc." are hereby amended to read "MCI WORLDCOM Communications, Inc.". All references to "WorldCom" are hereby amended to read "MCI WorldCom".

4. Except as expressly provided in this Second Amendment, all of the terms and conditions contained in the Original Agreement will remain in full force and effect.

5. This Second Amendment with the Original Agreement (collectively, the "Agreement") is the complete agreement of the parties and supersedes all other prior agreements and representations, whether written or oral, concerning its subject matter.

6. This offer shall remain open and be capable of being accepted by Representative until October 31, 1999. Any and all prior offers made to Representative, whether written or oral, shall be

**CONFIDENTIAL**

D000164

superseded by this offer. Once this letter agreement has been fully executed, any amendments must be in writing and signed by both parties.

MCI WORLDCOM Communications, Inc.

Signature: *Frank Grillo*

Name:  Frank Grillo

Title:  Vice President Marketing

Date:  10-22-99

HSG/ATN, Inc.

Signature: *George P. Bein*

Name:  George P. Bein

Title:  VP

Date:
(mo/wk/zaxxx)  10/20/93

CONFIDENTIAL
2

D000165

EXHIBIT A

1. Representative is authorized to obtain orders for the following TTI National, Inc., a subsidiary of MCI WorldCom, ("TTI National") Services (collectively, "Services") as provided subject to the rates and regulations of the applicable Tariff(s) of TTI National ("Tariffs" or "Tariff"), on file with the appropriate Public Service Commissions ("Commission") and other regulatory authorities, as TTI National may amend from time to time.

     ULTRAcall 1+
     ULTRAcall Toll Free
     ULTRAcard

2. Representative's non-exclusive sales area will the continental United States, unless otherwise agreed in writing by MCI WorldCom.

3. Rates for the TTI National Services. Representative will be entitled to submit orders, pursuant to the procedures set forth in the Agreement, as determined by MCI WorldCom in its sole discretion, for the following rate plans. Customer will be entitled to receive the benefit of one of the three Rate Plans, however, they will not be entitled to receive the benefit of any combination of Rate Plans. The rates set forth in this Agreement are in lieu of, not in addition to, any other rates and discounts, tariffed or otherwise, however, Customers may be entitled to participate in any eligible Tariffed promotions) associated with the UltraCall option in applicable TTI National Tariff(s). MCI WorldCom will be under no obligation to automatically convert any Customer from one Rate Plan to another.

A. Rate Plan Option A

  For all existing Customers purchasing TTI National Services for which Representative submitted an order and MCI WorldCom subsequently accepted the order under this Agreement on or before execution of this Second Amendment and for any potential Customers for which Representative may elect to submit an order for Rate Plan Option A rates, subject to MCI WorldCom subsequent acceptance, under this Agreement, Customer will pay the below rates for the TTI National Service(s) as set forth in this Paragraph 3.A. References to standard tariff rates refer to the corresponding TTI National Service rates set forth in the applicable Tariffs for such service(s), as TTI National may amend from time to time, and before application of any applicable Tariff discounts. The rates set forth below are in lieu of all other rates and discounts, tariffed or otherwise.

    A.1 Switched Interstate Outbound Voice Service.

      For switched interstate outbound voice service, Customer will pay the corresponding postalized rate set forth below based on the rate period in which the call is made:

| Rate Period | Rate per Minute |
|-------------|-----------------|
| Peak        | $0.099          |
| Off-Peak    | $0.099          |

    A.2 Switched Interstate Inbound Voice Service.

      For switched interstate inbound voice service, Customer will pay the corresponding postalized rate set forth below based on the rate period in which the call is made:

| Rate Period | Rate per Minute |
|-------------|-----------------|
| Peak        | $0.099          |
| Off-Peak    | $0.099          |

CONFIDENTIAL
3

D000166

A.3 International Voice Service.

For all international voice service, Customers will pay the TTI National Combined Business Calling Plan Option C standard tariffed international rates as defined in the applicable TTI National Tariffs.

A.4 Intrastate Voice Service.

For all intrastate voice service, Customers will pay the TTI National Combined Business Calling Plan Option A standard tariffed intrastate rates as defined in the applicable TTI National Tariffs.

A.5 Calling Card Service.

For all calling card service, Customers will pay a postalized rate of $0.149. Domestic calling card per call surcharge is waived.

A.6 Dedicated Interstate Outbound and Inbound Voice Service.

For all interstate dedicated inbound and outbound voice service, Customers will pay the TTI National Combined Business Calling Plan Option A standard tariffed interstate rates as defined in the applicable TTI National Tariffs.

A.7 Other Requirements

Service usage minimums and Toll Free Monthly Recurring Number charges will not apply.

A per call surcharge for toll free calls from payphones shall apply to the Services.

B.  Rate Plan-Option B.

For all existing Customers purchasing TTI National Services for which Representative submitted an order and MCI WorldCom subsequently accepted the order under this Agreement on or before execution of this Second Amendment and for any potential Customers for which Representative may elect to submit an order for Rate Plan Option B rates, subject to MCI WorldCom subsequent acceptance, under this Agreement, Customer will pay the below rates for the TTI National Service(s) as set forth in this Paragraph 3.B. References to standard tariff rates refer to the corresponding TTI National Service rates set forth in the applicable Tariffs for such service(s), as TTI National may amend from time to time, and before application of any applicable Tariff discounts. The rates set forth below are in lieu of all other rates and discounts, tariffed or otherwise.

B.1 Switched Interstate Outbound Voice Service.

For switched interstate outbound voice service, Customer will pay the corresponding postalized rate set forth below based on the rate period in which the call is made:

| Rate Period | Rate per Minute |
| --- | --- |
| Peak | $0.089 |
| Off-Peak | $0.089 |

B.2 Switched Interstate Inbound Voice Service.

CONFIDENTIAL
4

D000167

For switched interstate inbound voice service, Customer will pay the corresponding postalized rate set forth below based on the rate period in which the call is made:

| Rate Period | Rate per Minute |
| --- | --- |
| Peak | $0.059 |
| Off-Peak | $0.059 |

B.3 International Voice Service.

For all international voice service, Customers will pay the TTI National Combined Business Calling Plan Option C standard tariffed international rates as defined in the applicable TTI National Tariffs.

B.4 Intrastate Voice Service.

For all intrastate voice service, Customers will pay the TTI National Combined Business Calling Plan Option A standard tariffed intrastate rates as defined in the applicable TTI National Tariffs.

B.5 Calling Card Service.

For all calling card service, Customers will pay a postalized rate of $0.149. Domestic calling card per call surcharge is waived.

B.6 Dedicated Interstate Outbound and Inbound Voice Service.

For all interstate dedicated inbound and outbound voice service, Customers will pay the TTI National Combined Business Calling Plan Option A standard tariffed interstate rates as defined in the applicable TTI National Tariffs.

B.7 Other Requirements

Service usage minimums and Toll Free Monthly Recurring Number charges will not apply.

A per call surcharge for toll free calls from payphones shall apply to the Services.

C.  Rate Plan Option C.

For any potential Customers that may be eligible (as set forth herein) to purchase TTI National Services for which Representative may elect to submit an order for Rate Plan Option C rates, subject to MCI WorldCom subsequent acceptance, and for existing Customers which Customer elects to convert from Rate Plan Option A or Rate Plan Option B to Rate Plan Option C, Customer will pay the below rates for the TTI National Service(s) as set forth in this Paragraph 3.C. References to standard tariff rates refer to the corresponding TTI National Service rates set forth in the applicable Tariffs for such service(s), as TTI National may amend from time to time, and before application of any applicable Tariff discounts. The rates set forth below are in lieu of all other rates and discounts, tariffed or otherwise.

C.1 Switched Interstate Outbound Voice Service.

For switched interstate outbound voice service, Customer will pay a postalized rate of $0.069 per minute.

C.2 Switched Interstate Inbound Voice Service.

CONFIDENTIAL
5

D000168

For switched interstate inbound voice service, Customer will pay a postalized rate of $0.069 per minute.

C.3 International Voice Service.

For all international voice service, Customers will pay the standard tariffed rates set forth in the Business Benefit Program as defined in the applicable TTI National Tariffs.

C.4 Intrastate Voice Service.

For all intrastate voice service, Customers will pay the standard tariffed rates set forth in the Business Benefit Term Plan Month-to-Month Option as defined in the applicable TTI National Tariffs.

C.5 Calling Card Service.

For all calling card service, Customers will pay a postalized rate of $0.139 per minute. Domestic calling card per call surcharge is waived.

C.6 Other Requirements

Services usage minimums and Toll Free Monthly Recurring Number charges will not apply.

D. Dial-Up Internet (non-tariffed).

For basic subscriber TTI National Internet Dial Up service (up to 56kbps) as described in the applicable TTI National standard price guides, Customers will pay a monthly charge of Sixteen Dollars and Ninety-Five Cents ($16.95).

4.   Monthly usage charges of the TTI National Services set forth in Paragraph 1 will be calculated at the rates set forth in this Exhibit A. The rates set forth in this Exhibit A to the Agreement do not apply to, the following: charges for TTI National Services other than as specifically set forth in this Agreement; non-tariffed products; access or egress (or related) charges imposed by third parties; standard tariffed non-recurring charges and monthly recurring non-usage charges; surcharges and calling card surcharges; taxes, tax-related or tax-like surcharges; and other tariffed charges, all of which are additional and which Customer must agree to pay, to the extent applicable. References to "intrastate" and "interstate" contained herein refer to domestic TTI National Services within the sales area only. Any rounding of rates and charges will be governed by the Tariff.

5.   TTI National reserves the right, exercisable in its own discretion, at any time and from time to time to modify the Services listed in this Exhibit A.

6.   If a Customer receives a service that is not set forth in Paragraph 3 of this Exhibit A, then standard tariffed rates, less any applicable standard tariffed discounts, will apply to such service, and Representative is not eligible to receive under this Agreement any commission(s) or other compensation from MCI WorldCom for such service(s). For any service not identified in Paragraph 3 of this Exhibit A that Representative desires to submit order(s) for such service and Representative desires to receive commission for such referrals, Representative may request the addition of such service to this Agreement, however, such addition will only be valid as an amendment to this Agreement signed by authorized officers of both parties. Such addition(s) will be subject to terms and conditions as defined by MCI WorldCom in its sole discretion.

CONFIDENTIAL
5

D000169

## EXHIBIT B

### Commissions

1.      Subject to the terms and conditions of this Agreement, including the limitations set forth in this Exhibit B, MCI WorldCom will pay Representative during the term of this Agreement a commission as described in this Exhibit B on each Customer account for portions of TTI National Services, sold at the rates and discounts that are set forth in Exhibit A ("Account") for which Representative submitted an order on behalf of the Customer that was subsequently accepted by MCI WorldCom, all as determined by MCI WorldCom in its sole discretion, but only as long as the Account is designated by MCI WorldCom in its sole discretion to roll-up to Representative for commissioning purposes. Representative acknowledges and agrees that MCI WorldCom, in the performance of this Agreement, may rely upon information provided by, or transmitted through, Representative, prospects, Customers, local exchange companies and other third parties. MCI WorldCom will have no liability to Representative for the nonpayment of commissions resulting from inaccurate information provided by, or transmitted through, such third parties.

2.      For purposes of this Agreement, "Customers' Billed Usage," means the monthly usage charges, as billed by MCI WorldCom billing systems (taking into account any billing adjustments and credits) that MCI WorldCom bills an Account for those portions of TTI National Services that are commissionable, as that usage is billed and captured by MCI WorldCom's billing and commissioning systems, all as determined by MCI WorldCom in its sole discretion, but specifically excluding "Excluded Revenue" (as defined below).

3.      For purposes of this Agreement, Excluded Revenue encompasses but is not limited to: (i) taxes, tax related surcharges, tax-like surcharges and surcharges; (ii) credits, discounts or promotions, except as expressly provided herein; (iii) directory assistance service charges; (iv) access/egress charges or other charges imposed by third parties; (v) any monthly recurring or any non-recurring charges, including but not limited to those imposed in the Tariff; (vi) any amount MCI WorldCom or its affiliates collects for, or pays to, third parties, including but not limited to payments in support of statutory or regulatory programs mandated by governmental or quasi-governmental authorities such as the Universal Service Fund ("USF") and the Primary Interexchange Carrier Charge ("PICC"); (vii) any amount MCI WorldCom or its affiliates pays to payphone service providers, including but not limited to amounts paid pursuant to Section 276 of the Telecommunications Act of 1996 ("Section 276") and the regulations implementing Section 276; (viii) any costs incurred by MCI WorldCom or its affiliates in connection with such compensation requirements in support of programs mandated by governmental or quasi-governmental authorities, including without limitation those of Section 276; (ix) amounts billed under separate written agreements between MCI WorldCom and customers, or any special promotional offerings defined in the Tariff ("Excluded Accounts"), except as otherwise approved by an officer or director of MCI WorldCom in writing, on a case by case basis; (x) monthly recurring usage charges from any entity or person controlled by, controlling or under common control with Representative; and (xi) charges for or revenue from Excluded Accounts or any other TTI National Service not listed in Exhibit A, including but not limited to charges for goods and services that are not in the Tariff or charges incurred where MCI WorldCom acts as an agent for a Customer in the acquisition of goods and services. Commissions will not be paid on Excluded Revenue.

4.      For purposes of this Agreement, Customer's Adjusted Billed Usage means Customer Billed Usage reduced by five percent (5%). MCI WorldCom reserves the right, at its sole discretion, to revise or adjust further the Customer's Adjusted Billed Usage Revenue in the event of toll fraud, PIC dispute, extraordinary event, bad debt, change in federal, state or local regulatory rules or orders.

5. Commission Percentage.

CONFIDENTIAL
7

D000170

5.1. **TTI National Services Other than Calling Card and Internet Services.** Subject to the terms and conditions of this Agreement, including the limitations set forth in this Exhibit B, MCI WorldCom will pay Representative a monthly commission in an amount equal to the corresponding percentage identified below on certain portions, excluding calling card and internet service usage, of Customers' Adjusted Billed Usage for that month based on the Rate Plan identified by Representative for each Customer Account.

| Rate Plan | Commission Percentage |
|-----------|----------------------|
| Option A  | 22% |
| Option B  | 22% |
| Option C  | 15% |

5.2 **TTI National Calling Card Services.** Subject to the terms and conditions of this Agreement, including the limitations set forth in this Exhibit B, MCI WorldCom will pay Representative a monthly commission in an amount equal to twenty two percent (22%) on certain portions of Customers' Adjusted Billed Usage associated with calling card services for that month regardless of the Rate Plan selected by the Customer.

5.3 **TTI National Internet Services.** Subject to the terms and conditions of this Agreement, including the limitations set forth in this Exhibit B, MCI WorldCom will pay Representative a monthly commission in an amount equal to fifteen percent (15%) on certain portions of Customers' Adjusted Billed Usage associated with internet services for that month regardless of the Rate Plan selected by the Customer.

6.     In no event will commissions be paid pursuant to this Agreement for usage or services that are commissionable under any other commission agreement to which MCI WorldCom or any of MCI WorldCom's affiliates is a party or if a commission has been previously paid by MCI WorldCom or its affiliates to Representative or to any other entity or individual.

7.     MCI WorldCom will make reasonable efforts to pay Representative the commissions that MCI WorldCom owes Representative within forty five (45) days after the end of the month in which the billed parties received their billings.   If the amount that MCI WorldCom owes Representative in commissions is less than one hundred dollars ($100.00), MCI WorldCom may withhold payment of commissions until the end of the calendar quarter. Commissions earned under this Agreement will be made solely to Representative.   Commission payments directed to a person or entity other than Representative, when earned under this Agreement will be considered the responsibility and the property of Representative.

8.   Except as set forth in Sections 2.2, 8.2 and 8.3 of this Agreement, MCI WorldCom will continue to pay commissions to Representative after termination, but only as long as the monthly Customers' Adjusted Billed Usage ("Representative's Amount") equals or exceeds the amount of Twenty Five Thousand ($25,000) dollars per month ("The Sum").  MCI WorldCom's obligation to pay Representative commissions under this Paragraph 8 will cease the first month Representative's Amount is less than or equal to The Sum.

9.   In order for Customers to receive rates under Rate Plan Option C and for Representative to receive the corresponding commissions associated with Rate Plan Option C, Representative will be required to place Rep ID # AZ1000C on all orders submitted to MCI WorldCom. During each consecutive six (6) month period of the Term in which Representative submits three (3) ("Threshold Order") or more orders to MCI WorldCom for the rates under Rate Plan Option C that do not specify Rep ID # AZ1000C, Representative will forfeit any and all commissions for such Customer accounts lacking the correct Rep ID.   Representative will forfeit any and all commissions associated with the Threshold Order and any order(s) submitted without Rep ID #AZ1000C following the submission of the Threshold Order in such consecutive six (6) month period.

D000171

10. For any existing Customers that elect to convert from Rate Plan Option A or Rate Plan Option B to Rate Plan Option C, the rates under Rate Plan Option C will be effective on the first day of the first full month following MCI WorldCom's acceptance of such order ("Effective Date"). Representative's commission percentage will be based on the Effective Date of the Customer's new rates.

CONFIDENTIAL
9

*Original for Signature*

## Third Amendment To Representation Agreement

This Third Amendment to Representation Agreement is made as of the _____ day of _____, 2000 by and between HSG/ATN, Inc. ("Representative") and MCI WORLDCOM Communications, Inc. on behalf of itself and its U.S. based affiliates and their respective successors (together, "MCI WorldCom") and shall be effective upon MCI WorldCom's signature date below (the "Third Amendment Effective Date").

WHEREAS, Representative and WorldCom Technologies, Inc. ("WorldCom") entered into a Representation Agreement signed by Representative and WorldCom on August 4, 1998, as amended by that certain First Amendment, signed by Representative on July 5, 1999 and subsequently accepted by WorldCom on July 21, 1999, as amended by that certain Second Amendment, signed by Representative on October 28, 1999 and subsequently accepted by MCI WorldCom on November 22, 1999 (the "Original Agreement");and

WHEREAS, Representative and MCI WorldCom desire to enter into this Third Amendment for the purpose of amending the terms and conditions governing the Original Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency being hereby acknowledged, Representative and MCI WorldCom agree as follows:

1.  A new subsection (i) will be added to Section 3.D. of Exhibit A to the Original Agreement as follows:

> 3.  Rates for the TTI National Services.
>
> D.  Dial-Up Internet (non-tariffed).
>
> > (i) Commencing on the Third Amendment Effective Date through June 30, 2000, for basic subscriber TTI National Internet Dial Up service (up to 56kbps), Customers will be entitled to receive the benefit of the TTI National Dial Internet Promotion, as set forth in TTI National standard price guides, as amended by TTI National from time to time.  In the event TTI National extends the Dial Internet Promotion, Customer will be entitled to enroll in such promotion until expiration as set forth in the TTI National standard price guides.

2.  A new section 5.4 will be added to Section 5 of Exhibit B to the Original Agreement as follows:

> 5.4  TTI National Dial Internet Promotion. Commencing on the Third Amendment Effective Date through June 30, 2000, subject to the terms and conditions of this Agreement, including the limitations set forth in this Exhibit B and the Dial Internet Promotion set forth in TTI National standard price guides, MCI WorldCom will pay Representative a monthly commission in an amount equal to fifteen percent (15%) on certain portions of Customers' Adjusted Billed Usage associated with Internet services purchased pursuant to the Dial Internet Promotion (set forth in TTI National standard price guides, as amended by TTI National from time to time) for that month regardless of the Rate Plan selected by the Customer. In the event TTI National extends the Dial Internet Promotion as indicated in Section 3.D.(i) of Exhibit A to the Agreement, Representative may submit orders for such promotion, pursuant to the terms and conditions of this Agreement, until the expiration or termination of the promotion as set forth in the TTI National standard price guides, and Representative will be eligible to receive commissions on certain portions of Customers' Adjusted Billed Usage associated with

**CONFIDENTIAL**

D000173



Internet services purchased pursuant to the Dial Internet Promotion as provided in this Section 5.4 of Exhibit B.

3.    Except as expressly provided in this Third Amendment, all of the terms and conditions contained in the Original Agreement will remain in full force and effect.

4.    This Third Amendment with the Original Agreement (collectively, the "Agreement") is the complete agreement of the parties and supercedes all other prior agreements and representations, whether written or oral, concerning its subject matter.

5.    This offer shall remain open and be capable of being accepted by Representative until March 31, 2000. Any and all prior offers made to Representative, whether written or oral, shall be superseded by this offer. Once this letter agreement has been fully executed, any amendments must be in writing and signed by both parties.

MCI WORLDCOM Communications, Inc.

Signature: _____

Name:  Frank Grillo

Title:    Vice President Marketing

Date:   4-14-00

HSG/ATN, Inc.

Signature: _____

Name:  George Ben

Title:

Date:   3/17/00
(login.2a.form)

CONFIDENTIAL
2

D000174

*ORIGINAL*

**MCIWORLDCOM**

### FOURTH AMENDMENT TO
### REPRESENTATION AGREEMENT

This Fourth Amendment (the "Amendment") to the Representation Agreement is by and between MCI WORLDCOM Communications, Inc. as successor to MCI Telecommunications Corporation (together "MCI WorldCom") and HSG/ATN, Inc. ("Representative"), with principal offices located at MSC 275, 1357 Ashford Avenue, Suite 2, San Juan, Puerto Rico 00907-1420, and will become effective on the date of signature by an authorized representative of MCI WorldCom ("Fourth Amendment Effective Date").

WHEREAS, Representative and WorldCom Technologies, Inc. ("WorldCom") entered into that certain Representation Agreement signed by Representative on August 4, 1998, and signed by WorldCom on August 4, 1998, which has been previously amended three times and which has had two addenda appended (together, the "Agreement");

WHEREAS, WorldCom Technologies, Inc. has become MCI WORLDCOM Communications, Inc. ("MCI WorldCom"); and

WHEREAS, Representative and MCI WorldCom desire to enter into this Amendment for the purpose of amending the Agreement; and

WHEREAS, Representative and WorldCom Technologies, Inc. ("WorldCom") entered into another agreement, the Buyout Agreement, signed by the parties as of the 5th day of April, 1999 (the "Buyout Agreement");

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Representative and MCI WorldCom agree as follows:

    1.    <u>Definitions.</u>  All capitalized terms not defined in this Amendment have the respective meanings given to those terms in the Agreement.

    2.    <u>Entire Agreement.</u>  Except as expressly modified by this Amendment, the Agreement is and will remain in full force and effect in accordance with its terms and constitutes the legal and binding obligations of the parties. This Amendment, including the Agreement, is the complete agreement of the parties and supersedes any prior agreements or representations, whether oral or written, with respect to the subject matter of this Amendment.

    3.    <u>Successors and Assigns.</u>  This Amendment will be binding upon and inure to the benefit of the successors and permitted assigns of the parties.

D000175

*ORIGINAL*

4.     Section References.   Section titles and references used in this Amendment have no substantive meaning and are not a part of the parties' agreement.

5.     Commencing as of the Fourth Amendment Effective Date, all references in the Agreement to "WorldCom Technologies, Inc." are hereby amended to read "MCI WORLDCOM Communications, Inc. and its successor(s)" All references in the Agreement to "WorldCom" will be amended to read "MCI WorldCom."

6.     Commencing as of the Fourth Amendment Effective Date, the first paragraph of the Agreement is deleted in its entirety and replaced by the following new paragraph:

Agreement (the "Agreement") is by and between MCI WORLDCOM Communications, Inc. on behalf of itself and its U.S. based affiliates (together "MCI WorldCom"), with offices at One Meadowlands Plaza, East Rutherford, NJ 07073, and HSG/ATN, Inc. ("ATN"), a Puerto Rico corporation with offices located at MSC 275, 1357 Ashford Avenue, Suite 2, San Juan, Puerto Rico 00907-1420.

7.     Commencing as of the Fourth Amendment Effective Date, new Exhibit E which is attached hereto and made a part hereof is hereby added to the Agreement, subject to the provisions set forth in Paragraph 8 of this Amendment.

8.     The parties agree that Exhibit E shall not be considered part of the Agreement for purposes of the Buyout Agreement, except in the limited instance for calculating Customer's Adjusted Billed Usage solely for the purpose of determining whether Seller has met or exceeded the sum of four million dollars set forth in Article II, Section 2.1(B)(ii) of the Buyout Agreement. The parties specifically agree that none of the revenues arising from Exhibit E shall form any part of the calculations under the Buyout Agreement dealing with the Net Exclusive Revenue Base. The parties furthermore agree that if a sale is closed under the Buyout Agreement, only those commissions, if any, being paid pursuant to Exhibit E will continue in accordance with the terms of the Agreement that were in effect on the day prior to closing, but only as long as the monthly Customers' Adjusted Billed Usage ("Representative's Amount") exceeds the amount of Twenty Five Thousand Dollars ($25,000) per month (the "Sum"). TTI National's obligation to pay Representative commissions under this Paragraph 8 will cease the first month Representative's Amount is less than or equal to the Sum. Representative will continue to comply with all such terms and conditions for as long as Representative continues to receive commissions from TTI National.

9.     Beginning with the Fourth Amendment Effective Date, the addendum executed by the parties entitled Addendum to Representation Agreement for Participation in MCI WorldCom Wireless Program is hereby deleted in its entirety and beginning with the Fourth Amendment Effective Date, notwithstanding the provisions of the Agreement to the contrary, , Representative is permitted to sell wireless communications products and services of other communication providers.

D000176

*ORIGINAL*

10.    This Amendment will not be valid unless signed by Representative on or before June 30, 2000, and accepted by MCI WorldCom.  Any and all prior offers made to Representative, whether written or oral, will be superseded by this Amendment.  Any further amendments must be in writing and signed by both parties.

**MCI WORLDCOM Communications, Inc.**

Signature _____

Print Name and Title: George P. Hampton, VP

Date: 6/30/00

**HSG/ATN, Inc.**

Signature: _____

Print Name and Title: George P. Bein, VP

Date: 6/20/00

(100899/dcd/boiler/amendmentform01.doc)
(CDP/ATN-Rep-Amendment06/19/00)
(ATN - Exhibit E-06)
Final062000\

MCI WorldCom Confidential
3

D000177

FiLe

*Original for Signature*

### Fifth Amendment to Representation Agreement

This Fifth Amendment to Representation Agreement is by and between HSG/ATN, Inc. ("Representative") and MCI WORLDCOM Communications, Inc. on behalf of itself and its U.S. based affiliates and their respective successors (together, "MCI WorldCom") and shall be effective upon MCI WorldCom's signature date below (the "Fifth Amendment Effective Date").

WHEREAS, Representative and MCI WorldCom entered into a Representation Agreement signed by Representative and MCI WorldCom on August 4, 1998; as amended by that certain First Amendment, signed by Representative on July 5, 1999 and subsequently accepted by MCI WorldCom on July 21, 1999; as amended by that certain Second Amendment, signed by Representative on October 28, 1999 and subsequently accepted by MCI WorldCom on November 22, 1999; as amended by that certain Third Amendment, signed by Representative on March 17, 2000 and subsequently accepted by MCI WorldCom on April 14, 2000; as amended by that certain Fourth Amendment, signed by Representative on June 20, 2000 and subsequently accepted by MCI WorldCom on June 30, 2000; and the On-Net Option 2 Services Addendum signed by Representative on March 14, 2000 and subsequently accepted by MCI WorldCom on March 27, 2000 (collectively, the "Original Agreement"); and

WHEREAS, Representative and MCI WorldCom desire to enter into this Fifth Amendment for the purpose of amending the terms and conditions governing the Original Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency being hereby acknowledged, Representative and MCI WorldCom agree as follows:

1. A new Paragraph 3.E will be added in Exhibit A to the Original Agreement as follows:

    3.   E.  New Business Benefit Service –Service Option 2.

    Commencing on the Fifth Amendment Effective Date, for all Customers purchasing TTI National Services for which Representative submitted an order and MCI WorldCom subsequently accepted the order under this Agreement and for any potential Customers for which Representative may elect to submit an order for New Business Benefit Service – Service Option 2 rates, subject to MCI WorldCom subsequent acceptance under this Agreement, Customer will pay the below rates for the TTI National Service(s) as set forth in this Paragraph 3.E. References to standard tariff rates refer to the corresponding TTI National Service rates set forth in the applicable Tariffs for such service(s), as TTI National may amend from time to time, and before application of any applicable Tariff discounts:

    • For New Business Benefit Service – Service Option 2 Switched Outbound, Switched Inbound Service, Customers will pay the corresponding postalized rate set forth below.

    Service Option 2 - $0.065 per minute interstate rate as described in the Tariff.

2. A new Paragraph 5.5 will be added in Exhibit B to the Original Agreement as follows:

    5.5.   New Business Benefit Service – Service Option 2. Commencing on the Fifth Amendment Effective Date, subject to the terms and conditions of this Agreement, including the limitations set forth in this Exhibit B, MCI WorldCom will pay Representative a monthly commission in an amount equal to fifteen percent (15%) on certain portions, excluding New Business Benefit Calling Card Service usage, of

CONFIDENTIAL

02/19/01

D000178

*Original for Signature*

Customers' Adjusted Billed Usage for that month associated with New Business Benefit Service – Service Option 2 for each Customer Account.

3.    Except as expressly provided in this Fifth Amendment, all of the terms and conditions contained in the Original Agreement will remain in full force and effect.

4.    This Fifth Amendment with the Original Agreement is the complete agreement of the parties and supercedes all other prior agreements and representations, whether written or oral, concerning its subject matter.

5.    This offer shall remain open and be capable of being accepted by Representative until February 28, 2001. Any and all prior offers made to Representative, whether written or oral, shall be superseded by this offer.

MCI WORLDCOM Communications, Inc.

Signature: _____

Name:  George Hampton

Title:    Senior Vice President

Date:  3-1-01

HSG/ATN, Inc.

Signature: _____

Name:  George P. BEIN

Title:  VP

Date:  2/19/2001

(hsgatn1.agenL5th-cdp/gb021201)
cdpchicago; + brent lacho

CONFIDENTIAL
2

02/19/01

D000179

ORIGINAL



## SIXTH AMENDMENT TO
## REPRESENTATION AGREEMENT

This Sixth Amendment (the "Sixth Amendment") to the Representation Agreement is by and between MCI WORLDCOM Communications, Inc. ("MCI WorldCom") and HSG/ATN, Inc. ("Representative"), with principal offices located at MSC 275, 1357 Ashford Avenue, Suite 2, San Juan, Puerto Rico 00907-1420. The terms of this Sixth Amendment will be effective as of November 1, 2001 (the "Sixth Amendment Effective Date").

WHEREAS, Representative and MCI WorldCom entered into that certain Representation Agreement, effective as of September 27, 1999, and amended with the First Amendment, effective as of July 21, 1999; the Second Amendment, effective as of November 22, 1999; the Third Amendment, effective as of April 14, 2000; the Fourth Amendment, effective as of June 30, 2000; and the Fifth Amendment, effective as of March 1, 2001 (the "Agreement");

WHEREAS, Representative and MCI WorldCom desire to enter into this Sixth Amendment for the purpose of amending further the Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Representative and MCI WorldCom agree as follows:

    1.    Definitions.  All capitalized terms not defined in this Sixth Amendment have the respective meanings given to those terms in the Agreement.

    2.    Entire Agreement.  Except as expressly modified by this Sixth Amendment, the Agreement is and will remain in full force and effect in accordance with its terms and constitutes the legal and binding obligations of the parties. This Sixth Amendment, including the Agreement and MCI WorldCom's applicable Tariffs and Publications, is the complete agreement of the parties and supersedes any prior agreements or representations, whether oral or written, with respect to the subject matter of this Sixth Amendment.

    3.    Successors and Assigns.  This Sixth Amendment will be binding upon and inure to the benefit of the successors and permitted assigns of the parties.

    4.    Section References.  Section titles and references used in this Amendment have no substantive meaning and are not a part of the parties' agreement.

    5.    Commencing on the Sixth Amendment Effective Date, Paragraph 1.2 of the

1

D000180

*ORIGINAL*

Agreement is deleted and replaced with the new Paragraph 1.2 as follows:

> 1.2    "Customers" shall refer to those individuals or companies for whom Representative has submitted orders for Service to MCI WorldCom, that have satisfied applicable credit requirements established by MCI WorldCom, and whose orders submitted by Representative have been accepted by MCI WorldCom. Unless otherwise expressly stated herein, "Customers" will include both "Customers" as that term is used in Exhibit A and "Grandfathered Customers" as that term is used in Exhibit B.

6.    Commencing on the Sixth Amendment Effective Date, Paragraph 1.6 of the Agreement is deleted and replaced with the new Paragraph 1.6 as follows:

> 1.6    During the Term of this Agreement, Representative shall not act as an independent contractor for, or agent of, or sell services or solicit customers for, any entity other than MCI WorldCom, or any MCI WorldCom U.S.-based affiliate with respect to any telecommunications services, excepting wireless communications products and services, provided by a non-MCI WorldCom entity that are the same or substantially similar to any telecommunications services provided by MCI WorldCom or any MCI WorldCom U.S.-based affiliate.
>
> If Representative desires to sell, or solicit customers for, a specific telecommunications service or product provided by a non-MCI WorldCom entity, provided that such telecommunications service or product is (a) not already included in the list of services in Paragraph 1.1 of Exhibit A of this Agreement regardless whether there is a different rate and (b) not an Internet protocol telephony service or product, then Representative must notify MCI WorldCom of such desire in writing.
>
> Upon MCI WorldCom's receipt of such written notice, then (i), (ii), or (iii) as follows, will apply:
>
> (i)    If MCI WorldCom or an MCI WorldCom U.S.-based affiliate is providing such service or product at the time MCI WorldCom receives such notice and, within ten (10) days of MCI WorldCom's receipt of such written notice, (a) MCI WorldCom elects, in MCI WorldCom's sole discretion, not to include such product or service in the list of those services for which Representative is authorized, under this Agreement, to obtain orders, or (b) MCI WorldCom fails to respond, then the restrictions in the first sentence of this Paragraph 1.6 will not apply to Representative with regard only to the specific service or product referenced in Representative's written notice to MCI WorldCom; or
>
> (ii)    If MCI WorldCom or an MCI WorldCom U.S.-based affiliate is providing such service or product at the time MCI WorldCom receives such notice

2

D000181

*ORIGINAL*

and, within ten (10) days of MCI WorldCom's receipt of such written notice, MCI WorldCom elects, in MCI WorldCom's sole discretion, to include such product or service in the list of those services for which Representative is authorized, under this Agreement, to obtain orders, then the parties shall document in writing (a) that such product or service is added to the list of services for which Representative is authorized, under this Agreement, to obtain orders and (b) that MCI WorldCom shall pay Representative, at a minimum, the "standard" commission, as of the date of such written agreement, that MCI offers to the majority of its agents for such service or products; or

(iii)  If MCI WorldCom and an MCI WorldCom U.S.-based affiliate are not providing such service or product at the time MCI WorldCom receives such notice, then, within ten (10) days of MCI WorldCom's receipt of such written notice, MCI WorldCom shall notify Representative that MCI WorldCom is not currently providing such service or product, but that MCI WorldCom is considering whether to do so. If MCI WorldCom provides this ten (10) day written notice, then MCI WorldCom will have thirty (30) days from the date of MCI WorldCom's receipt of Representative's original written notice to (a) offer such service or product and include such product or service in the list of those services for which Representative is authorized, under this Agreement, and (b) agree in writing to pay Representative, at a minimum, the "standard" commission, as of the date of such written agreement, that MCI offers to the majority of its agents for such service or products. If MCI WorldCom fails to provide the ten (10) day written notice to Representative or if MCI WorldCom fails to do both (a) and (b) above within such thirty (30) day period, then the restrictions in the first sentence of this Paragraph 1.8 will not apply to Representative with regard only to the specific service or product referenced in Representative's written notice to MCI WorldCom.

7.  Commencing on the Sixth Amendment Effective Date, Paragraph 1.9 of the Agreement is deleted.

8.  Commencing on the Sixth Amendment Effective Date, Paragraph 2.1 is deleted and replaced with the new Paragraph 2.1 as follows:

2.1  The term of this Agreement will expire on October 31, 2003, unless terminated earlier by either party in accordance with the provisions of this Agreement ("Term"). At the expiration of the Term or any extension of the Term thereof, this Agreement will continue on a month-to-month basis until this Agreement is terminated by either party by providing at least thirty (30) days prior written notice to the other party.

9.  Commencing on the Sixth Amendment Effective Date, Paragraph 2.3 is added to the Agreement as follows:

3

D000182

2.3    Either party may terminate this Agreement, without cause, upon at least thirty (30) days prior written notice to the other party.

2.3.1    If Representative terminates this Agreement under this Paragraph 2.3, then (1) MCI WorldCom will make payment for commissions earned by Representative up to the effective date of such termination, and (2) MCI will continue, beyond the effective date of such termination, to pay commissions earned beyond the effective date of such termination in accordance with Paragraph 2.4 below, but Representative will no longer receive the additional five percent (5%) commission on the Subset of Grandfathered Accounts, as set forth in Paragraph 1.B of Exhibit B, regardless as to the total monthly amount of Customer's Adjusted Billed Usage (including both Customers' Adjusted Billed Usage as set forth in Exhibit A and Grandfathered Customers' Adjusted Billed Usage as set forth in Exhibit B) achieved by Representative as of the effective date of such termination. To clarify, MCI WorldCom will pay Representative the additional five percent (5%) commission, as set forth in Paragraph 1.B of Exhibit B, on commissions earned for the Subset of Grandfathered Accounts through the month immediately preceding the month during which falls the effective date of such termination by Representative. For commissions earned for the Subset of Grandfathered Accounts in the month during which the effective date of such termination falls and in any subsequent month, MCI WorldCom will have no further obligation to pay Representative the additional five percent (5%) commission, as set forth in Paragraph 1.B of Exhibit B.

2.3.2    If MCI WorldCom terminates this Agreement under this Paragraph 2.3, then MCI WorldCom will make payment for commissions earned by Representative up to the effective date of such termination, and MCI will continue, beyond the effective date of such termination, (i) to pay commissions earned beyond the effective date of such termination in accordance with Paragraph 2.4 below, and (ii) to pay Representative each month the additional five percent (5%) commission on the Subset of Grandfathered Accounts, as set forth in Paragraph 1.B of Exhibit B, regardless of the amount of the Representative's total monthly Customers' Adjusted Billed Usage (including total Customers' Adjusted Billed Usage as set forth in Exhibit A and total

4

*ORIGINAL*

Grandfathered Customers' Adjusted Billed Usage as set forth in Exhibit B).

10.   Commencing on the Sixth Amendment Effective Date, Paragraph 2.4 is added to the Agreement as follows:

2.4    Except as set forth in Sections 2.2, 6.2, and 8.3 of this Agreement, MCI WorldCom will continue to pay commissions to Representative after termination, but only as long as the monthly total of both Customer's Adjusted Billed Usage, as set forth in Exhibit A, and Grandfathered Customer's Adjusted Billed Usage, as set forth Exhibit B, ("Representative's Amount") exceeds the amount of Twenty Five Thousand ($25,000) dollars per month ("The Sum"). MCI WorldCom's obligation to pay Representative commissions under this Paragraph 8 will cease the first month Representative's Amount is less than or equal to The Sum, provided that MCI WorldCom will pay Representative those commissions earned through the month immediately preceding the month during which Representative did not exceed The Sum.

11.   Commencing on the Sixth Amendment Effective Date, Paragraphs 4.1, 4.2, 4.3, and 4.4 are deleted.

12.   Commencing on the Sixth Amendment Effective Date, Paragraph 7.1 of the Agreement is deleted and replaced with the new Paragraph 7.1 as follows:

7.1    MCI WorldCom retains the sole and exclusive right to prescribe the prices and terms under which it will offer Services. This includes, but is not limited to, the right to change rates and prices, including those set forth in Exhibits A and B, restrict offerings, amend regulations, or entirely discontinue the offering of specific services, with or without notice to Representative and without incurring any liability to Representative. Any such change, restriction, amendment, or discontinuance shall be at MCI WorldCom's sole discretion and will become effective on the date specified by MCI WorldCom.

13.   Commencing on the Sixth Amendment Effective Date, Paragraph 7.2 of the Agreement is deleted and replaced with the new Paragraph 7.2 as follows:

7.2    Representative shall not, in any communication with Customers or prospects, offer prices for services that are other than the published rates for the Services specified in Exhibits A and B, nor will Representative offer volume discounts, rebates, or waivers, or any other price adjustment, except with the express written authorization of MCI WorldCom.

14.   Commencing on the Sixth Amendment Effective Date, Paragraph 7.3 of the Agreement is deleted and replaced with the new Paragraph 7.3 as follows:

5

D000184

*ORIGINAL*

7.3    If TTI National or MCI WorldCom files a tariff or tariffs containing a new product or service, or if TTI National or MCI WorldCom publishes in a Publication, as such term is defined in Paragraph 1 of Exhibit A below, a description and rates for a new product, and if TTI National or MCI WorldCom makes such new service generally available to its agent channel ("New Service"), then, at the option of Representative, MCI WorldCom and Representative shall amend this Agreement to include the New Service, and amend this Agreement to reflect corresponding New Service commissions for Representative, provided that any such corresponding commissions will be no less than the "standard" commission, as of the effective date of such written amendment, that MCI WorldCom offers to the majority of its agents for such New Service.

15.    Commencing on the Sixth Amendment Effective Date, Paragraph 8.2 of the Agreement is deleted.

16.    Commencing on the Sixth Amendment Effective Date, Paragraph 8.4 of the Agreement is deleted.

17.    Commencing on the Sixth Amendment Effective Date, Paragraph 18.1 is deleted and replaced with the new Paragraph 18.1 as follows:

18.1    Representative may not assign this Agreement without the prior written consent of MCI WorldCom.  For purposes of this Agreement, MCI WorldCom consents to Representative's use of agents and representatives (unless agents or representatives have previously executed a Representation Agreement directly with MCI WorldCom) to perform any or all of Representative's duties hereunder, provided that Representative shall remain solely responsible for all actions taken by such agents and representatives.

18.    Commencing on the Sixth Amendment Effective Date, the "Addendum to Representation Agreement for MCI WorldCom On-Net Option 2 Services" is deleted.

19.    Commencing on the Sixth Amendment Effective Date, Exhibit A of the Agreement is deleted and replaced with the new Exhibit A attached hereto and incorporated herein.

20.    Commencing on the Sixth Amendment Effective Date, Exhibit B of the Agreement is deleted and replaced with the new Exhibit B attached hereto and incorporated herein.
21.    Commencing on the Sixth Amendment Effective Date, Exhibit D "Service Levels" is deleted.

22.    The parties acknowledge and agree that the Buyout Agreement between the parties, dated April 5, 1999 ("Buyout Agreement"), is terminated and null and void as of August 31, 2001.  Neither party has any outstanding rights or obligations under that Buyout Agreement.

23.    Each party and its predecessors, successors, parents, affiliates, assigns,

5

D000185

ORIGINAL

transferees, agents, directors, officers, employees, heirs and attorneys hereby release and forever discharge the other party and their respective predecessors, successors, parents, direct subsidiaries, indirect subsidiaries, affiliates, assigns, agents, directors, officers, employees, attorneys and shareholders, from and against all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state or federal court or state or federal administrative agency or commission, liquidated or unliquidated, but known to the party as of the Sixth Amendment Effective Date, that a party has or may have had, or thereafter claim to have, on behalf of themselves, or any other person or entity, at any time prior to and including the Sixth Amendment Effective Date, arising out of or in any way relating to the Buyout Agreement, the Agreement, and any predecessor Representation Agreement or other agency agreement between the parties, provided that neither party releases the other party with regard to any claims related to commissions earned under the Agreement. The parties agree that, if MCI WorldCom terminates the Agreement pursuant to Section 2.3 of the Agreement within ninety (90) days after the Sixth Amendment Effective Date, the release provisions above will not apply to either party.

24.    This Sixth Amendment will not be valid unless signed by Representative by November 9, 2001, and accepted by MCI WorldCom. Any and all prior offers made to Representative, whether written or oral, will be superseded by this Sixth Amendment. Any further amendments must be in writing and signed by both parties.

MCI WORLDCOM                              HSG/ATN, INC.
COMMUNICATIONS, INC.

Signature_____        Signature_____

Printed Name                             Printed Name
and Title___VP (George Harben___        and Title___George P. Bein, VP.

Date:___11/1/01_____        Date:___November 1, 2001_____

7

D000186

*ORIGINAL*

## EXHIBIT A

I.     Services

1.     Commencing on the Sixth Amendment Effective Date, Representative is authorized to obtain orders only for the following services (collectively, "Services") of TTI National, a subsidiary of MCI WorldCom, and MCI WorldCom, as such Services exist and are defined in the TTI National or MCI WorldCom applicable tariffs (together "Tariff"), or, when any applicable Tariff or Tariff provisions are canceled, in the TTI National or MCI WorldCom General Service Agreements and/or any other TTI National or MCI WorldCom publication ("Publications), and which Publications are subject to change as determined by TTI National or MCI WorldCom in its sole discretion.

- New Service Offerings     (switched outbound and inbound voice service;   dial-Up Internet;   calling card; dedicated   outbound   and   inbound   voice service)

- Commercial – MCI On-Net Services

2.     Representative's non-exclusive sales area will be the continental United States, unless otherwise agreed in writing by MCI WorldCom.

3.     Rates for the Services.

A.     Representative will be entitled to submit orders pursuant to the procedures set forth in the Agreement. The rates set forth in this Agreement are in lieu of, not in addition to, any other rates and discounts, as published in a Publication or applicable Tariff; however, Customers may be entitled to participate in any eligible promotion published in a Publication or applicable Tariff associated with the New Service Offerings or Commercial – MCI On-Net Services. MCI WorldCom will be under no obligation to automatically convert any Customer from one rate plan to another.

B.     New Service Offerings:

Commencing on the Sixth Amendment Effective Date, for all Customers purchasing TTI National Services for which Representative submitted an order and MCI WorldCom subsequently accepted the order under this Agreement and for any potential Customers for which Representative may elect to submit an order for the New Service Offering(s) rates below, subject to MCI WorldCom subsequent acceptance under this Agreement, Customer will pay the below rates:

8

D000187

ORIGINAL

- Switched outbound, switched inbound services:

    Option 1.    $0.069 per minute interstate rate.  Service usage minimums will not apply. A monthly recurring charge may be charged, if mutually agreed upon by Representative and MCI WorldCom.

    Option 2    $0.065 per minute interstate rate.  Service usage minimums will not apply. A monthly recurring charge may be charged, if mutually agreed upon by Representative and MCI WorldCom.

    Option 3**    $0.059 per minute interstate rate.  Service usage minimums may apply if mutually agreed upon by Representative and MCI WorldCom. A monthly recurring charge may be charged, if mutually agreed upon by Representative and MCI WorldCom.

    Option 4**    $0.055 per minute interstate rate. A monthly service usage minimum of $15.00 will apply. Also, a monthly recurring charge may be charged, if mutually agreed upon by Representative and MCI WorldCom.

    Option 5**    $0.049 per minute interstate rate.  Service usage minimums will not apply. A monthly recurring charge of $3.95 will be charged.

- Calling card service:

    Option 1    $0.139 per minute postalized domestic rate.  Service usage minimums will not apply.

    Option 2**    $0.099 per minute postalized domestic rate.   A monthly recurring charge of $0.99 will be charged. Service usage minimums will not apply.

- Dial-up Internet service:

    Option 1    $14.95 per month for basic subscriber TTI National Internet Dial-Up service (up to 56 kbps).

- Dedicated interstate outbound and inbound voice service

9

D000188

*ORIGINAL*

Option 1    Customers will pay the TTI National Combined Business Calling Plan generally-available interstate rates as defined in the applicable Publication.

**Option available upon MCI WorldCom publishing in a Tariff or Publication.

C.    Commercial – MCI On-Net Services

Commencing on the Sixth Amendment Effective Date, for all Customers purchasing Commercial – MCI On-Net Services for which Representative submitted an order and MCI WorldCom subsequently accepted the order under this Agreement and for any potential Customers for which Representative may elect to submit an order for the Commercial – MCI On-Net Services rate below, subject to MCI WorldCom subsequent acceptance under this Agreement, Customer will pay the generally-available interstate rates as defined in the applicable Publication or Tariff.

4.    Monthly usage charges of the Services set forth in Paragraph 1 will be calculated at the rates set forth in this Exhibit A.  The rates set forth in this Exhibit A do not apply to the following:   charges for TTI National or MCI WorldCom Services other than as specifically set forth in this Exhibit A; products not published in Publications or applicable Tariffs; access or egress (or related) charges imposed by third parties; standard non-recurring charges and non-commissionable monthly recurring non-usage charges, as published in Publications or applicable Tariffs; surcharges and calling card surcharges; taxes, tax-related, or tax-like surcharges; and other charges published in Publications or applicable Tariffs, all of which are additional and which Customer must agree to pay, to the extent applicable.  References to "intrastate" and "interstate" contained herein refer to domestic TTI National and MCI WorldCom Services within the sales area only.  Any rounding of rates and charges will be governed by Publications or applicable Tariffs.

5.    TTI National and MCI WorldCom reserve the right, exercisable at its own discretion, at any time and from time to time to modify the Services, including, but not limited to, the rates, listed in this Exhibit A.1.3.

6.    If, as a result of Representative submitting an order with a valid Representative I.D. and the order is accepted by MCI WorldCom, a Customer receives a service from TTI National or MCI WorldCom that is not a New Service Offering or a Commercial – MCI On-Net Service, as set forth in Paragraph 3 of this Exhibit A and is not a cellular or paging service, then standard rates published in Publications or applicable Tariffs, less any applicable discount, will apply to such service, and Representative is eligible to receive the "standard" commission, as of the date the Customer begins receiving such service, that MCI WorldCom offers to the majority of its agents for such service or, alternatively, any commission(s) or other compensation from MCI WorldCom for such service(s) as the Parties mutually agree upon in writing.  For any service not identified in

10

D000189

*ORIGINAL*

Paragraph 3 of this Exhibit A that Representative desires to submit order(s) for such service and Representative desires to receive commission for such orders. Representative may request the addition of such service to this Exhibit A; however, such addition will only be valid as an amendment to this Agreement signed by authorized officers of both parties.

7.  Commencing on the Sixth Amendment Effective Date, for any customized calling cards and customized card carriers requested by Representative, Representative will be responsible for all MCI WorldCom costs associated with such customization.

II.  **Commissions**

1.  Subject to the terms and conditions of this Agreement, including the limitations set forth in this Exhibit A.II, MCI WorldCom will pay Representative during the term of this Agreement a commission as described in this Exhibit A.II on each Customer account for services as set forth in Exhibit A.3.B and A.3.C and for other services as set forth in Exhibit A.6 ("Account") for which Representative submitted an order on behalf of the Customer that was subsequently accepted by MCI WorldCom, in its sole discretion, but only as long as the Account is designated by MCI WorldCom in its sole discretion to roll-up to Representative for commissioning purposes. Representative acknowledges and agrees that MCI WorldCom, in the performance of this Agreement, may rely upon information provided by, or transmitted through, Representative, Prospects, customers, local exchange companies and other third parties. MCI WorldCom will have no liability to Representative for the nonpayment of commissions resulting from inaccurate information provided by, or transmitted through, such third parties.

2.  For purposes of this Agreement, "Customer's Billed Usage," means the monthly usage charges, as billed by MCI WorldCom billings systems (taking into account any billing adjustments and credits) that MCI WorldCom bills an Account for those portions of TTI National and MCI WorldCom services that are commissionable and for commissionable monthly recurring charges, as that usage is billed and captured by MCI WorldCom's billing and commissioning systems, but specifically excluding "Excluded Revenue" (as defined below).

3.  For purposes of this Exhibit A, Excluded Revenue encompasses, but is not limited to: (i) taxes, tax-related surcharges, tax-like surcharges and surcharges; (ii) credits, discounts or promotions, except as expressly provided herein; (iii) directory assistance service charges; (iv) access/egress charges or other charges imposed by third parties; (v) any non-commissionable monthly recurring or non-recurring charges, including, but not limited to, those imposed in Publications or applicable Tariffs; (vi) any amount MCI WorldCom or its affiliates collects for, or pays to, third parties, including, but not limited to, payments in support of statutory or regulatory programs mandated by governmental or quasi-governmental authorities such as the Universal Service Fund ("USF") and the Primary Interexchange Carrier Charge ("PICC"); (vii) any amount MCI WorldCom or its affiliates pays to payphone service providers, including, but not limited to, amounts paid

11

D000190

ORIGINAL

pursuant to Section 276 of the Telecommunications Act of 1996 ("Section 276") and the regulations implementing Section 276; (viii) any costs incurred by MCI WorldCom or its affiliates in connection with such compensation requirements in support of programs mandated by governmental or quasi-governmental authorities, including, without limitation, those of Section 276; (ix) amounts billed under separate written agreements between MCI WorldCom and customers, or any special promotional offerings defined in the Publications or applicable Tariffs ("Excluded Accounts"), except as otherwise approved by an officer or director of MCI WorldCom in writing, on a case by case basis; and (x) monthly usage charges from Representative or from any entity or person controlled by, controlling, or under common control with Representative. Commissions will not be paid on Excluded Revenue.

4.   For purposes of this Agreement, Customer's Adjusted Billed Usage means Customer's Billed Usage reduced by five percent (5%). TTI National and MCI WorldCom reserves the right, at its sole discretion, to revise or adjust further the Customer's Adjusted Billed Usage Revenue in the event of toll fraud, PIC dispute, extraordinary event, bad debt, change in federal, state or local regulatory rules or orders.

5.   Commencing on the Sixth Amendment Effective Date, MCI WorldCom will pay Representative monthly commission in an amount equal to the percentages (see below) of the Customers' Adjusted Billed Usage for that month associated, respectively, with the specific New Service Offerings and/or Commercial – MCI On-Net Service.  The applicable commission percentages below do apply, respectively, to interstate, intrastate, and international usage, as applicable; but do not apply to commission payments for Grandfathered Accounts:

A.   New Service Offerings

| TTI National Service or Product | | Applicable Commission Percentage |
|---|---|---|
| Domestic interstate usage: | | |
| Option 1 | $0.069 per minute interstate rate** | 25% |
| Option 2 | $0.065 per minute interstate rate** | 22% |
| Option 3 | $0.059 per minute interstate rate** | 20% |
| Option 4 | $0.055 per minute interstate rate** | 18% |
| Option 5 | $0.049 per minute interstate rate** | 15% |

Calling Card:

12

D000191

ORIGINAL

| | | |
|---|---|---|
| Option 1 | $0.139 per minute rate** | 22% |
| Option 2 | $0.099 per minute rate** | 20% |

Dial-up Internet:

| | | |
|---|---|---|
| Option 1 | $14.95 per month rate** | 20% |

Dedicated interstate outbound
and inbound voice service:

| | | |
|---|---|---|
| Option 1 | standard published rates** | 15% |

** The complete description of the rates and charges for New Service Offerings is set forth in Paragraph 3.B of Exhibit A.I above. TTI National and MCI WorldCom reserve the right, exercisable at its own discretion, at any time and from time to time to change the rates listed in this Exhibit A for New Service Offerings.

B.    Commercial - MCI On-Net Services

The applicable commission percentage rate
for a specified month will be:                          15%

6.    Upon mutual agreement in writing by Representative and MCI WorldCom that provides for a commissionable monthly recurring charge applicable to TTI National customers that use a specific Service as described above in Paragraph 1.3.B, 1.3.C, or 1.6, Representative will receive fifty percent (50%) of the commissionable monthly recurring charge amount per month for each Account for which Representative submitted an order on behalf of the customer of TTI Services. Representative will receive such payment for such Accounts in a month only if all of the following conditions are met: (1) the order submitted by Representative is an order for the service/rate as that Service is described herein and the order has been accepted by TTI National or MCI WorldCom; (2) the Account is active and the commissionable monthly recurring charge for such Service is billed to that Account; and, 3) the Account is not more than 90 days in arrears on payment.

7.    In no event will commissions be paid pursuant to this Agreement for usage or services that are commissionable under any other commission agreement to which MCI WorldCom or any of MCI WorldCom's affiliates is a party.

8.    MCI WorldCom will make reasonable efforts to pay Representative the commissions that MCI WorldCom owes Representative within forty-five (45) days after the end of the month in which the billed parties received their billings. If the amount that MCI WorldCom owes Representative in commissions is less than one hundred dollars

- 13 -

D000192

*ORIGINAL*

($100.00), MCI WorldCom may withhold payment of commissions until the end of the calendar quarter.

14

ORIGINAL

## EXHIBIT B

### Grandfathered Accounts

1.  **Grandfathered Accounts:**

    A.  All accounts established for orders submitted by Representative with a valid Representative I.D. prior to the Sixth Amendment Effective Date and active as of the Sixth Amendment Effective Date will be grandfathered ("Grandfathered Accounts") and the TTI National and MCI WorldCom services ("Grandfathered Services") and applicable commission percentages (Grandfathered Commissions") that existed under this Agreement prior to the Sixth Amendment Effective Date will continue to apply for those Grandfathered Accounts as long as those Grandfathered Accounts remain active. For purposes of this Exhibit B, Customers associated with Grandfathered Accounts will be referred to as "Grandfathered Customers."

    B.  For all Grandfathered Accounts upon which MCI WorldCom pays Representative commissions based on an applicable commission percentage of 15% ("Subset of Grandfathered Accounts"), MCI WorldCom will increase the amount of total commissions for such Subset of Grandfathered Accounts each month by five percent (5%), as long as Representative's total monthly Customers' Adjusted Billed Usage (including total Customers' Adjusted Billed Usage as set forth in Exhibit A and total Grandfathered Customers' Adjusted Billed Usage as set forth in Exhibit B) is equal to or exceeds $1,700,000.00. Such increase to the commissions for the Subset of Grandfathered Accounts will begin with regard to commissions earned during September 2001. The payment by MCI WorldCom for commissions earned will occur during the second month after the month during which the commissions are earned. After the expiration of the Term on October 31, 2003, MCI WorldCom will increase the amount of total commissions for such Subset of Grandfathered Accounts each month by five percent (5%), regardless of the amount of the Representative's total monthly Customers' Adjusted Billed Usage (including total Customers' Adjusted Billed Usage as set forth in Exhibit A and total Grandfathered Customers' Adjusted Billed Usage as set forth in Exhibit B).

2.  **Grandfathered Commissions.**

    A.  For purposes of this Agreement, "Grandfathered Customer's Billed Usage," means the monthly usage charges, as billed by MCI WorldCom billings systems (taking into account any billing adjustments and credits) that MCI WorldCom bills a Grandfathered Account for those TTI National and MCI WorldCom services that are commissionable and for commissionable monthly recurring charges, as

15

D000194

ORIGINAL

that usage is billed and captured by MCI WorldCom's billing and commissioning systems, but specifically excluding "Excluded Revenue" (as defined below).

B.    For purposes of this Exhibit B, Excluded Revenue encompasses, but is not limited to: (i) taxes, tax-related surcharges, tax-like surcharges and surcharges; (ii) credits, discounts or promotions, except as expressly provided herein; (iii) directory assistance service charges; (iv) access/egress charges or other charges imposed by third parties; (v) any non-commissionable monthly recurring or non-recurring charges, including, but not limited to, those imposed in Publications or applicable Tariffs; (vi) any amount MCI WorldCom or its affiliates collects for, or pays to, third parties, including, but not limited to, payments in support of statutory or regulatory programs mandated by governmental or quasi-governmental authorities such as the Universal Service Fund ("USF") and the Primary Interexchange Carrier Charge ("PICC"); (vii) any amount MCI WorldCom or its affiliates pays to payphone service providers, including, but not limited to, amounts paid pursuant to Section 276 of the Telecommunications Act of 1996 ("Section 276") and the regulations implementing Section 276; (viii) any costs incurred by MCI WorldCom or its affiliates in connection with such compensation requirements in support of programs mandated by governmental or quasi-governmental authorities, including, without limitation, those of Section 276; (ix) amounts billed under separate written agreements between MCI WorldCom and customers, or any special promotional offerings defined in the Publications or applicable Tariffs ("Excluded Accounts"), except as otherwise approved by an officer or director of MCI WorldCom in writing, on a case by case basis; (x) monthly usage charges from Representative or from any entity or person controlled by, controlling, or under common control with Representative; and (xi) charges for or revenue from Excluded Accounts or any other TTI National service not listed in Exhibit B, including, but not limited to, charges for goods and services that are not in the Publications or charges incurred where MCI WorldCom acts as an agent for a customer in the acquisition of goods and services. Grandfathered Commissions will not be paid on Excluded Revenue.

C.    For purposes of this Agreement, Grandfathered Customer's Adjusted Billed Usage means Grandfathered Customer's Billed Usage reduced by five percent (5%). MCI WorldCom reserves the right, at its sole discretion, to revise or adjust further the Grandfathered Customer's Adjusted Billed Usage Revenue in the event of toll fraud, PIC dispute, extraordinary event, bad debt, change in federal, state, or local regulatory rules or orders.

D.    MCI WorldCom will make reasonable efforts to pay Representative the Grandfathered Commissions that MCI WorldCom owes Representative within forty-five (45) days after the end of the month in which the billed parties received their billings. If the amount that MCI WorldCom owes Representative in Grandfathered Commissions is less than one hundred dollars ($100.00), MCI

D000195

*ORIGINAL*

WorldCom may withhold payment of Grandfathered Commissions until the end of the calendar quarter.

E.     In the event that a Grandfathered Customer converts to a Service, as set forth in Exhibit A, where such Service has a higher applicable commission percentage than the Grandfathered Service that the Grandfathered Customer was associated with before converting, then MCI WorldCom will pay Representative a monthly commission in an amount equal to the lower commission percentage that was applicable before the Grandfathered Customer converted (instead of the higher applicable commission percentage, as set forth in Exhibit A), on certain portions of the Customer's Adjusted Billed Usage associated with the Service, as set forth in Exhibit A, to which the Grandfathered Customer converted.     For any commissionable monthly recurring charge associated with the Service to which the Grandfathered Customer converts, Representative will receive fifty percent (50%) of the commissionable monthly recurring charge per month per account.

F.     In the event that a Grandfathered Customer converts to a Service, as set forth in Exhibit A, where such Service has a lower applicable commission percentage than the Grandfathered Service that the Grandfathered Customer was associated with before converting, then MCI WorldCom will pay Representative a monthly commission in an amount equal to the new lower applicable commission percentage, as set forth in Exhibit A, on certain portions of the Customer's Adjusted Billed Usage associated with the Service, as set forth in Exhibit A, to which the Grandfathered Customer converted.     For any commissionable monthly recurring charge associated with the Service to which the Grandfathered Customer converts, Representative will receive fifty percent (50%) of the commissionable monthly recurring charge per month per account.

G.     In the event that a Grandfathered Customer converts to a Service that is not set forth in Exhibit A but such conversion is the result of an orders submitted by Representative with a valid Representative I.D., then MCI WorldCom will pay Representative a monthly commission in an amount no less than the "standard" commission, as of the effective date of such conversion, that MCI WorldCom offers to the majority of its agents for such service.     For any commissionable monthly recurring charge associated with the Service to which the Grandfathered Customer converts, Representative will receive fifty percent (50%) of the commissionable monthly recurring charge per month per account.

17

D000196