**EXPERT REPORT OF ROBERT SHERWIN – IN RE WORLDCOM, INC.**

### I.    INTRODUCTION.

1.    This report contains my expert opinions in the matter of In re WorldCom, Inc. pending in the United States Bankruptcy Court for the Southern District of New York, Case No. 02-13533 (AJG).

### II.    ASSIGNMENT.

2.    I have been retained by WorldCom to calculate the maximum amount MCI could owe HSG/ATN, Inc. (HSG), one of WorldCom's unsecured creditors under the terms of the Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (Reorganization Plan), if MCI's contingent obligation to pay HSG residual commissions is not extinguished by HSG's breach of the agreement between the parties as MCI asserts.[1] I have also been asked to respond to the opinions reached by HSG's expert, Lynton Kotzin (Kotzin), as expressed in his report dated September 15, 2005 (Kotzin Report). In doing my analysis, I have been asked to assume that HSG has a valid claim for residual commissions.

### III.    QUALIFICATIONS.

3.    I hold a J.D. from The University of Chicago and an A.B. in Economics and Physics from Wabash College. I am a Certified Public Accountant (Illinois), and a member of the American Bar Association, the American Economic Association, and the Illinois Bar Association.

---

[1] I understand that under the terms of the Reorganization Plan, HSG has a Class 6 claim (WorldCom General Unsecured Claims).

– 1 –

4.    I am currently employed as a Managing Principal of Analysis Group, Inc. ("Analysis Group"). Analysis Group provides an integrated set of economic, financial, and strategic consulting services to its clients, which include law firms and corporations. I was Principal and Vice President of Analysis Group and its subsidiary Analysis Group/Economics before Analysis Group/Economics and its sister company, Integral, Inc. were merged in April of 2003. I have consulted for Analysis Group for more than 16 years. Prior to joining Analysis Group, I was Senior Economist and Vice President of Lexecon Inc., an economic consulting firm in Chicago, for 12 years.

5.    I have been qualified as an expert economic witness in federal and state courts. In addition, I have performed economic, financial, and statistical consulting in a wide variety of cases. My telecom experience includes calculating lost profits stemming from breaches of contracts between long distance carriers and selling agents and analyzing long distance customer attrition rates. In particular I have experience analyzing MCI customer data. I have testified at deposition or trial as an expert witness more than 140 times.

6.    My billing rate is $475 per hour. All work on which this report is based has been performed by me or by staff at Analysis Group working under my direction and supervision.

7.    My curriculum vitae is attached to this report as **Exhibit 1**. It includes a list of matters in which I have testified at deposition or trial in the past four years and a list of my publications for the past ten years.

IV.    **DOCUMENTS RELIED UPON.**

8.    This report incorporates information from documents provided to and collected by me in this case including MCI/HSG customer revenue and commission information, the Reorganization Plan and the Kotzin Report. A complete list of the documents and data sources that I relied upon is attached as **Exhibit 2**. If additional data and/or documents are provided or new information becomes available, I reserve the right to modify my analyses and opinions as appropriate based on the new information.

V.    **SUMMARY OF CONCLUSIONS.**

9.    I have been asked to evaluate the maximum amount that would be due HSG under the agreement between the parties if MCI's contingent obligation to pay residual commissions to HSG is not extinguished. Nothing I say in this report should be construed as addressing the legal issues in dispute between the parties or the underlying merits of HSG's claim. Based on my analysis and review of the materials described above, I reached the following conclusions:

> A. Scenario 2 in the Kotzin Report overstates the post-petition commissions allegedly owed to HSG and should be ignored. Kotzin inappropriately uses a customer attrition rate rather than a revenue attrition in this scenario. The attrition rate calculated by Kotzin for this scenario is too high because the data are not measuring the correct customer base and customer attrition takes neither customer usage nor declining telecom prices into account. Simple sanity checks show the unreasonableness of Kotzin Scenario 2.

> B. The Kotzin Report overstates the commissions allegedly owed to HSG because the revenue data used by Kotzin are not up to date. Revenues that he forecasts are higher than the actual revenues earned by WorldCom in those

corresponding periods.

C. The scenarios presented in the Kotzin report further overstate the commissions allegedly owed to HSG because of deficiencies in Kotzin's discounting of cash flows. Kotzin calculates present values of future commissions with a discount rate that is not commensurate with the risk of the underlying cash flows. Kotzin also miscalculates the discounting of payments by failing to properly model the 45-day lag between commissions being earned and paid to HSG.

D. Kotzin incorrectly subtracts the post-petition commission payments to arrive at the net commissions due to HSG. These inadvertent overpayments should be credited against the Reorganization Plan amount rather than against HSG's gross claim. This overstates the amount of cash that HSG would receive through the Reorganization Plan by $357,526.

E. Using updated data and modifying some of the assumptions in Kotzin's Scenario 1 model I have calculated that HSG's gross claim against WorldCom is $5,410,388. This represents the present value of HSG's commissions until termination.[2] Based on its gross claim and its standing in the bankruptcy proceedings, the most that HSG is entitled to, if it prevails, is cash in the amount of $965,754 and 38,630 shares of MCI stock. After it filed for protection under Chapter 11 of the bankruptcy code, WorldCom inadvertently paid commissions to HSG of $435,211. This means that, at most, $530,543 in cash remains to be paid to HSG. See **Exhibit 8.**

---

[2] Per Exhibit B to Representation Agreement, termination occurs when monthly commissionable revenue falls below $25,000.

## VI.    ANALYSIS.

### A. Kotzin's Scenario 2 cannot be relied upon.

10.    In his report, Kotzin presents two scenarios of Present Values of Commissions Due. The main difference between them is the revenue attrition rate which affects the amount revenues decrease during his forecast period.[3] Scenario 1 is based on an attrition of HSG customer revenue as reported by MCI.[4] In the exhibits to his report, Mr. Kotzin shows that revenue declined -4.28% per month or -40.83% per year at a compound annual rate.[5] Scenario 2 is based on what he calls "customer attrition".[6] According to Mr. Kotzin's data, the number of customers declined by -0.76% month or -8.71% at a compound annual rate.[7] Mr. Kotzin does not attempt to reconcile the discrepancy between the decline in revenues and the decline in customers.

11.    Revenue attrition can be caused by two things. The first is fewer customers generating revenue and the second is a drop in the amount of revenue each customer generates. The revenue attrition rate shown on Exhibit 4 of Kotzin's report is the product of the attrition rate of the number of customers and the revenue per customer attrition rate. Using the disaggregated customer data provided to me by MCI, I show the relationship between these rates on **Exhibit 3** for the period May 2003 through June 2005.[8] As can be seen on the exhibit, in most months, the average revenue per customer

---

[3] Kotzin's forecast period runs from January 2005 through the time when commissionable revenues are projected to be below the threshold of $25,000. This occurs in May 2010 and May 2036 for Kotzin Scenarios 1 and 2 respectively.
[4] Kotzin Exhibit 4 shows his revenue attrition rate.
[5] $[(1 - 4.28\%)^{12}] - 1 = -40.83\%$
[6] Kotzin Exhibit 6 shows his customer attrition rate.
[7] $[(1 - 0.76\%)^{12}] - 1 = -8.71\%$
[8] Though covering a different time period, the customer counts on this exhibit do not appear to match the customer counts on Kotzin Exhibit 6. I discuss this below.

is declining.[9] Mr. Kotzin's Scenario 2 makes an invalid assumption that revenue per customer remains unchanged. Had Mr. Kotzin included a decline in revenue per customer in his Scenario 2 model, his results would have been more in line with the Scenario 1 results, though they would still overstate the commissions owed to HSG, if any.

12. In addition to not including a decline in revenue per customer in his Scenario 2 model, the customer attrition rate used by Kotzin appears to be too low. The data cited by Kotzin appear to be inappropriate for the purposes he uses them. The customer revenue dataset provided to me by MCI shows that in May 2003 there were 86,619 customers remaining who generated revenue. This would be a huge one month drop of over 45% from the number of customers (158,234) reported by Kotzin on Exhibit 6 for April 2003. This indicates that the data used by Kotzin likely contains a large number of non-revenue producing customers.[10] Based on my experience in reviewing MCI customer reporting data in other matters, I have found that there is often a lag between when a customer ceases to generate revenue and the customer is physically removed from the customer database upon which the revenue reporting is based. In other cases, I have seen reports with a list of total customers and total revenue generating customers. In this case, it appears that the data used by Kotzin include some combination of former customers and non-revenue generating customers. **Exhibit 4** shows the attrition rate for revenue producing customers is -2.47% per month. This is more significantly negative than Kotzin's rate and more in line with the revenue attrition rate he uses in Scenario 1,

---

[9] This can be caused from either less usage or declining prices.
[10] The fact that the commissionable revenue in Kotzin's April 2003 data source is comparable to the May 2003 revenue in the disaggregated customer data supports this conclusion.

but even this rate should not be used because it does not take declining revenue per customer into account.

13. An outcome of Kotzin's flawed customer attrition rate is greatly overstated projected commissionable revenues. Comparing actual MCI revenue data to the values predicted by Kotzin's Scenario 2 model shows the unreasonableness of his revenue attrition assumption. **Exhibit 5A** shows that Kotzin's model overpredicts monthly revenue by 33% in June 2005.[11] As time goes on, this overprediction error will grow making Scenario 2 extremely unreliable.

14. The results of Scenario 2 are simply not credible. As can be determined from Kotzin Exhibit 3, over 5 percent of MCI's customers enrolled by HSG as of December 2004 will still be MCI customers (without having ever changed in between) in 2036.[12] Given technological changes, competition among long distance carriers, customers moving, customers passing away and business customers failing, it is unlikely that this would happen. It is more likely that the revenue attrition rate in Scenario 2 does not accurately predict the future and therefore this scenario should be disregarded.

### B. Updated actual data reduces commissionable revenue from Kotzin's Report.

15. In his report, Kotzin models revenue in the months January 2005 through June 2005. WorldCom has provided me with the actual data for the HSG customers for this

---

[11] Though overstated, the revenues predicted in Scenario 1 are much closer to actual revenues than those in Scenario 2.

[12] Kotzin estimates revenues beginning in January of 2005. Revenues as of December 2004 were $439,142. Using his customer attrition rate, Kotzin estimates that revenues will be $25,093 by May 2036. $25,093 / $439,142 = 5.71%.

period.[13]  As discussed in the prior section, the revenues projected by Kotzin exceed

actual revenues.  As shown in **Exhibit 5B**, Scenario 1's revenues are overstated for the

period January 2005 through June 2005 by 12.3%.[14]

16.  Kotzin projects future revenues by applying an assumed revenue decline to

the last available data.  Beginning the projection at July 2005 instead of January 2005,

but otherwise keeping Kotzin's methodology intact reduces the Scenario 1 Post-Petition

Projected Commissions Due in his report by $106,441 or -7.8%.[15]  **See Exhibit 6.**

### C.  Kotzin makes numerous errors in discounting cash flows.

17.  On page 4 of his report, Kotzin states, "The commissions for this period were

discounted to January 31, 2006 using an appropriate discount rate.  Interest rates on

government bonds or annuity rates for triple A-rated insurance companies are commonly

used as discount rates."  Kotzin then goes on to use the Moody's Aaa corporate bond

yield in his analysis.[16]  This discount rate represents the borrowing costs of the most

secure and credit-worthy companies.  A proper discount rate takes into account both the

real time value of money (people prefer a dollar today to a dollar tomorrow) and all the

risks associated with the expected stream of future cash flows.  These risks can include

(1) inflation risk, (2) credit or default risk and (3) market risk.  In most cases, it is only

appropriate to use a government bond or Aaa corporate bond yield as a discount rate

when the cash flows are virtually certain.  In this case, the cash flows to MCI (and HSG)

---

[13] Kotzin also estimates revenue for October 2003 in both of his scenarios.  The actual revenue was $680,929 or at least 3.5% lower then the number used by Kotzin in Scenario 1.  Using the actual October 2003 data reduces the Scenario 1 Post-Petition Commissions Due by almost $4,000.
[14] Scenario 2's revenues are overstated by 27.1% for the same period.  See **Exhibit 5A**.
[15] The effects of replacing Kotzin's projections with actual data are even more dramatic for Scenario 2, but as discussed above, Scenario 2 should be ignored.

are risky. They fluctuate from month to month depending on the number of customers and their usage. This in turn depends in part on competition between MCI and its rivals, and changes in technology such as the growth in using the Internet and cellular phones for making long distance calls. The uncertainty of these cash flows means that using an almost risk-free rate as done by Kotzin is inappropriate.

18. I have looked at alternative discount rates that better reflect the risks inherent in the projected commission payments. The primary discount rate that I employ is MCI's weighted average cost of capital (WACC). This WACC represents the cost for MCI to acquire capital and using it as a discount rate implies that the commission cash flows are as risky as the average MCI cash flow. Bloomberg Financial Services, a data reporting tool commonly used in my business, reports a WACC of 7.05% for MCI as of October 4, 2005. Using this discount rate, but otherwise leaving Kotzin's model unchanged would reduce Kotzin's calculated Post-Petition Projected Commissions Due by $23,702.[17] See **Exhibit 6.**

19. In his model, Kotzin appears to have not discounted MCI's commission payments to HSG for a long enough time period. This error causes Kotzin's calculated values of Post-Petition Projected Commissions to be overstated. According to the agreement between MCI and HSG, MCI has 45 days from the end of the month to pay HSG. For example, this means that commissions for the month of December 2005 will

---

[16] Moody's states that "Obligations rated Aaa are judged to be of the highest quality, with minimal credit risk."

[17] To calculate an alternative discount rate, I examined the relationship between the volatility of MCI's commissionable revenue and the volatility of the S&P. This analysis yields a cost of equity which measures the riskiness of this project. In calculating the cost of equity, I used the same risk-free rate and market risk premium as Bloomberg in its WACC calculation. This cost of equity analysis yielded a discount rate a little higher than the WACC discount rate reported by Bloomberg and would reduce Kotzin's post-petition projected commissions by $39,843.

be payable in the middle of February.[18]  Kotzin does not apply a discount factor to December and January 2006 on his Exhibits 2 and 3 even though those cash flows would be received by HSG after his assumed valuation date of January 31, 2006.  Furthermore, Kotzin appears to be adding the 45 days to the beginning of the month instead of the end.  For example, in the column called "Period Discounted" on Exhibit 2 to his report, the value for February 2006 is 0.125.  This represents 1.5 months from January 31, 2006 or some time in mid-March.  Based on the agreement, the commissions from February's usage would be payable 45 days after the end of February or in mid-April.  Beginning in February 2006, all of Kotzin's values in the "Price Discounted" column should be increased by one month or 0.083.  This error causes the "Present Value Factor" and Present Value of Cash Flows" columns to also be incorrect.[19]

20.  Finally, Kotzin makes a minor discounting error that overstates the commission owed by not properly annualizing his discount rate.  Because Kotzin's models measure time in years, his discount rate should be a compound annual rate.  The rates used by Kotzin in discounting his cash flows are Annual Percentage Rates compounded semi-annually.  As an example, the Moody's Aaa rate of 5.05% used by Kotzin translates to a 5.11% compound annual rate.[20]

---

[18] December 31, 2005 + 45 days = February 14, 2006
[19] Fixing this error would reduce the Scenario 1 Post-Petition Projected Commissions Due on Exhibit 2 of the Kotzin report by $2,916.
[20] The formula to transform the rates used by Kotzin to the compound annual rate is $(1 + r/2)^2 - 1$ where r equals the Kotzin rate.  The government bond rates used by Kotzin have the same problem.  Correcting this would increase Kotzin's Scenario 1 discount rate from 4.54% to 4.59%.  This reduces the Present Value of Post-Petition Projected Commissions by $520.

– 10 –

**D. <u>Kotzin Overstates HSG's bankruptcy claim by deducting inadvertent post-petition commissions paid.</u>**

21.   WorldCom paid HSG $435,211 for Post-Petition commissions earned between the filing date and the end of September 2002.[21] It is my understanding that these payments were inadvertently paid at 100% of the gross amount due.  WorldCom is attempting to secure repayment of the excess amounts.  At the very least, the excess amounts should be offset against HSG's bankruptcy claims. By deducting these payments from HSG's gross commission claim, Kotzin's methodology would allow HSG to receive one hundred percent of part of its bankruptcy claims, instead of the reduced percentage to which it may be entitled.

22.   As a Class 6 Creditor in the bankruptcy plan, HSG is entitled cash in the amount of 17.85% of its claim and 7.14 shares of stock per every $1,000 dollars of its claim.  The inadvertent payments should be used as an offset against the cash portion owed to HSG in the bankruptcy proceedings.  **Exhibit 7** shows that Kotzin's offsetting the inadvertent payments against the gross commission claim instead of the cash portion of the bankruptcy settlement claim leads him to overestimate the cash amount HSG should receive pursuant to the Reorganization Plan by $357,526.

**E. <u>Applying the formulas in the Reorganization Plan, HSG's claim is worth at most $530,543 and 38,630 shares of MCI stock.</u>**

23.   As stated above, MCI believes that HSG does not have a claim because HSG solicited customers in violation of the contract, violated the automatic bankruptcy stay and engaged in tortious interference with MCI's business relationships.  If however, HSG

---

[21] D00257 – 259.

fully prevails on the liability issue, I have determined the maximum amount that HSG should be paid pursuant to the bankruptcy proceedings is $530,543 and 38,630 shares of MCI stock.[22] In drawing this conclusion, I first calculated HSG's gross commissionable revenue claim. I then applied the appropriate calculation in the Reorganization Plan for Class 6 creditors to determine the amount due to HSG. **Exhibit 8** shows the calculations in detail.

24. In calculating HSG's gross commissionable revenue claim, I used a model very similar to the one used by Kotzin in Scenario 1 of his report. The following are changes that I made which correct problems in Kotzin's model as discussed earlier in this report:

    a.   I used actual MCI commissionable revenue for October 2003 and January 2005 through June 2005.

    b.   I updated the revenue decline rate used for projecting future commissionable revenue to reflect all available data.[23]

    c.   I have changed the timing between revenue generation and commission payment to HSG properly reflect the timing of the 45 day payment period.

    d.   I have discounted future cash flows to HSG using MCI's WACC of 7.05%.[24]

---

[22] The cash portion is net of the $435,211 of inadvertent payments made to HSG post-petition.

[23] This changed the revenue attrition rate from -4.28% per month to -4.47% per month. See **Exhibit 9**. In addition, I have adopted Kotzin's commission as a percentage of revenue of 15.24% beginning in May 2003.

[24] I adopted Kotzin's assumed trial date of January 31, 2006.

Executed this 31st day of October, 2005 at Los Angeles, California.


ROBERT SHERWIN

**Exhibit 1**
**ROBERT A. SHERWIN**
**Managing Principal**

601 South Figueroa Street                                        117 Lyndon Street
Suite 1300                                            Hermosa Beach, California 90254
Los Angeles, CA 90017                                              (310) 372-5451
Phone: (213) 896-4500
Fax: (213) 623-4112

## EDUCATION

1985          CPA, State of Illinois

1978          J.D., University of Chicago

1975          A.B. in Economics and Physics, Wabash College

## PROFESSIONAL EMPLOYMENT

Analysis Group, Inc.          Managing Principal and Vice President (2003 - present)
Los Angeles, CA               Principal and Vice President (1989 – 2003)
                              Member, Board of Directors (1995 - 1997)

Analysis Group/Economics      Principal (1995-2003)
Los Angeles, CA

Lexecon Inc.                  Senior Economist, Vice President (1977 - 1989)
*Chicago, IL*

## ACADEMIC HONORS AND FELLOWSHIPS

George Lewes Mackintosh Fellow
Summa Cum Laude
Phi Beta Kappa
Distinction in Senior Comprehensive Examinations in both fields
Wall Street Journal Award for outstanding business student

## PROFESSIONAL AFFILIATIONS

American Bar Association
American Economic Association
Illinois Bar Association

## PUBLICATIONS

"Economic Analysis of Intellectual Property Rights" (with Elizabeth Evans and Martha Samuelson), in *Litigation Services Handbook*, (Frank, Weil, and Wagner, editors 3rd ed. 2001)

"Damage Awards" (with John C. Jarosz) in *The IP Litigator* (Sept./Oct. 1996) p. 19

"Economic Analysis of Intellectual Property Rights" (with Elizabeth Evans and Martha Samuelson), in *Litigation Services Handbook*, (Frank, Weil, and Wagner, editors 2nd ed. 1995)

"Comments on Werden and Froeb -- Correlation, Causality, and all that Jazz," *8 Rev. of Industrial Org.* 355 (1993)

"Navigating the Changing Tides of Managed Care and Health Reform," (contributing author) (American Medical Association Monograph 1994)

"The Extent of the Market," (with George J. Stigler), *28 J. Law & Econ.* 555 (1985), republished in *Monopoly and Competition Policy*, Volume II (F.M. Scherer, ed. 1994)

## TESTIFYING EXPERIENCE

- **Fran Am Partnership, LLC v. Sports Car Club of America, Inc.**
  *U.S. District Court, District of Colorado*
  Deposition testimony regarding market definition, market power, and damages in an antitrust case involving standards setting in amateur race cars. (2005)

- **Crown Poly, Inc. v. Unistar Plastics, LLC**
  *U.S. District Court, Central District of California*
  Deposition testimony regarding lost profits and reasonable royalties in a patent infringement dispute involving plastic bags and their dispensers used for produce in grocery stores. (2005)

- **In re Clarent Corp. Securities Litigation**
  *U.S. District Court, Northern District of California*
  Trial and deposition testimony regarding class-wide securities damages from an alleged violation of Rule 10b-5. (2005)

- **SourceTrack, LLC v. Ariba, Inc.**
  *Florida Circuit Court, Hillsborough County*
  Deposition testimony regarding the valuation of a software firm providing business-to-business electronic purchasing capabilities. (2005)

- **Adams v. Home Depot USA, Inc.**
  *California Superior Court, Riverside*
  Deposition testimony regarding statistical analysis of the degree to which management responsibilities varied among members of a putative class in a wage-and-hour dispute. (2004)

- **Plantronics, Inc. v. Levin Consulting**
  *Arbitration*
  Trial and deposition testimony regarding damages suffered by headset manufacturer from alleged breach of contract and disclosure of trade secrets. (2004)

- **Jneid v. Novell, Inc.**
  *California Superior Court, Orange County*
  Deposition testimony regarding revenue measurement for purposes of an earn-out provision. (2004)

- **FOH Holdings, Inc. v. Andersen, LLP**
  *California Superior Court, Los Angeles*
  Deposition testimony regarding lost business value resulting from alleged accounting malpractice. (2004)

- **VSI Holdings, Inc. v. SPX Corporation**
  *U.S. District Court, Eastern District of Michigan*
  Deposition testimony regarding damages to a company resulting from an alleged breach of a contract to purchase that company. (2004)

- **Frontier Oil Corporation v. Holly Corporation**
  *Delaware Chancery Court, New Castle County*
  Trial and deposition testimony and trial regarding damages allegedly sustained by an acquirer when the target corporation refused to go through with the acquisition. (2003, 2004)

- **Modi Enterprises v. ESPN, Inc.**
  *New York Supreme Court, New York County*
  Trial and deposition testimony regarding damages suffered by the distributor of ESPN cable broadcasts in India from a variety of alleged breaches of contract. (2003, 2004)

- **Flash Technology Corporation v. PCS Resources, Inc.**
  *Tennessee Chancery Court, 20th Judicial District*
  Deposition testimony regarding damages suffered by tower lighting firm from alleged breaches of fiduciary duty and non-competition agreements. (2003)

- **Technology For Communications International v. Tower Interests, Inc.**
  *Arbitration*
  Trial testimony regarding alleged damages suffered by licensee of a broadcast tower from the failure to install master television and F.M. radio antennas. (2003)

- **LSQ II, LLC v. Bearing Point, Inc.**
  *United States District Court, Middle District of Florida*
  Deposition testimony regarding damages to allegedly sustained by a factoring company from the failure to build a computer system to specifications. (2003)

- **SMS Eumuco GmbH v. Korte**
  *California Superior Court, Los Angeles*
  Deposition testimony regarding damages to manufacturer of industrial machines from trade secret theft and unfair competition. (2003)

- **Grant Products International v. American Products Company, Inc.**

*United States District Court, Central District of California*
Deposition testimony regarding damages to manufacturer of replacement steering wheels from copyright and trademark violations. (2003)

- **Helio Medical Supplies, Inc. v. UPC Medical Supplies, Inc.**
  *Unites States District Court, Northern District of California*
  Deposition testimony regarding damages to supplier of medical supplies from unfair competition. (2003)

- **Sunrise International Leasing Corp. v. Sun Microsystems, Inc.**
  *United States District Court, District of Minnesota*
  Deposition testimony regarding damages to equipment lessor from breach of contract by manufacturer. (2003)

- **Marvel Characters, Inc. v. Universal Studios, Inc.**
  *Arbitration*
  Trial testimony regarding damages suffered by Marvel because of Universal's alleged breach of contract and failure to provide required advertising expenditures. (2003)

- **NPI Medical Group, Inc. v. State Compensation Ins. Fund**
  *California Superior Court, Los Angeles*
  Deposition testimony regarding market definition, market power, alleged exclusionary conduct, damages, and valuation in the context of medical providers specializing in pain relief under the California workers compensation system. (2003, 2002)

- **Wong v. Catholic Healthcare West**
  *Arbitration*
  Trial testimony regarding the aging on accounts receivables and methods for making reasonable estimates of the future costs associated with the collection of those accounts. (2003)

- **National Instruments Corporation v. The Mathworks Inc.**
  *United States District Court, Eastern District of Texas*
  Trial and deposition testimony regarding reasonable royalties in a patent infringement case involving graphical programming software. (2002, 2003)

- **Parental Guide of Texas, Inc. v. Funai Corporation, Inc.**
  *United States District Court, Eastern District of Texas*
  Deposition testimony regarding reasonable royalties in a patent infringement case involving parental control of television programs. (2002)

- **Carlen Enterprises, Inc. v. Oneida Ltd.**
  *United States District Court, Central District of California*
  Deposition testimony regarding damages suffered by a wholesaler of excess and obsolete goods from alleged failure to deliver product. (2002)

- **Cross Medical Products. Inc. v. DePuy Acromed, Inc.**
  *United States District Court, Central District of California*
  Deposition testimony regarding damages suffered by a medical products manufacturer arising from the infringement of a patent(s) covering design and use of specialized components in a spinal implant and fixation system. (2002)

- **Molina Medical Centers v. CalOPTIMA**
  *California Superior Court, Orange County*
  Deposition testimony regarding commercial damages allegedly suffered by medical clinics and their associated pre-paid healthcare plan as the result of the assignment policies relating to Medi-Cal patients. (2002)

- **Electrosource, LLC v. Pelican Products, Inc.**
  *United States District Court, Central District of California*
  Deposition testimony regarding unjust enrichment involving electronic products and accessories. (2002)

- **Pacific Coin Management v. BR Telephony Partners, L.P.**
  *California Superior Court, Los Angeles*
  Trial and deposition testimony regarding the proper valuation of a deferred payment (in the form of a contingent note) for a private pay telephone company. (2002)

- **Liberty Communications, Inc. v. MCI Worldcom Communications, Inc.**
  *Arbitration*
  Deposition testimony regarding damages suffered by an independent sales agent for long distance services allegedly arising from misrepresentation of the account management system. (2002)

- **nCUBE Corporation v. SeaChange International, Inc.**
  *United States District Court, District of Delaware*
  Trial and deposition testimony with respect to lost profits (deposition only) and reasonable royalty damages resulting from the infringement of a patent covering video-on-demand architecture for bi-directional, high bandwidth systems. (2002)

- **CarsDirect v. KPMG**
  *California Superior Court, Los Angeles*
  Deposition testimony regarding lost profits and out-of-pocket costs related to KPMG's alleged failure to deliver an operational CRM system. (2002)

- **Akai Musical Instrument Corp. v. Electronic Data Systems Corp.**
  *153rd Judicial District, Tarrant County Texas*
  Deposition and hearing testimony regarding lost profits and out-of-pocket costs allegedly incurred as the result of a fraudulent scheme involving a purported military procurement contract. (2002)

- **Enviro Petroleum, Inc. v. Djody**
  *Arbitration*
  Trial testimony regarding lost fees and equity value of a proposed petroleum refinery to have been located in Kazakhstan. (2002)

- **Answer Products, Inc. v. RockShox, Inc.**
  *United States District Court, Central District of California*
  Deposition testimony regarding lost profits and reasonable royalty damages related to components for mountain bicycles. (2001)

- **Teleserve Systems, Inc. v. MCI Worldcom Network Services, Inc.**
  *Arbitration*

Trial and deposition testimony regarding damages suffered by an independent sales agent for pay phone operator services allegedly resulting from deficient activity-tracking systems. (2001)

- **Pelican Products, Inc. v Hubbell, Inc.**
  *United States District Court, Central District of California*
  Deposition testimony regarding antitrust damages allegedly suffered by a firm that contended it was treated unfairly because it failed to conspire to fix prices. (2001)

- **Eastman Medical Products, Inc. v. Bristol Myers Squibb Co.**
  *Arbitration*
  Trial testimony regarding damages suffered by inventor of a medical product (relating to adult incontinence) from alleged failure of exclusive distributor to adequately promote, and to seek reimbursement for, the product. (2001)

- **Clayton Industries, Inc. v. SPX Corporation**
  *Arbitration*
  Trial and deposition testimony regarding damages resulting from price discrimination. (2001)

- **Connection Machines Services, Inc. v. Maslana**
  *California Superior Court, San Francisco County*
  Deposition testimony regarding the importance of a royalty renegotiation to the value of a business. (2001)

- **Baldwin Building Co. v. Smith**
  *California Superior Court, Orange County*
  Deposition testimony regarding accounting treatment and damages involving dispute between land development company and former executive. (2001)

- **The Chase Manhattan Bank, N.A. v. Credit Lyonnais (Suisse) S.A.**
  *United States District Court, Southern District of New York*
  Deposition testimony regarding changes in the unrealized losses suffered by bank on loans to a Puerto Rican refinery. (2001)

- **Sun Microsystems Inc. v. Kingston Technology Co.**
  *United States District Court, Northern District of California*
  Deposition testimony regarding reasonable royalty with regard to configurations of personal computer memory modules. (2001)

- **Kidzsurf.com, LLC v. D.A.R.E. America**
  *Arbitration*
  Trial testimony regarding damages suffered by an Internet start-up firm from alleged breach of contract by the non-profit sponsor. (2001)

**Exhibit 2**
# In Re WorldCom, Inc.
## Documents Relied Upon

| Document | Bates Number |
|---|---|
| Bloomberg Financial Services | |
| Check from WorldCom dated 10/16/2002 | D000259 |
| Check from WorldCom dated 11/12/2002 | D000258 |
| Check from WorldCom dated 9/13/2002 | D000257 |
| Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code | |
| Expert Report of Lynton Kotzin | |
| HSG Revenue Detail January 2005 - June 2005 | D000262 - 000298 |
| HSG Revenue Detail May 2003 - December 2004 | D000001 - 000145 |
| HSG REVENUE DETAIL MAY 2003 - JUNE 2005.txt | |
| HSG Revenue Detail October 2003 | D000299 - 000307 |
| HSG/ATN, Inc. U.S. Bankruptcy Court Amended Proof of Claim for Claim #36482 and Exhibits | |
| HSG/ATN, Inc. U.S. Bankruptcy Court Proof of Claim for Claim #38458 and Exhibits | |
| HSG/ATN, Inc. U.S. Bankruptcy Court Proof of Claim for Claim #38580 and Exhibits | |
| HSG/ATN, Inc.'s Response to Debtor's Fifty-Ninth Omnibus Objection to Proofs of Claims and Exhibits | |
| Letter from Bein, President of HSG/ATN, Inc., to Hampton of WorldCom with 30-day notice of termination of representation agreement. | D000197 |
| Letter from Reynolds of WorldCom to Bein of HSG/ATN, Inc. stating the termination of the Representation Agreement is effective July 28, 2002. | D000198 |
| Notice of Rejection of Executory Contracts | D000206 |
| Printout of Revenues and Commissions from HSG MAY 2002 - APR 2003 REVENUE | D000256 |
| Reorganized Debtors' Rule 26(a)(1) Disclosures for Claim Nos. 36482 and 38458 (Filed by HSG/ATN, Inc.) | |
| Representation Agreement and Exhibits | D000146 - 000162 |
| Rule 26 Disclosure of HSG/ATN, Inc. | |
| Sixth Amendment to Representation Agreement and Exhibits | D000180 - 000196 |
| Westlaw Summary of United States Bankruptcy Court, In re WorldCom, Inc. et al., Debtors | |

## Exhibit 3
## In Re WorldCom, Inc.
### Relationship Between Revenue Attrition and Customer Attrition

| Month | Revenues | | Customers | | Revenue Per Customer | |
|---|---|---|---|---|---|---|
| | Value | % Change | Value | % Change | Value [a] | % Change |
| May-03 | $826,097 | | 86,619 | | $9.54 | |
| Jun-03 | 811,276 | -1.79% | 85,527 | -1.26% | $9.49 | -0.54% |
| Jul-03 | 766,932 | -5.47% | 82,994 | -2.96% | $9.24 | -2.58% |
| Aug-03 | 785,267 | 2.39% | 81,746 | -1.50% | $9.61 | 3.95% |
| Sep-03 | 737,469 | -6.09% | 78,556 | -3.90% | $9.39 | -2.27% |
| Oct-03 | 680,929 | -7.67% | 75,837 | -3.46% | $8.98 | -4.36% |
| Nov-03 | 673,448 | -1.10% | 73,873 | -2.59% | $9.12 | 1.53% |
| Dec-03 | 632,442 | -6.09% | 71,323 | -3.45% | $8.87 | -2.73% |
| Jan-04 | 626,101 | -1.00% | 69,945 | -1.93% | $8.95 | 0.95% |
| Feb-04 | 619,181 | -1.11% | 67,894 | -2.93% | $9.12 | 1.88% |
| Mar-04 | 562,467 | -9.16% | 66,101 | -2.64% | $8.51 | -6.70% |
| Apr-04 | 563,834 | 0.24% | 65,780 | -0.49% | $8.57 | 0.73% |
| May-04 | 525,260 | -6.84% | 64,335 | -2.20% | $8.16 | -4.75% |
| Jun-04 | 518,510 | -1.29% | 63,412 | -1.43% | $8.18 | 0.15% |
| Jul-04 | 504,332 | -2.73% | 62,179 | -1.94% | $8.11 | -0.81% |
| Aug-04 | 517,494 | 2.61% | 61,881 | -0.48% | $8.36 | 3.10% |
| Sep-04 | 489,716 | -5.37% | 60,029 | -2.99% | $8.16 | -2.45% |
| Oct-04 | 463,277 | -5.40% | 58,119 | -3.18% | $7.97 | -2.29% |
| Nov-04 | 451,784 | -2.48% | 56,626 | -2.57% | $7.98 | 0.09% |
| Dec-04 | 439,142 | -2.80% | 55,198 | -2.52% | $7.96 | -0.28% |
| Jan-05 | 373,162 | -15.02% | 46,502 | -15.75% | $8.02 | 0.87% |
| Feb-05 | 353,385 | -5.30% | 44,998 | -3.23% | $7.85 | -2.13% |
| Mar-05 | 319,738 | -9.52% | 43,671 | -2.95% | $7.32 | -6.77% |
| Apr-05 | 339,849 | 6.29% | 44,494 | 1.88% | $7.64 | 4.32% |
| May-05 | 317,043 | -6.71% | 44,614 | 0.27% | $7.11 | -6.96% |
| Jun-05 | 316,010 | -0.33% | 46,320 | 3.82% | $6.82 | -4.00% |

Note:    a. Revenue Per Customer is calculated from Aggregate Revenue and Customer counts as shown in the MCI Revenue/Customer data.

Source:   MCI Revenue/Customer data
Expert Report of Lynton Kotzin

ANALYSIS GROUP, INC.

## Exhibit 4
# In Re WorldCom, Inc.
## Attrition Rate of Revenue Producing Customers

| Month | Customers | Customer Attrition Rate |
|-------|-----------|-------------------------|
| May-03 | 86,619 | N/A |
| Jun-03 | 85,527 | -1.26% |
| Jul-03 | 82,994 | -2.96% |
| Aug-03 | 81,746 | -1.50% |
| Sep-03 | 78,556 | -3.90% |
| Oct-03 | 75,837 | -3.46% |
| Nov-03 | 73,873 | -2.59% |
| Dec-03 | 71,323 | -3.45% |
| Jan-04 | 69,945 | -1.93% |
| Feb-04 | 67,894 | -2.93% |
| Mar-04 | 66,101 | -2.64% |
| Apr-04 | 65,780 | -0.49% |
| May-04 | 64,335 | -2.20% |
| Jun-04 | 63,412 | -1.43% |
| Jul-04 | 62,179 | -1.94% |
| Aug-04 | 61,881 | -0.48% |
| Sep-04 | 60,029 | -2.99% |
| Oct-04 | 58,119 | -3.18% |
| Nov-04 | 56,626 | -2.57% |
| Dec-04 | 55,198 | -2.52% |
| Jan-05 | 46,502 | -15.75% |
| Feb-05 | 44,998 | -3.23% |
| Mar-05 | 43,671 | -2.95% |
| Apr-05 | 44,494 | 1.88% |
| May-05 | 44,614 | 0.27% |
| Jun-05 | 46,320 | 3.82% |
| **Compound Monthly Attrition Rate** | | **-2.47%** |

Source:    MCI Revenue/Customer data

## Exhibit 5A
## In Re WorldCom, Inc.
## Comparison of Kotzin Projected Revenues v. Actual Revenues
## Kotzin Scenario 2

| Month | Kotzin Projected Revenues [a] | Actual Revenues | % Overstated |
|-------|-------------------------------|-----------------|--------------|
| Jan-05 | 435,820 | 373,162 | 16.79% |
| Feb-05 | 432,524 | 353,385 | 22.39% |
| Mar-05 | 429,253 | 319,738 | 34.25% |
| Apr-05 | 426,006 | 339,849 | 25.35% |
| May-05 | 422,784 | 317,043 | 33.35% |
| Jun-05 | 419,586 | 316,010 | 32.78% |
| **Total** | **2,565,974** | **2,019,187** | **27.08%** |

Note:    a. Kotzin assumes a 0.76% decline in monthly revenues beginning on January 2005 based on the purported compounded monthly change in customers from July 2002 - April 2003.

Source:    MCI Revenue/Customer data
          Expert Report of Lynton Kotzin

**Exhibit 5B**
# In Re WorldCom, Inc.
## Comparison of Kotzin Projected Revenues v. Actual Revenues
## Kotzin Scenario 1

| Month | Kotzin Projected Revenues [a] | Actual Revenues | % Overstated |
|-------|------------------------------|-----------------|--------------|
| Jan-05 | 420,355 | 373,162 | 12.65% |
| Feb-05 | 402,372 | 353,385 | 13.86% |
| Mar-05 | 385,158 | 319,738 | 20.46% |
| Apr-05 | 368,681 | 339,849 | 8.48% |
| May-05 | 352,908 | 317,043 | 11.31% |
| Jun-05 | 337,811 | 316,010 | 6.90% |
| **Total** | **2,267,285** | **2,019,187** | **12.29%** |

Note:      a. Kotzin assumes a 4.28% decline in monthly revenues beginning on January 2005 based on the compounded monthly change in revenues from August 2002 - December 2004.

Source:    MCI Revenue/Customer data
Expert Report of Lynton Kotzin

ANALYSIS GROUP, INC.

**Exhibit 6**
# In Re WorldCom, Inc.
## Reduction in Kotzin Post-Petition Projected Commissions

*Reduction in Kotzin Post-Petition Projected Commissions based on:*

| | |
|---|---|
| Using Actual Revenues [a] | $106,441 |
| Using MCI WACC [b] | 23,702 |
| Correcting Timing of Cash Flows [c] | 2,916 |

Notes:    a. Revenue projections begin at July 2005 instead of January 2005. Actual revenues are used from January 2005 - June 2005. Otherwise, Kotzin's methodology remains unchanged. See Exhibit 6A.

b. MCI's WACC of 7.05% as reported by Bloomberg on October 4, 2005 was used as a discount rate. Otherwise, Kotzin's methodology remains unchanged. See Exhibit 6B.

c. MCI has 45 days from the end of the month to pay HSG. A discount factor has been applied by adding 45 days to the end of the month. Kotzin adds 45 days to the beginning of the month rather than the end of the month. See Exhibit 6C.

Sources:    MCI Revenue/Commission data
Expert Report of Lynton Kotzin
Bloomberg Financial Services

**Exhibit 6A**
**In Re WorldCom, Inc.**
**Post-Petition Projected Commissions: Projections Beginning July 2005** [a]

| Month | Revenues | Commission | Period Discounted | Present Value Factor | Present Value of Cash Flows |
|---|---|---|---|---|---|
| Jan-05 | 373,161.84 | 56,876.61 | - | 1.0000 | 56,876.61 |
| Feb-05 | 353,384.84 | 53,862.24 | - | 1.0000 | 53,862.24 |
| Mar-05 | 319,738.44 | 48,733.92 | - | 1.0000 | 48,733.92 |
| Apr-05 | 339,849.20 | 51,799.16 | - | 1.0000 | 51,799.16 |
| May-05 | 317,042.87 | 48,323.06 | - | 1.0000 | 48,323.06 |
| Jun-05 | 316,009.88 | 48,165.62 | - | 1.0000 | 48,165.62 |
| Jul-05 | 302,490.76 | 46,105.06 | - | 1.0000 | 46,105.06 |
| Aug-05 | 289,550.00 | 44,132.65 | - | 1.0000 | 44,132.65 |
| Sep-05 | 277,162.85 | 42,244.63 | - | 1.0000 | 42,244.63 |
| Oct-05 | 265,305.64 | 40,437.37 | - | 1.0000 | 40,437.37 |
| Nov-05 | 253,955.68 | 38,707.43 | - | 1.0000 | 38,707.43 |
| Dec-05 | 243,091.28 | 37,051.50 | - | 1.0000 | 37,051.50 |
| Jan-06 | 232,691.67 | 35,466.42 | - | 1.0000 | 35,466.42 |
| Feb-06 | 222,736.96 | 33,949.14 | 0.1250 | 0.9945 | 33,761.24 |
| Mar-06 | 213,208.12 | 32,496.77 | 0.2083 | 0.9908 | 32,197.56 |
| Apr-06 | 204,086.93 | 31,106.54 | 0.2917 | 0.9871 | 30,706.31 |
| May-06 | 195,355.95 | 29,775.78 | 0.3750 | 0.9835 | 29,284.12 |
| Jun-06 | 186,998.49 | 28,501.95 | 0.4583 | 0.9799 | 27,927.80 |
| Jul-06 | 178,998.57 | 27,282.62 | 0.5417 | 0.9762 | 26,634.30 |
| Aug-06 | 171,340.89 | 26,115.45 | 0.6250 | 0.9726 | 25,400.71 |
| Sep-06 | 164,010.81 | 24,998.21 | 0.7083 | 0.9690 | 24,224.26 |
| Oct-06 | 156,994.31 | 23,928.77 | 0.7917 | 0.9655 | 23,102.29 |
| Nov-06 | 150,277.99 | 22,905.08 | 0.8750 | 0.9619 | 22,032.29 |
| Dec-06 | 143,848.99 | 21,925.19 | 0.9583 | 0.9583 | 21,011.85 |
| Jan-09 | 48,216.22 | 7,349.02 | 3.0417 | 0.8737 | 6,420.65 |
| Feb-09 | 46,153.50 | 7,034.63 | 3.1250 | 0.8704 | 6,123.27 |
| Mar-09 | 44,179.02 | 6,733.68 | 3.2083 | 0.8672 | 5,839.66 |
| Apr-09 | 42,289.01 | 6,445.61 | 3.2917 | 0.8640 | 5,569.20 |
| May-09 | 40,479.86 | 6,169.86 | 3.3750 | 0.8608 | 5,311.25 |
| Jun-09 | 38,748.10 | 5,905.91 | 3.4583 | 0.8577 | 5,065.26 |
| Jul-09 | 37,090.43 | 5,653.25 | 3.5417 | 0.8545 | 4,830.66 |
| Aug-09 | 35,503.68 | 5,411.40 | 3.6250 | 0.8513 | 4,606.92 |
| Sep-09 | 33,984.81 | 5,179.90 | 3.7083 | 0.8482 | 4,393.55 |
| Oct-09 | 32,530.91 | 4,958.30 | 3.7917 | 0.8451 | 4,190.06 |
| Nov-09 | 31,139.22 | 4,746.18 | 3.8750 | 0.8419 | 3,995.99 |
| Dec-09 | 29,807.06 | 4,543.13 | 3.9583 | 0.8388 | 3,810.91 |
| Jan-10 | 28,531.90 | 4,348.78 | 4.0417 | 0.8357 | 3,634.41 |
| Feb-10 | 27,311.28 | 4,162.73 | 4.1250 | 0.8326 | 3,466.08 |
| Mar-10 | 26,142.89 | 3,984.65 | 4.2083 | 0.8296 | 3,305.54 |
| Apr-10 | 25,024.48 | 3,814.18 | 4.2917 | 0.8265 | 3,152.44 |
| | | Present Value of Post-Petition Projected Commissions | | | 1,255,929.49 |
| | | Present Value of Post-Petition Projected Commissions Per Kotzin Report | | | 1,362,370.37 |
| | | | | Difference | 106,440.88 |

Note:     a. Revenue projections begin at July 2005 instead of January 2005. Actual revenues are used from January 2005 - June 2005.
Otherwise, Kotzin's methodology remains unchanged.

Sources:     MCI Revenue/Commission data
Expert Report of Lynton Kotzin

Exhibit 6B

In Re WorldCom, Inc.

Post-Petition Projected Commissions: Revised Discount Rate[a]

| Month | Revenues | Commission | Period Discounted | Present Value Factor | Present Value of Cash Flows |
|---|---|---|---|---|---|
| Jan-05 | 420,355.04 | 64,069.70 | - | 1.0000 | 64,069.70 |
| Feb-05 | 402,371.97 | 61,328.76 | - | 1.0000 | 61,328.76 |
| Mar-05 | 385,158.22 | 58,705.07 | - | 1.0000 | 58,705.07 |
| Apr-05 | 368,680.89 | 56,193.63 | - | 1.0000 | 56,193.63 |
| May-05 | 352,908.47 | 53,789.63 | - | 1.0000 | 53,789.63 |
| Jun-05 | 337,810.80 | 51,488.47 | - | 1.0000 | 51,488.47 |
| Jul-05 | 323,359.02 | 49,285.76 | - | 1.0000 | 49,285.76 |
| Aug-05 | 309,525.50 | 47,177.28 | - | 1.0000 | 47,177.28 |
| Sep-05 | 296,283.79 | 45,159.00 | - | 1.0000 | 45,159.00 |
| Oct-05 | 283,608.57 | 43,227.07 | - | 1.0000 | 43,227.07 |
| Nov-05 | 271,475.60 | 41,377.79 | - | 1.0000 | 41,377.79 |
| Dec-05 | 259,861.69 | 39,607.62 | - | 1.0000 | 39,607.62 |
| Jan-06 | 248,744.63 | 37,913.18 | - | 1.0000 | 37,913.18 |
| Feb-06 | 238,103.16 | 36,291.22 | 0.1250 | 0.9915 | 35,983.49 |
| Mar-06 | 227,916.94 | 34,738.66 | 0.2083 | 0.9859 | 34,249.10 |
| Apr-06 | 218,166.50 | 33,252.52 | 0.2917 | 0.9803 | 32,598.31 |
| May-06 | 208,833.19 | 31,829.95 | 0.3750 | 0.9748 | 31,027.08 |
| Jun-06 | 199,899.16 | 30,468.24 | 0.4583 | 0.9693 | 29,531.59 |
| Jul-06 | 191,347.34 | 29,164.79 | 0.5417 | 0.9638 | 28,108.18 |
| Aug-06 | 183,161.37 | 27,917.10 | 0.6250 | 0.9583 | 26,753.38 |
| Sep-06 | 175,325.60 | 26,722.79 | 0.7083 | 0.9529 | 25,463.88 |
| Oct-06 | 167,825.05 | 25,579.57 | 0.7917 | 0.9475 | 24,236.53 |
| Nov-06 | 160,645.38 | 24,485.26 | 0.8750 | 0.9421 | 23,068.34 |
| Dec-06 | 153,772.86 | 23,437.76 | 0.9583 | 0.9368 | 21,956.46 |
| Jan-09 | 51,542.57 | 7,856.02 | 3.0417 | 0.8128 | 6,385.72 |
| Feb-09 | 49,337.54 | 7,519.93 | 3.1250 | 0.8082 | 6,077.93 |
| Mar-09 | 47,226.85 | 7,198.22 | 3.2083 | 0.8037 | 5,784.98 |
| Apr-09 | 45,206.45 | 6,890.28 | 3.2917 | 0.7991 | 5,506.14 |
| May-09 | 43,272.49 | 6,595.51 | 3.3750 | 0.7946 | 5,240.75 |
| Jun-09 | 41,421.26 | 6,313.35 | 3.4583 | 0.7901 | 4,988.15 |
| Jul-09 | 39,649.23 | 6,043.26 | 3.5417 | 0.7856 | 4,747.72 |
| Aug-09 | 37,953.01 | 5,784.72 | 3.6250 | 0.7812 | 4,518.88 |
| Sep-09 | 36,329.35 | 5,537.25 | 3.7083 | 0.7768 | 4,301.07 |
| Oct-09 | 34,775.16 | 5,300.36 | 3.7917 | 0.7724 | 4,093.76 |
| Nov-09 | 33,287.45 | 5,073.61 | 3.8750 | 0.7680 | 3,896.45 |
| Dec-09 | 31,863.39 | 4,856.56 | 3.9583 | 0.7636 | 3,708.64 |
| Jan-10 | 30,500.26 | 4,648.79 | 4.0417 | 0.7593 | 3,529.88 |
| Feb-10 | 29,195.43 | 4,449.91 | 4.1250 | 0.7550 | 3,359.75 |
| Mar-10 | 27,946.43 | 4,259.54 | 4.2083 | 0.7507 | 3,197.81 |
| Apr-10 | 26,750.87 | 4,077.32 | 4.2917 | 0.7465 | 3,043.67 |
| May-10 | 25,606.45 | 3,902.89 | 4.3750 | 0.7423 | 2,896.97 |
| | | Present Value of Post-Petition Projected Commissions | | | 1,338,668.39 |
| | | Present Value of Post-Petition Projected Commissions Per Kotzin Report | | | 1,362,370.37 |
| | | | | Difference | 23,701.98 |

Note:    a. MCI's WACC of 7.05% as reported by Bloomberg on October 4, 2005 was used as a discount rate. Otherwise, Kotzin's methodology remains unchanged.

Sources:    MCI Revenue/Commission data
Expert Report of Lynton Kotzin
Bloomberg Financial Services

ANALYSIS GROUP, INC.

**Exhibit 6C**
**In Re WorldCom, Inc.**
**Post-Petition Projected Commissions: Corrected Timing of Cash Flows** [a]

| Month | Revenues | Commission | Period Discounted | Present Value Factor | Present Value of Cash Flows |
|-------|----------|------------|-------------------|---------------------|-----------------------------|
| Jan-05 | 420,355.04 | 64,069.70 | - | 1.0000 | 64,069.70 |
| Feb-05 | 402,371.97 | 61,328.76 | - | 1.0000 | 61,328.76 |
| Mar-05 | 385,158.22 | 58,705.07 | - | 1.0000 | 58,705.07 |
| Apr-05 | 368,680.89 | 56,193.63 | - | 1.0000 | 56,193.63 |
| May-05 | 352,908.47 | 53,789.63 | - | 1.0000 | 53,789.63 |
| Jun-05 | 337,810.80 | 51,488.47 | - | 1.0000 | 51,488.47 |
| Jul-05 | 323,359.02 | 49,285.76 | - | 1.0000 | 49,285.76 |
| Aug-05 | 309,525.50 | 47,177.28 | - | 1.0000 | 47,177.28 |
| Sep-05 | 296,283.79 | 45,159.00 | - | 1.0000 | 45,159.00 |
| Oct-05 | 283,608.57 | 43,227.07 | - | 1.0000 | 43,227.07 |
| Nov-05 | 271,475.60 | 41,377.79 | - | 1.0000 | 41,377.79 |
| Dec-05 | 259,861.69 | 39,607.62 | 0.0417 | 0.9982 | 39,534.41 |
| Jan-06 | 248,744.63 | 37,913.18 | 0.1250 | 0.9945 | 37,703.34 |
| Feb-06 | 238,103.16 | 36,291.22 | 0.2083 | 0.9908 | 35,957.08 |
| Mar-06 | 227,916.94 | 34,738.66 | 0.2917 | 0.9871 | 34,291.70 |
| Apr-06 | 218,166.50 | 33,252.52 | 0.3750 | 0.9835 | 32,703.45 |
| May-06 | 208,833.19 | 31,829.95 | 0.4583 | 0.9799 | 31,188.76 |
| Jun-06 | 199,899.16 | 30,468.24 | 0.5417 | 0.9762 | 29,744.23 |
| Jul-06 | 191,347.34 | 29,164.79 | 0.6250 | 0.9726 | 28,366.60 |
| Aug-06 | 183,161.37 | 27,917.10 | 0.7083 | 0.9690 | 27,052.78 |
| Sep-06 | 175,325.60 | 26,722.79 | 0.7917 | 0.9655 | 25,799.81 |
| Oct-06 | 167,825.05 | 25,579.57 | 0.8750 | 0.9619 | 24,604.87 |
| Nov-06 | 160,645.38 | 24,485.26 | 0.9583 | 0.9583 | 23,465.27 |
| Dec-06 | 153,772.86 | 23,437.76 | 1.0417 | 0.9548 | 22,378.46 |
| Jan-09 | 51,542.57 | 7,856.02 | 3.1250 | 0.8704 | 6,838.25 |
| Feb-09 | 49,337.54 | 7,519.93 | 3.2083 | 0.8672 | 6,521.53 |
| Mar-09 | 47,226.85 | 7,198.22 | 3.2917 | 0.8640 | 6,219.48 |
| Apr-09 | 45,206.45 | 6,890.28 | 3.3750 | 0.8608 | 5,931.42 |
| May-09 | 43,272.49 | 6,595.51 | 3.4583 | 0.8577 | 5,656.70 |
| Jun-09 | 41,421.26 | 6,313.35 | 3.5417 | 0.8545 | 5,394.70 |
| Jul-09 | 39,649.23 | 6,043.26 | 3.6250 | 0.8513 | 5,144.84 |
| Aug-09 | 37,953.01 | 5,784.72 | 3.7083 | 0.8482 | 4,906.56 |
| Sep-09 | 36,329.35 | 5,537.25 | 3.7917 | 0.8451 | 4,679.30 |
| Oct-09 | 34,775.16 | 5,300.36 | 3.8750 | 0.8419 | 4,462.58 |
| Nov-09 | 33,287.45 | 5,073.61 | 3.9583 | 0.8388 | 4,255.89 |
| Dec-09 | 31,863.39 | 4,856.56 | 4.0417 | 0.8357 | 4,058.78 |
| Jan-10 | 30,500.26 | 4,648.79 | 4.1250 | 0.8326 | 3,870.79 |
| Feb-10 | 29,195.43 | 4,449.91 | 4.2083 | 0.8296 | 3,691.51 |
| Mar-10 | 27,946.43 | 4,259.54 | 4.2917 | 0.8265 | 3,520.54 |
| Apr-10 | 26,750.87 | 4,077.32 | 4.3750 | 0.8235 | 3,357.48 |
| May-10 | 25,606.45 | 3,902.89 | 4.4583 | 0.8204 | 3,201.98 |

| | |
|---|---|
| Present Value of Post-Petition Projected Commissions | 1,359,453.95 |
| Present Value of Post-Petition Projected Commissions Per Kotzin Report | 1,362,370.37 |
| Difference | 2,916.42 |

Note:    a. MCI has 45 days from the end of the month to pay HSG. A discount factor has been applied by adding 45 days to the end of the month. Kotzin appears to be adding 45 days to the beginning of the month rather than the end of the month.

Sources:    MCI Revenue/Commission data
Expert Report of Lynton Kotzin

Exhibit 7
## In Re WorldCom, Inc.
## Effect of Subtracting Inadvertent Payments from
## Pre-Reorganization Plan Claim

| | Offset Inadvertent Commission Payments | | |
| | Against Gross Commissions (Kotzin Methodology) | Against Reorganization Plan Cash Claim | Difference |
|---|---|---|---|
| Pre-Reorganization Plan Gross Claim | $5,584,982 | $5,584,982 | |
| Cash Paid by MCI to HSG [a] | 435,211 | 0 | |
| Pre-Reorganization Plan Net Claim [b] | 5,149,771 | 5,584,982 | |
| Gross Cash Claim Per Reorganization Plan [c] | 919,234 | 996,919 | |
| Cash Paid by MCI to HSG [d] | 0 | 435,211 | |
| Net Cash Claim | $919,234 | $561,708 | $357,526 |

Notes:     a. Inadvertent commission payments were made for July, August, and September 2002 in the amount of $435,211.
           b. Kotzin subtracts inadvertent commission payments prior to calculating Pre-Reorganization Plan Gross Cash Claims.
           c. Class 6 claimants receive 17.85% of the claim in cash.
           d. Kotzin should subtract inadvertent commission payments after calculating Pre-Reorganization Plan Gross Cash Claims.

Sources:   MCI Revenue/Commission data
           Expert Report of Lynton Kotzin
           MCI/Worldcom Debtors Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code

ANALYSIS GROUP, INC.

**Exhibit 8**
# In Re WorldCom, Inc.
## HSG/ATN, Inc. Claim Per Reorganization Plan

| | |
|---|---:|
| Pre-Petition Unpaid Commissions Due | $675,710 |
| Post-Petition Commissions Due | 3,850,853 |
| Post-Petition Projected Commissions Due [a] | 883,825 |
| Gross Commissions Due Per Reorganization Plan | 5,410,388 |
| | |
| Gross Cash Claim [b] | 965,754 |
| | |
| July 2002 Post-Petition Commissions Paid | (28,345) |
| August 2002 Post-Petition Commissions Paid | (185,659) |
| September 2002 Post-Petition Commissions Paid | (221,207) |
| Post-Petition Commissions Paid | (435,211) |
| | |
| **Net Cash Claim Per Reorganization Plan** | **$530,543** |
| | |
| **Shares of MCI [c]** | **38,630** |

Notes:   a. Assumes a 4.47% decline in monthly revenue beginning on July 2005 using the compounded monthly change in revenues from August 2002 - June 2005 (see **Exhibit 9**). In addition to the actual commissionable revenue that Kotzin used, actual MCI commissionable revenue for October 2003 and January 2005 through June 2005 is used. The commission rate of 15.24% from Kotzin Exhibit 5 is used to estimate commissions beginning May 2003. The timing between revenue generation and commission payment to HSG properly reflects the 45 day payment period. Future cash flows to HSG have been discounted using MCI's WACC of 7.05% as reported by Bloomberg on October 4, 2005.
   b. Class 6 claimants receive 17.85% of the claim in cash.
   c. Class 6 claimants receive 7.14 shares of MCI for each $1,000 of the claim.

Sources:   MCI Revenue/Commission data
   MCI/WorldCom Debtors Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code
   Bloomberg Financial Services

ANALYSIS GROUP, INC.

**Exhibit 8A**
**In Re WorldCom, Inc.**
**Detailed HSG/ATN, Inc. Gross Commissions Due**

| Month | Revenues | Commission | Period Discounted | Present Value Factor | Present Value of Cash Flows |
|---|---|---|---|---|---|
| **Pre-Petition Commissions** | | | | | |
| May-02 | 1,593,695.86 | 255,968.05 | - | 1.0000 | 255,968.05 |
| Jun-02 | 1,506,475.34 | 240,580.01 | - | 1.0000 | 240,580.01 |
| Jul-02 | 1,172,020.13 | 179,162.36 | - | 1.0000 | 179,162.36 |
| Pre-petition | | | | | |
| | | | Total Pre-Petition Commissions | | 675,710.42 |
| | | | | | |
| **Post-Petition Commissions** | | | | | |
| Jul-02 | 171,351.82 | 28,345.19 | - | 1.0000 | 28,345.19 |
| Post-petition | | | | | |
| Aug-02 | 1,493,771.27 | 235,807.53 | - | 1.0000 | 235,807.53 |
| Sep-02 | 1,410,493.56 | 221,207.24 | - | 1.0000 | 221,207.24 |
| Oct-02 | 1,331,641.46 | 209,368.25 | - | 1.0000 | 209,368.25 |
| Nov-02 | 1,330,211.40 | 209,131.29 | - | 1.0000 | 209,131.29 |
| Dec-02 | 1,187,955.54 | 185,882.99 | - | 1.0000 | 185,882.99 |
| Jan-03 | 1,061,493.56 | 165,560.25 | - | 1.0000 | 165,560.25 |
| Feb-03 | 1,028,490.60 | 159,420.52 | - | 1.0000 | 159,420.52 |
| Mar-03 | 880,357.15 | 134,278.19 | - | 1.0000 | 134,278.19 |
| Apr-03 | 888,075.48 | 135,358.75 | - | 1.0000 | 135,358.75 |
| May-03 | 826,096.98 | 125,912.11 | - | 1.0000 | 125,912.11 |
| Jun-03 | 811,276.38 | 123,653.18 | - | 1.0000 | 123,653.18 |
| Jul-03 | 766,932.30 | 116,894.34 | - | 1.0000 | 116,894.34 |
| Aug-03 | 785,266.52 | 119,688.81 | - | 1.0000 | 119,688.81 |
| Sep-03 | 737,468.92 | 112,403.59 | - | 1.0000 | 112,403.59 |
| Oct-03 | 680,928.75 | 103,785.85 | - | 1.0000 | 103,785.85 |
| Nov-03 | 673,447.69 | 102,645.60 | - | 1.0000 | 102,645.60 |
| Dec-03 | 632,442.03 | 96,395.59 | - | 1.0000 | 96,395.59 |
| Jan-04 | 626,101.08 | 95,429.12 | - | 1.0000 | 95,429.12 |
| Feb-04 | 619,180.76 | 94,374.34 | - | 1.0000 | 94,374.34 |
| Mar-04 | 562,466.70 | 85,730.09 | - | 1.0000 | 85,730.09 |
| Apr-04 | 563,834.35 | 85,938.54 | - | 1.0000 | 85,938.54 |
| May-04 | 525,260.45 | 80,059.18 | - | 1.0000 | 80,059.18 |
| Jun-04 | 518,510.44 | 79,030.36 | - | 1.0000 | 79,030.36 |
| Jul-04 | 504,331.70 | 76,869.26 | - | 1.0000 | 76,869.26 |
| Aug-04 | 517,494.24 | 78,875.47 | - | 1.0000 | 78,875.47 |
| Sep-04 | 489,716.17 | 74,641.59 | - | 1.0000 | 74,641.59 |
| Oct-04 | 463,276.83 | 70,611.76 | - | 1.0000 | 70,611.76 |
| Nov-04 | 451,784.09 | 68,860.06 | - | 1.0000 | 68,860.06 |
| Dec-04 | 439,141.83 | 66,933.15 | - | 1.0000 | 66,933.15 |
| Jan-05 | 373,161.84 | 56,876.61 | - | 1.0000 | 56,876.61 |
| Feb-05 | 353,384.84 | 53,862.24 | - | 1.0000 | 53,862.24 |
| Mar-05 | 319,738.44 | 48,733.92 | - | 1.0000 | 48,733.92 |
| Apr-05 | 339,849.20 | 51,799.16 | - | 1.0000 | 51,799.16 |
| May-05 | 317,042.87 | 48,323.06 | - | 1.0000 | 48,323.06 |
| Jun-05 | 316,009.88 | 48,165.62 | - | 1.0000 | 48,165.62 |
| | | | Total Post-Petition Commissions | | 3,850,852.78 |

ANALYSIS GROUP, INC.

| Month | Revenues | Commission | Period Discounted | Present Value Factor | Present Value of Cash Flows |
|---|---|---|---|---|---|
| **Post-Petition Projected Commissions** | | | | | |
| Jul-05 | 301,897.82 | 46,014.68 | - | 1.0000 | 46,014.68 |
| Aug-05 | 288,415.96 | 43,959.80 | - | 1.0000 | 43,959.80 |
| Sep-05 | 275,536.15 | 41,996.69 | - | 1.0000 | 41,996.69 |
| Oct-05 | 263,231.53 | 40,121.24 | - | 1.0000 | 40,121.24 |
| Nov-05 | 251,476.39 | 38,329.55 | - | 1.0000 | 38,329.55 |
| Dec-05 | 240,246.20 | 36,617.86 | 0.0417 | 0.9972 | 36,514.07 |
| Jan-06 | 229,517.52 | 34,982.62 | 0.1250 | 0.9915 | 34,685.98 |
| Feb-06 | 219,267.94 | 33,420.40 | 0.2083 | 0.9859 | 32,949.42 |
| Mar-06 | 209,476.09 | 31,927.94 | 0.2917 | 0.9803 | 31,299.79 |
| Apr-06 | 200,121.51 | 30,502.13 | 0.3750 | 0.9748 | 29,732.76 |
| May-06 | 191,184.67 | 29,140.00 | 0.4583 | 0.9693 | 28,244.18 |
| Jun-06 | 182,646.93 | 27,838.69 | 0.5417 | 0.9638 | 26,830.13 |
| Jul-06 | 174,490.46 | 26,595.50 | 0.6250 | 0.9583 | 25,486.87 |
| Aug-06 | 166,698.24 | 25,407.82 | 0.7083 | 0.9529 | 24,210.86 |
| Sep-06 | 159,253.99 | 24,273.19 | 0.7917 | 0.9475 | 22,998.74 |
| Oct-06 | 152,142.18 | 23,189.22 | 0.8750 | 0.9421 | 21,847.30 |
| Nov-06 | 145,347.96 | 22,153.66 | 0.9583 | 0.9368 | 20,753.51 |
| Dec-06 | 138,857.15 | 21,164.34 | 1.0417 | 0.9315 | 19,714.48 |
| Jan-09 | 44,315.03 | 6,754.41 | 3.1250 | 0.8082 | 5,459.20 |
| Feb-09 | 42,336.05 | 6,452.78 | 3.2083 | 0.8037 | 5,185.88 |
| Mar-09 | 40,445.45 | 6,164.62 | 3.2917 | 0.7991 | 4,926.25 |
| Apr-09 | 38,639.27 | 5,889.32 | 3.3750 | 0.7946 | 4,679.62 |
| May-09 | 36,913.76 | 5,626.32 | 3.4583 | 0.7901 | 4,445.33 |
| Jun-09 | 35,265.30 | 5,375.07 | 3.5417 | 0.7856 | 4,222.77 |
| Jul-09 | 33,690.46 | 5,135.03 | 3.6250 | 0.7812 | 4,011.36 |
| Aug-09 | 32,185.94 | 4,905.72 | 3.7083 | 0.7768 | 3,810.53 |
| Sep-09 | 30,748.61 | 4,686.64 | 3.7917 | 0.7724 | 3,619.75 |
| Oct-09 | 29,375.47 | 4,477.35 | 3.8750 | 0.7680 | 3,438.53 |
| Nov-09 | 28,063.65 | 4,277.41 | 3.9583 | 0.7636 | 3,266.38 |
| Dec-09 | 26,810.41 | 4,086.39 | 4.0417 | 0.7593 | 3,102.85 |
| Jan-10 | 25,613.14 | 3,903.90 | 4.1250 | 0.7550 | 2,947.50 |
| | | | Total Post-Petition Projected Commissions | | 883,825.20 |
| | | | **Present Value of Total Commissions** | | **5,410,388.40** |

Note:  a.  Assumes a 4.47% decline in monthly revenue beginning on July 2005 using the compounded monthly change in revenues from August 2002 - June 2005 (see Exhibit 9). In addition to the actual commissionable revenue that Kotzin used, actual MCI commissionable revenue for October 2003 and January 2005 through June 2005 is used. The commission rate of 15.24% from Kotzin Exhibit 5 is used to estimate commissions beginning May 2003. The timing between revenue generation and commission payment to HSG properly reflects the 45 day payment period. Future cash flows to HSG have been discounted using MCI's WACC of 7.05% as reported by Bloomberg on October 4, 2005.

Sources:  MCI Revenue/Commission data
Bloomberg Financial Services

ANALYSIS GROUP, INC.

**Exhibit 9**
# In Re WorldCom, Inc.
## Revenue Attrition Rate

| Month | Revenue | Revenue % Change |
|-------|---------|------------------|
| Aug-02 | 1,493,771 | N/A |
| Sep-02 | 1,410,494 | -5.57% |
| Oct-02 | 1,331,641 | -5.59% |
| Nov-02 | 1,330,211 | -0.11% |
| Dec-02 | 1,187,956 | -10.69% |
| Jan-03 | 1,061,494 | -10.65% |
| Feb-03 | 1,028,491 | -3.11% |
| Mar-03 | 880,357 | -14.40% |
| Apr-03 | 888,075 | 0.88% |
| May-03 | 826,097 | -6.98% |
| Jun-03 | 811,276 | -1.79% |
| Jul-03 | 766,932 | -5.47% |
| Aug-03 | 785,267 | 2.39% |
| Sep-03 | 737,469 | -6.09% |
| Oct-03 | 680,929 | -7.67% |
| Nov-03 | 673,448 | -1.10% |
| Dec-03 | 632,442 | -6.09% |
| Jan-04 | 626,101 | -1.00% |
| Feb-04 | 619,181 | -1.11% |
| Mar-04 | 562,467 | -9.16% |
| Apr-04 | 563,834 | 0.24% |
| May-04 | 525,260 | -6.84% |
| Jun-04 | 518,510 | -1.29% |
| Jul-04 | 504,332 | -2.73% |
| Aug-04 | 517,494 | 2.61% |
| Sep-04 | 489,716 | -5.37% |
| Oct-04 | 463,277 | -5.40% |
| Nov-04 | 451,784 | -2.48% |
| Dec-04 | 439,142 | -2.80% |
| Jan-05 | 373,162 | -15.02% |
| Feb-05 | 353,385 | -5.30% |
| Mar-05 | 319,738 | -9.52% |
| Apr-05 | 339,849 | 6.29% |
| May-05 | 317,043 | -6.71% |
| Jun-05 | 316,010 | -0.33% |
| **Compound Monthly Change** | | -4.47% |

Sources:    MCI Revenue/Commission data

ANALYSIS GROUP, INC.