**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | 07 Civ. 3271 (RMB) |
| WORLDCOM, INC., et al., | : | |
| | : | <u>ECF Case</u> |
| Reorganized Debtors. | : | |
| | : | |

-------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| HSG/ATN, INC., | : | |
| | : | Chapter 11 |
| Appellant, | : | Case No. 02-13533 (AJG) |
| | : | (Jointly Administered) |
| v. | : | |
| | : | |
| MCI WORLDCOM | : | Adv. Proc. No. 05-3143 |
| COMMUNICATIONS, INC., and | : | |
| WORLDCOM, INC. | : | |
| | : | |
| Appellees. | : | |
| | : | |

-------------------------------------------------------x

<br>

## <u>BRIEF OF APPELLEES MCI COMMUNICATIONS CORPORATION AND VERIZON BUSINESS GLOBAL, LLC</u>

<br>

Stinson Morrison Hecker LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036

Attorneys for Appellees

2

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF THE CASE ...........................................................................................2

I.      THE REPRESENTATION AGREEMENT. ...........................................................2

II.     TERMINATION OF THE REPRESENTATION AGREEMENT AND HSG'S
        SOLICITATIONS. ..................................................................................................4

III.    BANKRUPTCY COURT PROCEEDINGS. ..........................................................5

ARGUMENT ......................................................................................................................7

I.      THE BANKRUPTCY COURT DID NOT ERR BY FINDING THAT
        WORLDCOM'S OBLIGATION TO PAY RESIDUAL COMMISSIONS TO
        HSG TERMINATED IN NOVEMBER 2002...........................................................7

        A.      Standard of Review..........................................................................................7

        B.      The Bankruptcy Court did not err by finding that there was no genuine
                issue of material fact. .......................................................................................8

        C.      The Bankruptcy Court did not err in finding that WorldCom's obligation to
                pay residual commissions terminated in November 2002 as a matter of
                law......................................................................................................................11

II.     THE COURT DID NOT ERR IN FINDING THAT WORLDCOM WAS NOT
        JUDICIALLY ESTOPPED FROM ARGUING THAT THE NOVEMBER 2002
        LETTER TERMINATED ITS RESIDUAL COMMISSION OBLIGATION.................13

III.    THE BANKRUPTCY COURT DID NOT ERR BY DENYING HSG'S
        REQUEST TO ALLOW DISCOVERY TO PROCEED PURSUANT TO FED. R.
        CIV. P. 56(f). ..................................................................................................14

CONCLUSION ..................................................................................................................16

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)................................................................7

<u>CFJ Assoc. of New York, Inc. v. Hanson Indust.</u>, 260 A.D.2d 917 (N.Y. App. Div. 1999)........12

<u>Cherry v. Anthony, Gibbs, Sage</u>, 501 So.2d 416 (Miss. 1987)....................................................11

<u>D'Amico v. The City of New York</u>, 132 F.3d 145 (2d Cir. 1998) .................................................7

<u>First Mississippi Bank of Commerce v. Latch</u>, 433 So. 2d 946 (Miss. 1983) ............................12

<u>Gurary v. Winehouse</u>, 190 F.3d 37 (2d Cir. 1999).....................................................................15

<u>In re WorldCom</u>, 308 B.R. 157 (Bankr. S.D.N.Y. 2004)............................................................14

<u>Lamb Constr. Co. v. Town of Renova</u>, 573 So.2d  1378 (Miss. 1990) .......................................11

<u>New Hampshire v. Maine</u>, 532 U.S. 742 (2001) ........................................................................13

<u>Wight v. Bank of America Corp.</u>, 219 F.3d 79 (2d Cir. 2000) ...................................................13

<u>Williams v. R.H. Donnelley Corp.</u>, 368 F.3d 123 (2d Cir. 2004) ...............................................15

**Statutes**

11 U.S.C. § 365 ..........................................................................................................................10

11 U.S.C. § 503(b)(1)(A) ..............................................................................................................6

11 U.S.C. § 507(a)(1)....................................................................................................................6

DB02/048629.0094_3782/7570661.1

**Rules**

Fed. R. Civ. P. 56...................................................................................................7

Fed. R. Civ. P. 56(f)............................................................................................14

Fed. R. Bankr. P. 7056........................................................................................7

Fed. R. Bankr. P. 9014........................................................................................7

iii

Appellees MCI Communications Corporation f/k/a MCI WorldCom Communications, Inc. and Verizon Business Global LLC (successor by merger of MCI, Inc. f/k/a WorldCom, Inc.) (referred to herein together as "WorldCom")[1] submit this brief in response to Appellant HSG/ATN, Inc's Brief in Support of Appeal ("Appellant Brief").

## PRELIMINARY STATEMENT

In 1998, HSG and WorldCom entered into a Representation Agreement ("Agreement"), which required HSG to solicit calling card customers for WorldCom and, in turn, obligated WorldCom to pay HSG commissions attributable to ongoing customer billings for those customers that HSG procured for WorldCom.  Pursuant to their Agreement, HSG was entitled to residual commissions from those accounts, even upon termination of their Agreement, for so long as certain conditions were satisfied.  The condition most relevant to this matter was the continuing condition that HSG not solicit those WorldCom customers that it procured on behalf of WorldCom to switch to another service provider.

Despite the Agreement's non-solicitation obligations, HSG solicited WorldCom customers to switch to another service provider.  In accordance with the Agreement's terms, WorldCom notified HSG of its breach of its non-solicitation obligations.  When HSG failed to

---

[1] On January 6, 2006, MCI, Inc., and its subsidiaries and affiliates merged into and with Eli Acquisition, Inc., a wholly-owned subsidiary of Verizon Communications, Inc.  As a consequence of this merger, MCI, Inc., and its subsidiaries became a wholly-owned subsidiary of Verizon Communications, Inc., operating as, or as subsidiaries of, MCI, LLC. On November 21, 2006, MCI, LLC changed its name to Verizon Business Global, LLC.

cure its breach, WorldCom ceased future commission payments to HSG as it was permitted to do under the terms of the Agreement.

HSG filed several proofs of claim in WorldCom's consolidated bankruptcy case seeking pre- and post-petition commissions. WorldCom objected to those proofs of claim and later moved for summary judgment. The Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") granted WorldCom's motion, and HSG has now filed this appeal of the Bankruptcy Court order.

## STATEMENT OF THE CASE

### I.    THE REPRESENTATION AGREEMENT.

On or about August 4, 1998, WorldCom Technologies, Inc. and HSG entered into the Agreement whereby HSG agreed to obtain customer orders for certain WorldCom services as described in the Agreement. See Declaration of Eric Fisher ("Fisher Declaration"), Exhibit G (Agreement) and Exhibit A (Bankruptcy Court's February 14, 2007 Opinion ("Decision")) at *4-5.[2] WorldCom agreed to pay HSG commissions based upon the Adjusted Billed Usage of Services by the WorldCom customers that HSG procured ("Customers" or "WorldCom Customers"). See Fisher Declaration, Exhibit G (Agreement) at D000150 and Exhibit A (Decision) at *5. WorldCom Technologies, Inc., later MCI WorldCom Communications, Inc., and HSG amended the Agreement six times between July 1999 and November 2001. See Fisher

_____

[2] WorldCom has cited to the documents attached to the Declaration of Eric Fisher in Support of Appeal Filed by HSG dated May 14, 2007, which HSG filed with its Appellant Brief, instead of duplicating those documents by attaching them to the Declaration of Michael Tucci dated June 1, 2007.

2

Declaration, Exhibit G (Agreement and amendments) and Exhibit A (Decision) at *5-6.

The Agreement contained several provisions which are relevant to this appeal, including the following:

- Section 2.2 and 2.2.3: "WorldCom may terminate this Agreement and cease payment of commissions as set forth in Section 6 of this Agreement, effective immediately, in the event of . . . [HSG's] breach of any provision of this Agreement and [HSG] fails to cure such breach within five (5) days after written notification by WorldCom . . . ." See Fisher Declaration, Exhibit G (Agreement) at D000148.

- Section 6.2 and 6.22: "WorldCom shall not pay [HSG] commissions on any of [HSG's] Customer accounts . . . [i]f [HSG] contacts a WorldCom Group customer in violation of Section 8 of this Agreement . . . ." Id. at D000150.

- Section 8.1: "For so long as WorldCom pays [HSG] commissions in accordance with Exhibit B, [HSG] agrees that [it] will not contact any Customers or WorldCom Group customers procured pursuant to this Agreement or any other Agreement with the WorldCom Group for the purpose of inducing them to switch to another provider of any service which competes with the Services. [HSG] warrants that [HSG's] agreements with [its] agents and distributors presently include, and shall continue to include, the non-solicitation and non-competition covenants contained in this Section 8.1 and shall be enforceable against such agents and distributors to the same extent that this Section 8.1 is enforceable against [HSG]." Id. at D000151.

- Section 8.3: "If Representative contacts a Customer or WorldCom Group customer as described in 8.1, WorldCom will suffer harm that WorldCom cannot now measure. Therefore, WorldCom and Representative agree that if Representative does so contact a Customer or WorldCom Group Customer, WorldCom will give Representative five (5) days prior written notice, at the end of which period WorldCom's obligation to pay Representative any commissions not yet earned under this Agreement will cease." Id. at D000151.

As long as HSG complied with the conditions quoted above, WorldCom was obligated to

3

continue paying HSG residual commissions, even after termination of the Agreement, provided that the Customer's Adjusted Billed Usage, as defined in the Agreement, exceeded $25,000 per month.  Id. at P000159; see also Sixth Amendment attached to Fisher Declaration, Exhibit G at P000194.

## II.    TERMINATION OF THE REPRESENTATION AGREEMENT AND HSG'S SOLICITATIONS.

On June 28, 2002, HSG sent a notice of termination of the Agreement to WorldCom, as permitted under the Agreement.  See Fisher Declaration, Exhibit A (Decision) at *6-7.  On August 6, 2002, WorldCom sent HSG a letter ("August 2002 Letter") accepting the termination and expressly cautioning HSG that it was required to comply with Section 8.1 of the Agreement. See Declaration of Michael Tucci dated June 1, 2007 ("Tucci Declaration"), Exhibit 1 (August 2002 Letter); see also Fisher Declaration, Exhibit A (Decision) at *7-8.  A WorldCom employee, Mr. Ray Ahearn, later testified that one of the motivations behind WorldCom's acceptance of the notice of termination was WorldCom's suspicions that HSG may already have been soliciting Customers in violation of the Agreement.  Fisher Declaration, Exhibit D (Transcript from July 1, 2003 hearing) at 37-39 and Exhibit A (Decision) at *7-8.

On September 25, 2002, HSG, while still bound by Section 8.1, sent a letter soliciting an existing WorldCom Customer procured by HSG to switch service providers.  See Fisher Declaration, Exhibit H (September 2002 solicitation); see also Fisher Declaration, Exhibit A (Decision) at *11 and Exhibit C (Transcript from June 17, 2003 hearing) at 57, 61 and 95.  Once it obtained evidence of HSG's September 2002 solicitation, WorldCom sent HSG a letter dated

4

November 14, 2002 (the "November 2002 Letter") notifying HSG that it had breached Section 8.1 of the Agreement.  See Fisher Declaration, Exhibit I (November 2002 Letter) and Exhibit A (Decision) at *12.  Despite the November 2002 Letter, beginning on or about November 15, 2002 and continuing for approximately thirty days, HSG sent over 150,000 solicitations to the very Customers it was prohibited from soliciting under Section 8.1 in an effort to switch those Customers to another service provider.  Tucci Declaration, Exhibit 2 at ATN00055-56 (HSG's answers to interrogatories) and at ATN00603-ATN00606 (samples of November 2002 solicitations); see also Fisher Declaration, Exhibit A (Decision) at *12-13 and Exhibit C (Transcript from June 17, 2003 hearing) at 57, 64-66.

## III.    BANKRUPTCY COURT PROCEEDINGS.

On July 21, 2002 and November 8, 2002, WorldCom, Inc. and certain of its direct and indirect subsidiaries (collectively, the "WorldCom Debtors") commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  By orders dated July 22, 2002 and November 12, 2002, these chapter 11 cases were consolidated for procedural purposes.

On January 3, 2003, WorldCom filed a Notice of Rejection of Executory Contracts ("Notice of Rejection") seeking to reject close to 1,000 contracts listed on a schedule attached to the notice.  The Notice stated, in part

> Certain of the Contracts identified on Schedule A may not be executory contracts
> under section 365 of the Bankruptcy Code. The Debtors, however, are seeking to
> reject the Contracts identified on Schedule A out of an abundance of caution and
> hereby reserve all of their rights to assert that any of the Contracts identified on
> Schedule A are not executory contracts.

5

See Fisher Declaration, Exhibit F (Notice of Rejection).  The Agreement was included among those listed on Schedule A.  Id.  On January 21, 2003, HSG opposed the Notice of Rejection arguing that the Agreement was no longer an executory contract.  See Tucci Declaration, Exhibit 3 (Response to Notice of Rejection).  Also on January 23, 2003, HSG filed proof of claim no. 38458 seeking residual commissions it believed were still owed under the Agreement.  See Tucci Declaration, Exhibit 4 (Proof of Claim No. 38458).

On February 14, 2003, HSG filed its Notice of Motion for Allowance and Payment of Administrative Claim ("HSG's Motion for Administrative Claim") seeking priority status for its claim for the residual commissions.  See Tucci Declaration, Exhibit 5 (HSG Motion for Administrative Claim). WorldCom objected to HSG's motion.  See Tucci Declaration, Exhibit 6 (Objection to HSG's Motion for Administrative Claim).  The Bankruptcy Court held hearings concerning HSG's motion, and on April 27, 2004, ultimately denied HSG's administrative claim on the basis that HSG failed to establish that it was entitled to such priority under sections 503(b)(1)(A) and 507(a)(1) of title 11 of the Bankruptcy Code.  See Fisher Declaration, Exhibit J (Bankruptcy Court's April 27, 2004 opinion).

Then, in both November 2003 and September 2005, HSG purported to amend its original proof of claim.  Per the Bankruptcy Court's claim objection process, WorldCom filed timely objections ("Claims Objections") to each of HSG's proofs of claim nos. 36482, 38458, 38580, and 38583.  See Tucci Declaration, Exhibits 7, 8 and 9 (objections to HSG's proofs of claims).  In November 2005, WorldCom also filed an adversary proceeding against HSG, which is still

6

pending before the Bankruptcy Court. <u>See</u> Tucci Declaration, Exhibit 9 (Complaint). On March 9, 2006, WorldCom moved for summary judgment with respect to the Claims Objections. In its Decision, the Bankruptcy Court granted WorldCom's motion for summary judgment, finding that HSG's solicitations in violation of the Agreement and WorldCom's notice to HSG of that breach terminated WorldCom's obligations to pay HSG residual commissions. <u>See</u> Fisher Declaration, Exhibit A (Decision).

<u>ARGUMENT</u>

**I.    THE BANKRUPTCY COURT DID NOT ERR BY FINDING THAT WORLDCOM'S OBLIGATION TO PAY RESIDUAL COMMISSIONS TO HSG TERMINATED IN NOVEMBER 2002.**

**A.    Standard of Review.**

Summary judgment is proper when there is no genuine issue as to any of the material facts, and, "based on the undisputed facts, the moving party is entitled to judgment as a matter of law." <u>D'Amico v. The City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998); <u>see also</u> Fed. R. Civ. P. 56 (as made applicable to contested bankruptcy matters through Fed. R. Bankr. P. 7056 and 9014). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). Instead, the dispute must concern material facts— ones "that might affect the outcome of the suit." <u>Id.</u> Disputes concerning facts that are irrelevant or unnecessary are insufficient to defeat summary judgment. <u>Id.</u>

HSG argues that the Bankruptcy Court erred by entering summary judgment in favor of

7

WorldCom because: 1) the Court did not consider certain facts that HSG claims are material and disputed; and 2) those facts show that WorldCom's obligation to pay residual commissions did not terminate in November 2002. Despite HSG's argument to the contrary, the Bankruptcy Court properly considered all material facts, determined that there was no genuine issue with respect to those facts sufficient to defeat summary judgment, and properly found that, based on the undisputed material facts, WorldCom's obligation to pay residual commissions terminated in November 2002 as a matter of law.

**B. The Bankruptcy Court did not err by finding that there was no genuine issue of material fact.**

In reaching its decision that WorldCom's obligation to pay residual commissions to HSG terminated in November 2002, the Bankruptcy Court considered the following undisputed material facts:

- HSG terminated the Agreement by its June 28, 2002, Letter to WorldCom. Fisher Declaration, Exhibit A at *6-7.

- WorldCom accepted HSG's termination of the Agreement in August 2002, at which time WorldCom reminded HSG of its continuing non-solicitation obligations under Section 8.1 of the Agreement. Fisher Declaration, Exhibit A at *7-8.

- HSG solicited Customers in September 2002 while still being paid commissions by WorldCom. Fisher Declaration, Exhibit A at *11-12, 56 n.17.

- In the November 2002 Letter, WorldCom notified HSG that it was in breach of

8

Section 8.1.  Fisher Declaration, Exhibit A at *12.

- There was no evidence that HSG attempted to cure its breach of Section 8.1, but instead, only undisputed facts that HSG engaged in a large, thirty-day solicitation effort beginning on November 15, 2002.  Fisher Declaration, Exhibit A at *12-14, 29.

HSG argues that the Bankruptcy Court erred by not also considering the following:  (1) the November 2002 Letter stated that WorldCom was considering what steps to take, including terminating commission payments pursuant to Section 8.3; (2) the November 2002 Letter instructed HSG to cease the solicitations; (3) Ray Ahearn testified that the November 2002 Letter was a "strong reminder" of HSG's non-solicitation obligation; (4) WorldCom's counsel stated that WorldCom exercised its business judgment when it decided not to immediately terminate the residual commission payments after first suspecting solicitations; (5) WorldCom notified HSG of its intent to reject in December 2002 and included the Agreement on the Notice of Rejection.  <u>See</u> Appellant Brief at 13.

These facts identified by HSG are not material to whether WorldCom's obligation to pay residual commissions to HSG ceased in November 2002.  WorldCom's thought process before sending the November 2002 Letter, as well as the language in that letter stating that WorldCom was considering its options and providing HSG with an opportunity to cure (by instructing HSG to cease solicitations), do not alter the material facts —specifically, that HSG solicited Customers and that WorldCom provided HSG with notice of that breach.  As the Bankruptcy

9

Court correctly concluded, nothing further was required of WorldCom. Further, WorldCom's e-mail notification to HSG concerning contract rejection and its inclusion of the Agreement on the Notice of Rejection have no bearing on whether the residual commission obligation had already terminated. In fact, the Notice of Rejection specifically states,

> Certain of the Contracts identified on Schedule A may not be executory contracts under section 365 of the Bankruptcy Code. The Debtors, however, are seeking to reject the Contracts identified on Schedule A out of an abundance of caution and hereby reserve all of their rights to assert that any of the Contracts identified on Schedule A are not executory contracts.

See Fisher Declaration, Exhibit F (Notice of Rejection) at 2 n.1.

Although HSG's allegedly disputed facts are not material to whether WorldCom's obligation to pay residual commissions to HSG ceased in November 2002, nonetheless, the Bankruptcy Court specifically discussed some of these "facts" that HSG claims it overlooked. For example, the Bankruptcy Court did note the inclusion of the Agreement on the Notice of Rejection. See Fisher Declaration, Exhibit A at *7 n.5. The Bankruptcy Court also considered the language of the November 2002 Letter. See id. at 12 ("By letter dated November 14, 2002 . . . , MCI WorldCom, referring to [HSG's initial solicitation], informed HSG that it was in violation of Section 8.1 of the Agreement. The November Letter, sent to HSG by overnight mail and facsimile, set forth that HSG should immediately cease sending letters to or contacting the Customers.").

The Bankruptcy Court considered all of the facts that could bear on whether WorldCom's residual commission obligation terminated in November 2002, all of which are undisputed. The

10

additional "facts" that HSG claims were overlooked were not material to the Bankruptcy Court's determination and, regardless, were in fact considered. As a result, the Bankruptcy Court did not err when it found that there was no genuine issue of material fact preventing summary judgment.

### C. The Bankruptcy Court did not err in finding that WorldCom's obligation to pay residual commissions terminated in November 2002 as a matter of law.

HSG mischaracterizes the Bankruptcy Court's conclusions by suggesting that it determined that the November 2002 Letter was a notice of termination and that WorldCom's right to terminate the commissions was self-executing. See Appellant Brief at 13-14. Contrary to HSG's characterization of the Decision, the Bankruptcy Court did not find that the November 2002 Letter was a notice of termination of the commission payments nor did it find that the commission obligation would have ceased without any action on the part of WorldCom. Instead, the Bankruptcy Court found, based on the unambiguous language contained in the Agreement, and relying on sound case law mandating that clear and unambiguous contract provisions be respected, see Lamb Constr. Co. v. Town of Renova, 573 So.2d 1378, 1383 (Miss. 1990); Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss. 1987), that WorldCom only was required to give HSG notice that it had breached Section 8.1 (Fisher Declaration, Exhibit A at *29-30), and that, because WorldCom provided HSG with that notice, WorldCom's commission obligation terminated. See Fisher Declaration, Exhibit A (Decision) at *31.

Specifically, after considering all of the undisputed material facts, the Bankruptcy Court found: (1) Sections 8.1 and 8.3 are not ambiguous ((Fisher Declaration, Exhibit A at *25-26 and *29); (2) under the unambiguous language of the Agreement, payment of the commissions was

11

conditioned on non-solicitation (id. at *29); (3) HSG solicited in violation of Section 8.1 (id. at *11-15, 23-26); (4) Section 8.3 only required WorldCom to give HSG notice that it had breached Section 8.1 (id. at *29); (5) on November 14, 2002, WorldCom provided HSG with notice of the breach that complied with the requirements of Section 8.3 (id. at 29); (6) HSG did not cure the breach (id. at *12-14, 29); and (7) WorldCom's obligation to pay residual commissions to HSG terminated five days after HSG received the notice of breach (id. at *31).

The Bankruptcy Court rejected HSG's attempt to compare this case to First Mississippi Bank of Commerce v. Latch, 433 So. 2d 946 (Miss. 1983), in which the court found the question of whether a notice of contract termination was reasonable to be a question for the jury. The Bankruptcy Court correctly distinguished Latch from the present case because in Latch, there was not a written agreement setting forth the notice requirements in clear and unambiguous terms. The other case HSG cited, CFJ Assoc. of New York, Inc. v. Hanson Indust., is also easily distinguished. In that case, the court determined that there were numerous factual issues, such as whether the notice of termination was timely, that needed to be resolved before the parties' obligations could be determined. 260 A.D.2d 917, 919 (N.Y. App. Div. 1999).

Here, and unlike in the cases cited by HSG, there are no disputed material facts that prevented summary judgment. The Bankruptcy Court properly considered all of the undisputed material facts, and determined, based on those undisputed facts and on the unambiguous terms of the Agreement, that WorldCom's residual commission obligations terminated in November 2002 as a matter of law. As a result, the Bankruptcy Court complied with the requirements set forth in

12

the Federal Rules of Civil Procedure, as incorporated through the Federal Rules of Bankruptcy

Procedure, and, therefore, did not err when entering summary judgment in favor of WorldCom.

## II.     THE COURT DID NOT ERR IN FINDING THAT WORLDCOM WAS NOT JUDICIALLY ESTOPPED FROM ARGUING THAT THE NOVEMBER 2002 LETTER TERMINATED ITS RESIDUAL COMMISSION OBLIGATION.

HSG contends that WorldCom was judicially estopped from arguing that it had

terminated the Agreement by the November 2002 Letter because WorldCom did not expressly

take that position in connection with responding to HSG's request for administrative priority and

later included the Agreement on Schedule A of the Notice of Rejection.[3]  On this basis, HSG

seeks reversal of the Opinion and Order.  Judicial estoppel requires that a litigant take an

inconsistent position in the same proceedings on the same material point.  Wight v. Bank of

America Corp., 219 F.3d 79, 90 (2d Cir. 2000).  In the absence of a true inconsistency,

application of judicial estoppel is inappropriate.  Id.  Judicial estoppel also requires that the Court

accept the litigant's prior position and that the litigant benefited from that acceptance.  New

Hampshire v. Maine, 532 U.S. 742, 751-52 (2001).

The Bankruptcy Court found again based on the undisputed facts, that WorldCom was

not judicially estopped from arguing that the November 2002 Letter terminated its residual

commission obligation.  See Fisher Declaration, Exhibit A (Decision) at *32-33.  The Court

considered WorldCom's position in its objection to HSG's Motion for Allowance and Payment of

Administrative Claim that (1) HSG was not entitled to administrative priority because it failed to

---

[3] As noted above, WorldCom expressly stated that some contracts listed on its Notice of
Rejection may not be executory contracts.

13

comply with the non-solicitation requirements of Section 8.1, and (2) HSG received notice from WorldCom in November 2002 that it was terminating the commission payments.  See id. Ultimately, the Court determined that the position that WorldCom took when opposing the administrative claim was not inconsistent with the position WorldCom later took in its summary judgment briefing.  See id.

In addition, the only issue before the Bankruptcy Court during the administrative claim proceeding was whether HSG's claim was entitled to administrative priority.  The validity of HSG's claim to residual commissions was not before the Court.  See In re WorldCom, 308 B.R. 157 (Bankr. S.D.N.Y. 2004).  Once the court determined that HSG's claims were not entitled to administrative priority, WorldCom initiated the claim objection process that led to the summary judgment motion at issue in this appeal.  Nothing required WorldCom to raise and argue its objections as to the commissions as part of the administrative priority proceeding.

WorldCom did not take a position in its summary judgment briefing inconsistent with a position taken during the administrative claim proceeding, and, as a result, the Court did not err in finding that WorldCom was not judicially estopped from arguing that the November 2002 Letter terminated its residual commission obligation.

## III.    THE BANKRUPTCY COURT DID NOT ERR BY DENYING HSG'S REQUEST TO ALLOW DISCOVERY TO PROCEED PURSUANT TO FED. R. CIV. P. 56(f).

HSG contends that the Bankruptcy Court's Opinion and Order should be reversed because the Court "deprived" HSG of the opportunity to pursue depositions in denying its Rule 56(f) motion.  Rule 56(f) of the Federal Rules of Civil Procedure provides courts with the ability

14

to deny a motion for summary judgment or may order a continuance if "it appear[s] from the affidavits of a party opposing the motions that the party cannot for reasons stated present by affidavits facts essential to justify the party's opposition."  When a party seeks the relief available under Rule 56(f), it must submit an affidavit identifying (1) the facts sought and how they can be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) the efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful.  Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999).  A court's denial of a party's request for more time to conduct discovery under Rule 56(f) is subject to reversal only if the court abused its discretion.  Williams v. R.H. Donnelley Corp., 368 F.3d 123, 126 n.1 (2d Cir. 2004)

The Bankruptcy Court found that HSG failed to sustain its burden under Rule 56(f) because it did not specifically identify the facts it wished to discover or explain how those facts were reasonably expected to create a genuine issue of material fact.  Fisher Declaration, Exhibit A (Decision) at *37  Even if HSG had sufficiently identified the facts that it wished to discover, what it sought—information concerning other agents, WorldCom's intent in sending the November 2002 letter, and WorldCom's decision to include HSG on its Notice of Rejection— have no bearing on whether HSG solicited in violation of Section 8.1 and whether WorldCom provided HSG with notice of that breach.  The Bankruptcy Court, recognizing that it already had before it all the material facts necessary to decide WorldCom's motion and that, regardless, HSG failed to make the requisite showing under Rule 56(f), properly denied HSG's request for

15

additional discovery.  Therefore, the Bankruptcy Court did not err by denying HSG's request to conduct discovery.

## **CONCLUSION**

As the foregoing demonstrates, the Bankruptcy Court did not err by entering judgment in favor of WorldCom, and, therefore, its Decision and Order should be affirmed and Appellant HSG's request that the Court vacate the Order and remand this matter to the Bankruptcy Court should be denied.

Respectfully submitted,

_W. Dennis Cross_,  SDNY Bar Code: WC4756__
Mark A. Shaiken
W. Dennis Cross
Angela G. Heppner
STINSON MORRISON HECKER LLP
1201 Walnut, Suite 2500
Kansas City, MO  64106-2150
(816) 842-8600-Telephone
(816) 691-3495- Facsimile


Michael E. Tucci
STINSON MORRISON HECKER LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036
Telephone:  (202) 785-9100
Facsimile:  (202) 785-9163

Attorneys for Appellees

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 1st day of June, 2007, the foregoing document was sent via ECF and first class U.S. Mail, postage pre-paid, to:

Eric B. Fisher
Morgenstern Jacobs & Blue, LLC
885 Third Avenue
New York, NY 10022
Attorney for HSG/ATN, Inc.

/s/  *W. Dennis Cross*_____
Attorney for Appellees

17