DAVID WM. ENGELMAN, SBA #004193
KEVIN M. JUDISCAK, SBA #012764
**ENGELMAN BERGER, P.C.**
ONE COLUMBUS PLAZA, SUITE 1050
3636 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012
_____
Ph: (602) 271-9090
Fax: (602) 222-4999
Email: dwe@engelmanberger.com
Email: kmj@engelmanberger.com
_____

and

RICHARD L. KORAL, ESQ. (RK 2498)
60 EAST 42ND STREET, SUITE 2320
NEW YORK, NEW YORK 10165-2399
_____
Ph: (212) 682-1212
Fax: (212) 687-2084
_____

Co-Counsel for HSG/ATN, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| WORLDCOM, INC., et al., | Case No. 02-13533 (AJG) |
| Debtors. | |

**MOTION FOR ALLOWANCE AND PAYMENT
OF ADMINISTRATIVE CLAIM BY HSG/ATN, INC.**

HSG/ATN, Inc. ("HSG"), through its attorneys undersigned, pursuant to § 503(b) of the United States Bankruptcy Code, hereby moves this Court for an order allowing an administrative claim, and the payment thereof, to HSG for the commissions due under a representation agreement with the Debtors. In support of this request, HSG submits the following:

**I.   JURISDICTION**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This Motion represents a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B).

## II. PROCEDURAL AND FACTUAL HISTORY

2. On July 21, 2002, WorldCom, Inc. and certain of its affiliated debtor entities (collectively, the "Debtors"), filed a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtors have been operating their business and conducting their affairs as debtors in possession since the filing date.

3. HSG is a Puerto Rico corporation engaged in the business of procuring and servicing telephone and internet customers for long distance and internet communication providers.

4. On February 4, 1998, HSG and WorldCom Technologies, Inc. ("WorldCom") entered into an agreement ("Agreement") whereby WorldCom[1] appointed HSG as an authorized representative to market, sell and service products and services of WorldCom's affiliate TTI National ("TTI"). A copy of the Agreement is attached hereto as Exhibit "A."

5. Under the terms of the Agreement, WorldCom paid HSG commissions based upon the monthly usage of the TTI services (the "Earned Commissions") by the customers procured by HSG (the "Customers").

6. The Agreement has been amended as follows:

   a. First amendment, effective July 21, 1999, attached hereto as Exhibit "B";
   b. Second amendment, effective November 22, 1999, attached hereto as Exhibit "C";
   c. Third amendment, effective April 14, 2000, attached hereto as Exhibit "D";
   d. Fourth amendment, effective June 30, 2000, attached hereto as Exhibit "E;
   e. Fifth amendment, effective March 1, 2001, attached hereto as Exhibit "F"; and
   f. Sixth amendment, effective November 1, 2001, attached hereto as Exhibit "G".[2]

7. In July, 2002, WorldCom tendered a seventh amendment to HSG, which HSG executed on August 9, 2002 and returned to WorldCom. To HSG's knowledge, this seventh amendment, which is attached hereto as Exhibit "H," was not executed by WorldCom.

---

[1] WorldCom includes MCI WorldCom Communications, Inc., the party to the sixth and final amendment with HSG.

[2] The Agreement and these subsequent amendments one through six shall be referred to collectively as the "Representation Agreement."

8.    Pursuant to its terms, the Representation Agreement was terminated on or about August 6, 2002, as evidenced by the letter from Kirk Reynolds, Associate Commercial Counsel for WorldCom to HSG attached hereto as Exhibit "I."[3]

9.    Following this termination of the Representation Agreement, HSG continued to service the Customers until approximately December 16, 2002 (the "Service Period"), at which time the Debtors prevented HSG from continuing to provide such service. This continuing service provided by HSG included, but is not limited, to fielding complaints and questions from the Customers, taking and implementing change orders, and generally responding to any inquiry made by a Customer. This information would then be forwarded to WorldCom electronically. *See* the Declaration of Jeff Bein attached hereto as Exhibit "J."

10.    TTI directed the Customers to contact HSG for customer follow-up. As noted in Mr. Bein's Declaration, Customers were issued a calling card when they signed up for the service. This calling card bore the phone number of HSG's call center as the contact for customer service. Until modified at some date after the bankruptcy filing, WorldCom's bills to the Customers also contained HSG's call center number for customer service.

11.    The Debtors have paid HSG for Earned Commissions for a portion of July (the post-petition period), August and September 2002, but none thereafter.

12.    The obligation to pay ongoing commissions (the "Residual Commissions") to HSG continues following termination of the Representation Agreement. Paragraphs 2.3.2 and 2.4 of the Representation Agreement, as amended in paragraphs 9 and 10 of the sixth amendment, respectively, state:

> 2.3.2    If MCI WorldCom terminates this Agreement under this Paragraph 2.3, then MCI WorldCom will make payment for commissions earned by Representative up to the effective date of such termination, and MCI will continue, beyond the effective date of such termination, (i) to pay commissions earned beyond the effective date of such termination in accordance with Paragraph 2.4 below, and (ii) to pay Representative each month the additional five percent (5%)

---

[3] Debtors sought to reject the Representation Agreement through the filing of their "Notice of Rejection of Executory Contracts" dated January 3, 2003. HSG opposed this notice on the grounds that the Representation Agreement had been mutually terminated pursuant to its terms.

3

     commission on the Subset of Grandfathered Accounts, as set forth in Paragraph 1B of Exhibit B, regardless of the amount of the Representative's total monthly Customers' Adjusted Billed Usage (including total Customers' Adjusted Billed Usage as set forth in Exhibit A and total Grandfathered Customers' Adjusted Billed usage as set forth in Exhibit B).

  2.4  Except as set forth in Sections 2.2, 6.2, and 8.3 of this Agreement, MCI WorldCom will continue to pay commissions to Representative after termination, but only as long as the monthly total of both Customer's Adjusted Billed Usage, as set forth in Exhibit A, and Grandfathered Customer's Adjusted Billed usage, as set forth Exhibit B, ("Representative's Amount") exceeds the amount of WorldCom's obligation to pay Representative commissions under this Paragraph 8 will cease the first month Representative's Amount is less than or equal to The Sum, provided that MCI WorldCom will pay Representative those commissions earned through the month immediately preceding the month during which Representative did not exceed The Sum.

13.    In addition to the services provided to WorldCom set forth in paragraphs 8 and 9 hereinabove, HSG has conferred a valuable benefit upon WorldCom by not soliciting the Customers.[4] The Representation Agreement requires HSG to refrain from contacting any Customers to induce them to switch their service provider so long as WorldCom continues to pay the Earned and Residual Commissions (collectively the "Commissions") due. HSG continues to abide this restrictive covenant, despite the Debtors' failure to pay the Commissions as they accrue under the terms of the Representation Agreement.

## III. ARGUMENT

According to 11 U.S.C. § 503(b)(1)(A), "the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case" constitute administrative expenses entitled to priority status upon distribution of the estate. One of the main incentives for the granting of an administrative expense priority is to provide an incentive for creditors and others to continue to provide services for the insolvent entity to allow it to effectively rehabilitate and pay its creditors. *See e.g.*, *In re Jartran, Inc.*,

---

[4] In November, 2002, after receiving notification from WorldCom that it would not be paying any further Commissions, HSG did contact Customers. WorldCom sent HSG a letter demanding it cease communicating with Customers. Although HSG believes that this anticipatory breach excuses it from honoring this restrictive covenant, and without waiving this position, HSG has ceased communications with the Customers at this time.

732 F.2d. 584 (7th Cir. 1984*); In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir. 1976)*.* Consistent with this policy, two tests for determining the applicability of an administrative expense claim have developed. An administrative expense claim arises only from a transaction between the creditor and the trustee or debtor-in-possession. *Trustees of Amalgamated Insurance Fund v. McFarlin's*, 789 F.2d. 98, 101 (2nd Cir. 1986). An expense claim must have provided a benefit to the estate. *Id.* HSG has satisfied these two tests in two different fashions.

### A. HSG is entitled to an administrative expense claim for its services provided to the estates.

HSG has provided substantial and valuable services to the Debtors post-petition, through December 16, 2002 (the "Service Period"), which is the last date HSG provided follow-up services to the Customers. The services provided by HSG during the Service Period were significant, ranging from dealing with Customers' address changes and service changes to fielding questions and complaints. All of this service information was then relayed to WorldCom. There exists an obvious nexus between this customer service and the retention of the customer base. The end result is a benefit to these estates by the continued income from satisfied Customers.

The value conferred upon the estates during the Service Period for these services provided by HSG is the amount of commissions due under the terminated contract. Indeed, this is best evidenced by the payment of the Earned Commissions for the post petition periods of July, August and September 2002. Accordingly, HSG is entitled to the Earned Commissions for the period from October 1, 2002 through December 16, 2002 in the approximate amount of $600,000. The precise amount due for this period will be ascertained after obtaining and reviewing documentation from the Debtors.

### B. HSG is Entitled to Residual Commissions as an Administrative Expense

The Representation Contract terminated by the parties according to its terms. Notwithstanding, certain obligations survived termination.

Specifically, the operative language of the Representation Agreement is found in paragraph 8.1 of the original agreement which states, in relevant part:

5

> 8.1 For so long as WorldCom pays Representative commissions in accordance with Exhibit B, Representative agrees that Representative will not contact any Customers or WorldCom Group customers procured pursuant to this Agreement or any other Agreement with the WorldCom Group for the purposes of inducing them to switch to another provider of any service which competes with the Services…

This restrictive covenant has survived termination of the Representation Agreement, subject to the Debtors' obligation to continue to pay the Commissions. At the Debtors' insistence, HSG has not solicited customers. The Customers continue to obtain and pay for service from WorldCom. Logically, HSG is providing valuable consideration to these estates by not inducing any Customers to leave WorldCom for another long distance and internet service provider.

These mutual obligations have survived the termination of the Representation Agreement. Arguably, HSG's obligation to abide by the restrictive covenant is excused as WorldCom materially breached its obligation to pay the Commissions in accordance with paragraph 8.1 quoted above. *See*, *Matheney v. McClain*, 248 Miss. 842, 161 So. 2d. 516 (1964). Notwithstanding, HSG has complied by the demand of WorldCom to restrain from contacting the Customers.

HSG has met its burden of meeting the above-referenced tests to establish an administrative claim. First, the restrictive covenant was entered into between HSG and WorldCom. Second, HSG's restraint confers a significant and continuing benefit upon the estates. Accordingly, HSG is entitled to payment of the Commissions as an administrative expense.

## IV. CONCLUSION

For the foregoing reasons, HSG urges this Court to authorize the allowance and payment of an administrative claim for the Commissions, pursuant to the terms of the Representation Agreement. This administrative claim should include both the Earned Commissions as of the date hereof, as well as the Residual Commissions that come due in the future.

6

**DATED** this 14th day of February, 2003.

**RICHARD L. KORAL, ATTORNEY AT LAW**

By /s/ Richard L. Koral
    Richard L. Koral, Esq.
    60 East 42nd Street, Suite 2320
    New York, NY 10165-2399

**AND**

**ENGELMAN BERGER, P.C.**

By /s/ SBA #004193
    David Wm Engelman
    One Columbus Plaza, Suite 1050
    3636 North Central Avenue
    Phoenix, Arizona 85012
    Attorneys for HSG/ATN, Inc.

**COPY** of the foregoing mailed this 14th day of February, 2003, to:

Marcia L. Goldstein, Esq.
Lori R. Fife, Esq.
Alfredo R. Perez, Esq.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153-0119
Attorneys for Debtors and Debtors-in-Possession

All parties on the Official Service List

 /s/ Richard L. Koral